1  JAMES C. STURDEVANT (CA SBN 94551)
   (jim@sturdevantlaw.com)
2  SYLVIA M. SOKOL (CA SBN 200126)
   (sylvia@sturdevantlaw.com)
3  THE STURDEVANT LAW FIRM
   A Professional Corporation
4  475 Sansome Street, Suite 1750
   San Francisco, CA 94111
5  Telephone: (415) 477-2410
   Facsimile: (415) 477-2420
6
   DAVID MARSHALL (*Pro Hac Vice* Application filed herewith)
7  (marshall@kmblegal.com)
   DEBRA S. KATZ (*Pro Hac Vice* Application filed herewith)
8  (katz@kmblegal.com)
   KATZ, MARSHALL, BANKS, LLP
9  1718 Connecticut Ave., N.W.
   Sixth Floor
10 Washington, D.C. 20009
   Telephone: (202) 299-1140
11 Facsimile: (202) 299-1148

12 Attorneys for Plaintiffs
   ROYLENE RAY and KELLY CANNON
13

14 Additional counsel listed on signature page

15                    UNITED STATES DISTRICT COURT

16                   NORTHERN DISTRICT OF CALIFORNIA

17 ROYLENE RAY and KELLY CANNON,          Case No. C 06 1807
   individually and on behalf of others similarly
18 situated,
                                           COMPLAINT FOR MONETARY
19                Plaintiffs,              DECLARATORY AND INJUNCTIVE
                                           RELIEF
20 v.
                                           CLASS ACTION
21 BLUEHIPPO FUNDING, LLC, and JOSEPH K.
   RENSIN,                                 JURY TRIAL DEMANDED
22
                  Defendants.
23

24

25

26

27

28

─────────────────────────────────────────────
COMPLAINT FOR MONETARY DECLARATORY AND INJUNCTIVE RELIEF

**INTRODUCTION**

1.     Roylene Ray and Kelly Cannon bring this action on behalf of themselves and a class of similarly situated California consumers who have been deceived by false and misleading advertising into ordering computers at exorbitant prices and on unconscionable terms from BlueHippo Funding LLC ("BlueHippo") and its owner, Joseph K. Rensin, and then cheated by them out of their money altogether.

2.     BlueHippo does not manufacture or stock computers. Instead, it markets, sells and finances computers to low-income consumers who lack access to traditional and legitimate forms of credit. In its advertisements, BlueHippo promises to make "brand name," "top-of-the-line" computers "affordable" by allowing customers to pay in weekly or bi-weekly payments. In reality, however, the computers are actually low-end and/or technologically outdated models that BlueHippo sells at prices that are several times the prices that consumers would pay if they purchased the merchandise from manufacturers or legitimate retailers. For example, during much of the period relevant to this lawsuit, BlueHippo has marketed and sold bottom-of-the-line computers to consumers for over $1,900 each, when comparable or even superior products have been widely available from manufacturers and retailers for less than $400.

3.     In addition, BlueHippo structures its sales transactions so that consumers neither receive nor own any computer, even though they have paid hundreds of dollars toward the purchase of one. Under its program, BlueHippo requires the customer to make an immediate payment of $99 followed by at least 3 months of consecutive weekly payments of at least $36 each before it ships the computer. The consumer thus must pay BlueHippo at least $567 – more than the widely available retail price of the product – before it arranges for a manufacturer to ship the consumer a low-end computer that would cost $400 elsewhere. In order to discharge his or her obligation under BlueHippo's 52-week sales contract, the consumer must pay the Company an additional $1,404 in 39 weekly payments.

4.     If a customer defaults on any payment before receiving merchandise, BlueHippo increases the number of payments it requires before shipment. It also raises the interest rate it charges on the unpaid balance.

5.     In addition, BlueHippo maintains a no refund policy that requires forfeiture of all money paid by any consumer who fails to complete every payment in the pre-payment plan. Under this policy,

1    BlueHippo refuses to permit customers to terminate payments and to get any of their money back, even

2    if the Company never ships the merchandise that the consumer ordered. Through this scheme,

3    BlueHippo has collected hundreds of dollars each from the bank accounts of Ms. Ray, Ms. Cannon, and

4    thousands of other California residents without providing anything in return.

5         6.    BlueHippo's and Rensin's actions violate several California laws. Plaintiff seeks

6    compensatory and punitive damages, restitution, declaratory and injunctive relief, and attorneys' fees,

7    costs and expenses.

8                          **JURISDICTION AND VENUE**

9         7.    This court has original jurisdiction over this matter pursuant to 28 U.S.C

10   section 1332(d)(2). This is a class action in which Plaintiffs and members of the Plaintiff class are

11   citizens of California and Defendants are citizens of Maryland. Moreover, the matter in controversy

12   exceeds the sum or value of $5,000,000, exclusive of interest and costs.

13        8.    Venue is proper in this Court because Ms. Ray lives in this judicial district and the

14   transactions that give rise to her claims all occurred in this judicial district.

15                                  **PARTIES**

16        9.    Plaintiff Roylene Ray is an individual consumer who, at all times relevant to this action,

17   has resided in the city of Oakland, California. She is a disabled senior citizen who derives her income

18   from government disability and pension payments.

19        10.   Plaintiff Kelly Cannon is an individual consumer who, at all times relevant to this action,

20   has resided in the city of Stockton, California. She is employed by the Sacramento County Sheriff's

21   Department.

22        11.   The class of similarly situated persons Plaintiff seeks to represent (hereafter the "Plaintiff

23   Class") is comprised of all California residents who have paid money to BlueHippo for merchandise but

24   never received their merchandise, since BlueHippo began doing business in California in early 2003.

25        12.   At all times relevant to the allegations herein, Defendant BlueHippo Funding, LLC, has

26   been a Maryland corporation, doing business throughout the state of California.

27        13.   Defendant Joseph K. Rensin resides in Maryland and is BlueHippo's president and

28   primary shareholder.

COMPLAINT FOR MONETARY DECLARATORY AND INJUNCTIVE RELIEF

1

**FACTUAL ALLEGATIONS**

2    A.    **BlueHippo's False and Deceptive Advertising.**

3    14.    From early 2003 through the present, BlueHippo has advertised the sale of personal

4    computers throughout the United States, including California. BlueHippo's advertising has appeared in

5    newspapers, on the radio, on television and on the Internet. BlueHippo represents that it spends some

6    $7.5 million annually on advertising. BlueHippo makes the same deceptive and misleading

7    representations and material omissions to all consumers who respond to its television, internet, radio,

8    and newspaper advertisements.

9    15.    BlueHippo's advertising is false, deceptive, and misleading. For example, as of

10    December 2005, BlueHippo's website has proclaimed in oversized, bold font:

11
12
13
14
> **Bad Credit?  No Credit?**
> **No Problem.  You're Approved!**
> **BlueHippo Funding offers new, brand**
> **name products at low weekly prices. And**
> **with our Guaranteed Approval Program,**
> **you will get approved for financing**
> **regardless of your credit – Guaranteed.**

15    1.    **Misrepresentations About The Merchandise.**

16    16.    BlueHippo's advertising also misrepresents the characteristics, uses, benefits, quality and

17    grade of the products it sells. From early 2003 until at least December of 2005, for instance, the web site

18    described BlueHippo's desktop computer, which it called a "Desktop 2004A," as a "top-of-the-line"

19    computer, among "the finest computers on the market," and "lightning fast." In fact, the Desktop 2004A

20    had only 128 MB RAM, an amount of memory that fell far below the industry standard at the time, and

21    that rendered it an extremely low-end model.[1]

22    17.    BlueHippo's Internet advertisements have also falsely claimed that the Company has

23    "relationships that let us offer the finest computers on the market, made by the most recognizable names

24    in the industry." This statement falsely represents that the consumer gains some advantage by

25    purchasing through BlueHippo, which has special relationships with manufacturers, when in fact all

26    _____

27    [1] Like other companies, BlueHippo periodically updates its web site to reflect different products,
28    services, and policies. However, the representations on the current version of its web site remain the
same, or substantially the same, as the representations described above.

3

COMPLAINT FOR MONETARY DECLARATORY AND INJUNCTIVE RELIEF

1  major retailers have such relationships, and when the consumer can order the same or better products

2  direct from the manufacturers at a fraction of the prices that BlueHippo charges.

3      18.    BlueHippo's television advertisements contain many of the same false, misleading and

4  deceptive representations that are contained in the Company's Internet ads.  One television ad, which is

5  substantially similar to other television advertisements the Company has run in California during the

6  Class Period, falsely represents that BlueHippo is making a "great offer" on a "brand new, brand name

7  computer," when in fact it is offering the low-end product described above at a price that is several times

8  the price a consumer would have to pay elsewhere.  The advertisement describes a "complete

9  multimedia system" featuring "free Internet" and "free e-mail," when in reality the Internet access and

10  e-mail are part of a free trial offer that America Online offers to all consumers for a limited time.

11  BlueHippo's television advertisement does not disclose the brand, model or manufacturer of the

12  computer it offers for sale.

13          **2.    Misrepresentations About its Financing Plan.**

14      19.    BlueHippo's web site describes BlueHippo as a "consumer finance compan[y]" that

15  "provides financing."  "Since we don't check your credit," the web site tells potential customers, "we do

16  ask that you build a short credit history with us by making 3 month's worth of payments before we ship

17  the computer.  It's that simple."

18      20.    But the Company does not provide "financing" in the commonly understood meaning of

19  the word.  Rather than delivering a product and providing the credit a consumer needs in order to meet

20  the purchase price, BlueHippo collects more money than the consumer would need to pay for the product

21  elsewhere, up front.

22      21.    Only after posting those payments does BlueHippo arrange to deliver the product, and it

23  continues to extract several times the purchase price from the consumer by requiring additional weekly

24  or bi-weekly payments for the balance of a year.

25      22.    By touting its so-called "Guaranteed Approval Program" and repeatedly emphasizing that

26  "approval is guaranteed with just an active checking account," BlueHippo deceives consumers into

27  believing that the Company is "approving" the consumer's worthiness for an extension of credit that

28  potentially places the Company at risk as a creditor.  This is misleading because, by the time it arranges

COMPLAINT FOR MONETARY DECLARATORY AND INJUNCTIVE RELIEF

1  for the purchase and shipping of a product, BlueHippo has already collected more than enough funds to

2  cover its cost, and it is never at risk of loss.

3          **3.      Misrepresentations About Prices.**

4          23.    BlueHippo misrepresents the prices at which it sells products.  The representation that

5  BlueHippo makes computers "affordable" at "low weekly prices" is false.  To the contrary, computers

6  comparable to the low-end Desktop 2004A, which BlueHippo sells for $1,971 with a $99 down payment

7  and 52 weekly payments of $36, are widely available from retailers for $400 or less.  The Company also

8  offers an "upgrade" package which, for approximately $415, provides a slightly faster processor, a CD

9  burner and a DVD drive.  This brings to $2,386 BlueHippo's price for a computer having features that

10  have become standard in personal computers, and that is widely available in retail stores for $600 or less.

11  BlueHippo offers peripheral products at similarly exorbitant prices, such as an entry-level color printer

12  for $312, a low-end digital camera for $520, or a basic optical mouse for $104.

13          24.    On its web site, BlueHippo does not disclose to prospective purchasers the full purchase

14  price of the advertised computer system separate from finance charges; the dollar amount of the finance

15  charges; the full costs that BlueHippo imposes on the consumer before shipment; the total number of

16  payments required; or the specific brand, model and manufacturer of the computer that BlueHippo is

17  offering to sell to the consumer.

18          25.    BlueHippo's television advertising contains the same misrepresentations about prices.

19  The television advertisements do not reveal the full costs that the consumer will incur before shipment;

20  they say nothing about the finance charge or annual percentage rate, or even the fact that financing is

21  involved; and they fail to mention that the consumer has to do more than make "one call," and must in

22  addition make several months of consecutive, weekly pre-payments before receiving a computer.  The

23  advertisements do not disclose the no-refund and forfeiture obligations that BlueHippo imposes on its

24  customers, or the requirement that consumers must agree to preauthorized recurring debits to their bank

25  accounts.

26          **4.      Misrepresentations About Timing of Shipment.**

27          26.    BlueHippo's advertising misrepresents the conditions under which it will ship the

28  computer.  "Once you have submitted your first 3 months of payments," the web site states, "we will

COMPLAINT FOR MONETARY DECLARATORY AND INJUNCTIVE RELIEF

1   immediately ship your computer leaving only 9 months of payments until the computer is completely

2   yours." This statement is false. In reality, BlueHippo routinely waits an additional six to eight weeks, or

3   even longer, before arranging for shipment of the customer's computer, so that the customer ends up

4   making at least 21 or more weekly payments, and waiting some 5 months or more, before BlueHippo

5   ships the merchandise. This practice is described in small print in the "Terms and Conditions"

6   document that BlueHippo mails to some customers after receiving their orders and after beginning

7   electronic debits to their checking accounts. The document recites that it might take "7 to 10 business

8   days for your drafts to clear our bank and post to your account" (a period that is inexplicable in the

9   context of electronic debits) and that the purchaser should also "allow 4 to 6 weeks after your required

10  payments are posted to your account for your merchandise to be shipped, provided you are not in

11  default."

12      **B.    BlueHippo's Payment Plan.**

13      27.    BlueHippo offers only one means of payment to its customers: electronic debits to their

14  checking accounts via Automated Clearinghouse ("ACH") transactions, either weekly for a period of one

15  year or more, or bi-weekly for a shorter period. Following a telephone conversation with a potential

16  purchaser, in which BlueHippo purports to obtain the purchaser's preauthorization to execute these

17  recurring electronic payments, the Company executes an initial debit of approximately $100. BlueHippo

18  then begins debiting the consumer's bank account on a weekly or bi-weekly basis. The weekly

19  electronic debits have ranged from $35.99 for the purchase of a desktop computer to $75.00 or more for

20  the purchase of a computer with "upgrades" and "accessories." These debits occur every week for one

21  year or longer; bi-weekly debits are in twice the amount of weekly debits. The Company charges a $2.00

22  "transaction fee" for each debit.

23      28.    BlueHippo does not deliver the merchandise to the purchaser when it receives the order.

24  Instead, it waits until the purchaser has made payments for at least several months, usually in an amount

25  that exceeds the amount that the purchaser would pay for the merchandise elsewhere. BlueHippo calls

26  this payment method its "DEFERRED SHIPMENT PROGRAM," and explains in its Shipping

27  Verification Form that, "after 13 consecutive weekly (or 7 consecutive biweekly) minimum payments

28  have been posted to your account, provided you are not in Default, we will process your order and ship

1   your merchandise. . . ." The purchaser then must continue to make payments for the remainder of a year

2   or more in order to complete the purchase.

3       **C.    BlueHippo's Automatic Payment Plan.**

4       29.    It is BlueHippo's policy and practice to require strict adherence to the automatic payment

5   plan. In the event that an attempt to debit a purchaser's checking account fails, BlueHippo requires the

6   purchaser to make additional payments to reach 66% of the full purchase price before it will ship the

7   computer.

8       30.    If an electronic debit attempt fails during the extended pre-payment period described in

9   paragraph 29 above, BlueHippo requires the purchaser to make all 52 or more payments, paying the

10  purchase price in full, before shipment of the computer. This policy means that a purchaser whose

11  checking account fails to satisfy a single weekly debit in the first three to five months of payments does

12  not receive a computer until he or she has completed twelve months of payments.

13      **D.    BlueHippo's Forfeiture Policy.**

14      31.    Under its no refund policy, BlueHippo retains any and all money that it collects from

15  purchasers – regardless of the purchaser's request for cancellation of the purchase, and regardless of

16  whether BlueHippo even sends the purchaser the merchandise for which BlueHippo debits the

17  purchaser's checking account. This policy is not disclosed in BlueHippo's advertisements, and is only

18  vaguely described in the "Shipping Verification Form" and "Terms and Conditions" documents that it

19  mailed to Kelly Cannon and to certain members of the class after they placed their orders, and after

20  BlueHippo had already begun to debit their checking accounts electronically.

21      32.    The "Shipping Verification Form" describes the no refund policy as follows: "All

22  payments are NON-REFUNDABLE except when the original or similar merchandise is no longer

23  available." The "Terms and Conditions" document, in a paragraph entitled "Deferred Shipment

24  Program," tells the purchaser that "establishing a consecutive payment history is a strict requirement to

25  release your merchandise for shipping before your purchase is paid in full," and that "any payments are

26  non-refundable." While these documents use the term "non-refundable," neither of the documents states

27  that the purchaser will forfeit all money paid toward merchandise even if BlueHippo never sends the

28  merchandise to the purchaser.

COMPLAINT FOR MONETARY DECLARATORY AND INJUNCTIVE RELIEF

1    E.    **Other Terms and Conditions.**

2        33.    In addition to the misleading no refund policy, BlueHippo's sales and finance documents

3    provide consumers with a number of other confusing, even incomprehensible terms.

4    In fact, the "Terms and Conditions" document that BlueHippo mails to certain members of the class is

5    an incomprehensible set of legal and financial terms that the average consumer cannot possibly

6    understand.  For example, the document purports to be an agreement setting forth the terms and

7    conditions that apply to the customer's use of a "BlueHippo Funding, LLC Credit Account," but does

8    not explain the nature of the "Account."  In fact, the introductory paragraph states the following: "This

9    Agreement begins on the date that we extend credit to you and your account as evidenced by a signed

10   sales order that we honor, an accepted communication, memorandum, or otherwise."

11       34.    The "Terms and Conditions" document purports to contain an authorization for

12   BlueHippo to "initiate debit entries to your financial institution . . . until your Account is paid in full."

13   The extent of this purported authorization is extremely difficult to comprehend:  the document states that

14   "[t]his authority shall remain in full force and effect until we have received written notification from the

15   authorized party(s) to terminate this arrangement in such time and manner to afford us a reasonable time

16   to act on it. . . .  Thirty (30) calendar days are required to make any changes to your automatic debit."

17       35.    The "Terms and Conditions" document demonstrates that BlueHippo makes it

18   unnecessarily difficult for customers to learn the status of their purchases and payments.  BlueHippo

19   agrees to produce a billing statement "after each billing cycle" but does not define the term "billing

20   cycle."  It also requires that the purchaser access these billing statements on BlueHippo's web site,

21   despite the fact that the purchaser of a computer would likely lack regular access to the internet.

22   Alternatively, the purchaser upon written request has been able to receive billing statements in the mail,

23   but only at the cost of $4.00 per statement.

24       36.    The "Terms and Conditions" document contains a provision regarding finance charges,

25   but the provision is difficult to comprehend because the purchase price of the financed merchandise is

26   not disclosed separate from the finance charge.

27       37.    In this document, BlueHippo purports to reserve to itself the right to "at any time and

28   subject to applicable law: (a) terminate this Agreement, . . . or (e) change any other terms and conditions

COMPLAINT FOR MONETARY DECLARATORY AND INJUNCTIVE RELIEF

1  of this Agreement relating to your Account (including increasing any Finance Charge or interest rate).

2  Unless prohibited by applicable law, we may apply such changes or new terms to any outstanding

3  balance of your Account . . . .  When required by applicable law, we will mail a notice of change(s) to

4  you.  No change to any term of this Agreement will affect your obligation to pay all amounts owed under

5  this Agreement."

6       38.     The "Terms and Conditions" document provides that "[a]ny dispute between us arising

7  out of this Agreement or the breach of this Agreement, . . . shall be determined by individual (and not

8  class) binding arbitration by the National Arbitration Forum" and that the arbitrator may not "award

9  punitive damages in excess of twice the amount of the actual damages."  While BlueHippo requires the

10 purchaser to arbitrate any dispute, the Company reserves other remedies for itself.  BlueHippo asserts a

11 "purchase money security interest" in all items purchased until they are paid in full, and retains the right

12 to "repossess" merchandise if the purchaser fails to make a minimum payment, or to terminate the

13 Agreement at any time as described in paragraph 37, above.

14      39.     The "Terms and Conditions" document also purports to require the consumer to "agree

15 that you will not bring, join, or participate in any class action as to any claim, dispute or controversy you

16 may have against us . . . .  You agree to the entry of injunctive relief to stop such a lawsuit or to remove

17 you as a participant in the suit.  You agree to pay the attorney's fees and court costs we incur in seeking

18 such relief."

19      40.     In the "Default" paragraph of the "Terms and Conditions" document, BlueHippo purports

20 to reserve to itself broad rights to declare the consumer in default and to impose substantial additional

21 costs on the consumer.  The provision states that a consumer is in default if BlueHippo does not receive

22 the minimum payment by the due date, or "[i]f any of your preauthorized debits are returned unpaid for

23 any reason, at any time . . . , if you request to cancel your account, if you change the bank account we are

24 drafting, . . . or if we deem ourselves in any way insecure, you will be in Default of the terms of this

25 Agreement." (Emphasis added.)  In the event of default, BlueHippo may require immediate payment of

26 the full account balance, and can impose a "24% APR or the maximum allowed by law and that rate

27 shall be applicable to any post-judgment interest as well.  If you are in default you give us permission to

28 draft your checking or savings account in any amount at any time until your account balance is paid in

COMPLAINT FOR MONETARY DECLARATORY AND INJUNCTIVE RELIEF

1   full." (Emphasis added.) The default provisions also purport to charge consumers for collection charges

2   of "25% of the unpaid amount, including court cost, disbursements and reasonable attorneys fees of 33%

3   of the amount."

4       **F.**    **BlueHippo's Transaction with Roylene Ray.**

5       41.    On or about April 7, 2004, plaintiff Roylene Ray viewed a BlueHippo television

6   advertisement at her home in Oakland, California, that was the same as, or identical in every material

7   respect to, the television advertisement described above. The television advertisement provided a

8   toll-free telephone number to call to order the advertised computer. In response to the representations in

9   the television advertisement, Ms. Ray called BlueHippo's toll-free number to place an order for a

10   computer. During the call, the BlueHippo salesperson asked Ms. Ray for her bank account information,

11   and Ms. Ray disclosed the same. The salesperson then informed Ms. Ray that the payments for the

12   computer would be $35 per week. Ms. Ray disclosed that she was disabled and living on a fixed income

13   of $1,250 per month.

14       42.    At no time during this telephone conversation did BlueHippo's salesperson disclose: (a)

15   the purchase price of the computer; (b) the finance charge that Ms. Ray would pay if she purchased a

16   computer; (c) the annual percentage rate for financing or even the fact that financing was involved; (d)

17   the total dollar amount of pre-payments that BlueHippo would require before shipping a computer to

18   Ms. Ray; (e) BlueHippo's intention of retaining a security interest in the computer after shipment; (f) the

19   number of total payments Ms. Ray was required to make before owning the computer free from

20   BlueHippo's security interest; and (g) the specific brand, manufacturer, and model of the computer that

21   BlueHippo was offering to sell to Ms. Ray.

22       43.    Following this telephone call, BlueHippo began on April 16, 2004 electronically to debit

23   Ms. Ray's checking account in the amount of $71.98 every two weeks, and BlueHippo continued this

24   practice until it had collected about $500. The debits did not stop until Ms. Ray demanded in or around

25   August 2004 that her bank cease honoring the ACH requests from BlueHippo.

26       44.    Despite BlueHippo's repeated ACH debits to her checking account, and despite her

27   complaints to the Company, Ms. Ray received no communications or documentation from BlueHippo

28   until after she complained to the Better Business Bureau of Greater Maryland in April 2005. She never

COMPLAINT FOR MONETARY DECLARATORY AND INJUNCTIVE RELIEF

1  received, signed or otherwise agreed to the terms contained in the "Terms and Conditions" document,

2  which BlueHippo purports to govern the financing agreements with its customers. Nor did she receive

3  from BlueHippo, or sign or otherwise agree to the terms contained in the "Shipping Verification Form."

4      45.    BlueHippo debited Ms. Ray's checking account on a bi-weekly basis for about twenty

5  weeks, but never sent her a computer or any other merchandise. Ms. Ray requested that BlueHippo

6  refund the payments that it collected from her. BlueHippo refused to do so, citing its no refund policy as

7  justification for this forfeiture of payments.

8      **G.    BlueHippo's Transaction with Kelly Cannon.**

9      46.    On January 28, 2005, plaintiff Kelly Cannon viewed a BlueHippo television

10 advertisement at her home in Stockton, California, that was the same as, or identical in every material

11 respect to, the television advertisement described above. Ms. Cannon responded to the advertisement by

12 calling BlueHippo's toll-free number and speaking with a BlueHippo sales representative. After placing

13 her order, the sales representative told Ms. Cannon that BlueHippo would ship her computer

14 immediately after Ms. Cannon had made the required pre-payments.

15     47.    At no time during this telephone conversation did BlueHippo's salesperson disclose: (a)

16 the purchase price of the computer; (b) the finance charge that Ms. Cannon would pay if she purchased a

17 computer; (c) the annual percentage rate for financing or even the fact that financing was involved; (d)

18 the total dollar amount of pre-payments that BlueHippo would require before shipping a computer to

19 Ms. Cannon; (e) BlueHippo's intention of retaining a security interest in the computer after shipment; (f)

20 the number of total payments Ms. Cannon was required to make before owning the computer free from

21 BlueHippo's security interest; and (g) the specific brand, manufacturer, and model of the computer that

22 BlueHippo was offering to sell to Ms. Cannon.

23     48.    Approximately one week after she placed her telephone order, Ms. Cannon received a

24 mailing from BlueHippo that contained a "Terms and Conditions" document and a "Shipping

25 Verification Form," and that asked her to sign and return these documents by facsimile, along with a

26 copy of her identification, a voided check and her latest pay stub. The accompanying form instructions

27 explained that this information was required because "we extend credit to our customers. When you

28 'purchase a computer' from BlueHippo, you are actually agreeing to finance a computer – this is a

COMPLAINT FOR MONETARY DECLARATORY AND INJUNCTIVE RELIEF

1    loan . . ." The instructions advised Ms. Cannon that BlueHippo would not ship her computer until she

2    returned the requested documents.

3        49.    The "Shipping Verification Form" listed a "Desktop 2004 E" computer for a price of

4    $1,970.48 and an "Upgrade Pack 2" at $727.48, for a total of $2,697.96, minus a "Good Pay Discount"

5    of $500, for a total net price of $2,197.96. The "Shipping Verification Form" included as "payment

6    information" the representation, "You've agreed to a One-time Payment of $99.00 to be drafted on

7    1/31/2005, followed by bi-weekly payments of $99.96 beginning on Tuesday, February 1 and continuing

8    until your balance is paid in full." The form also represented that this "purchase is eligible for our

9    ACCELERATED SHIPMENT PROGRAM provided you continue to meet the conditions of your

10    Revolving Account Agreement," but the Company provided Ms. Cannon with no document entitled

11    "Revolving Account Agreement" or anything similar. In huge, bold typeface, the bottom of the

12    "Shipping verification Form" promised "GET YOUR COMPUTER FAST, SEND BACK ALL OF THE

13    ITEMS LISTED ON THE FAX COVER CHECKLIST TODAY TO GET YOUR BRAND NEW

14    COMPUTER FAST."

15        50.    After receiving and attempting to make sense of these forms, Ms. Cannon contacted

16    BlueHippo several times by telephone and electronic mail about the various BlueHippo

17    misrepresentations in their advertising and sales practices. On February 23, 2005, a BlueHippo customer

18    service representative advised Ms. Cannon that she must sign and return the documents she received or

19    forfeit the money she had already paid. Faced with the threat of forfeiting all the money she had already

20    paid, Ms. Cannon acceded to the demands of BlueHippo and signed and returned by facsimile to

21    BlueHippo the documents BlueHippo requested, including the signed "Shipping Verification Form" and

22    the signed "Terms and Conditions" document.

23        51.    BlueHippo did not deliver a computer or any other merchandise to Ms. Cannon as it had

24    represented. On March 31, 2005, Ms. Cannon faxed and sent by certified mail to a BlueHippo manager

25    and to Joseph K. Rensin a letter informing BlueHippo that she was terminating her account and

26    withdrawing any authorization for BlueHippo to continue withdrawing funds from her account. She also

27    demanded a refund of all payments that BlueHippo collected from her.

28        52.    BlueHippo collected $99.00 from Ms. Cannon's checking account on January 31, 2004.

COMPLAINT FOR MONETARY DECLARATORY AND INJUNCTIVE RELIEF

1    It collected bi-weekly payments of $99.96 on February 1 February 15, March 2, March 15 and March 29,

2    2005, for a total of around $600.  BlueHippo has refused to refund money to Ms. Cannon, despite her

3    complaints to the Governor of Maryland and the Consumer Protection Division of the Maryland

4    Attorney General's Office.

5         53.     The computer system that BlueHippo purported to sell to Ms. Cannon for $1,970.48 was

6    easily available directly from the manufacturer at the time for under $500.

7         **H.      Defendant Joseph K. Rensin's Use of BlueHippo as his Alter Ego.**

8         54.     Joseph K. Rensin is named as a party to this action because he formulated, directed,

9    controlled and had knowledge of the unlawful acts and practices of BlueHippo, and, at all times relevant

10   hereto, was an officer, director, owner and/or agent of defendant BlueHippo.

11        55.     Mr. Rensin conceived of the marketing, financing and sales scheme described in this

12   Complaint. He created BlueHippo as a corporate identity whose sole purpose is to carry out this illegal,

13   fraudulent, and unconscionable scheme while making it appear that the Company, rather than Mr.

14   Rensin, is committing these acts.  In fact, BlueHippo has no business and no customers other than what

15   BlueHippo induces by the practices described in this Complaint.  In addition, upon information and

16   belief, Mr. Rensin has intermingled corporate and personal funds by using his personal credit lines to

17   pay for BlueHippo business expenses, and by using funds of BlueHippo for his personal use.  Upon

18   information and belief, Joseph Rensin has failed to observe corporate formalities, and has taken various

19   other actions inconsistent with the existence of BlueHippo as a bona fide separate corporate identity.

20   Mr. Rensin has treated the Company as an alter ego.

21        56.     Mr. Rensin has knowingly appropriated the ill-gotten profits of BlueHippo for his

22   personal use.  For the Court to sanction the fiction of legal separation between Mr. Rensin and

23   BlueHippo would serve only to sanction fraud and to promote injustice against thousands of consumers.

24        57.     Plaintiffs allege that Mr. Rensin is legally liable for each of the acts of BlueHippo alleged

25   herein, and that the acts attributed herein to BlueHippo are the acts of Mr. Rensin and his agents and

26   employees, just as if he had committed the acts himself.

27                              **CLASS ACTION ALLEGATIONS**

28        58.     Plaintiffs Roylene Ray and Kelly Cannon bring this lawsuit as representatives of

13

COMPLAINT FOR MONETARY DECLARATORY AND INJUNCTIVE RELIEF

1  members of a class of similarly situated persons pursuant to Rules 23(b)(2) and 23(b)(3) of the Federal

2  Rules of Civil Procedure. The "Class" consists of all those California residents who paid money to

3  BlueHippo for merchandise but never received their merchandise, from the time that BlueHippo began

4  doing business in California to the present.

5       59.    All members of the Class have been subjected to the same or substantially similar

6  marketing, financing and sales schemes as Ms. Ray and Ms. Cannon. BlueHippo has failed, moreover,

7  to disclose to all members, either orally or in writing: (a) the purchase price of the computer; (b) the

8  finance charge that consumers will pay if they purchase a computer; (c) the annual percentage rate for

9  financing or even the fact that financing is involved; (d) the total dollar amount of pre-payments that

10  BlueHippo requires before shipping a computer; (e) BlueHippo's intention of retaining a security interest

11  in the computer after shipment; (f) the number of total payments consumers are required to make before

12  owning the computer free from BlueHippo's security interest; and (g) the specific brand, manufacturer,

13  and model of the computer that BlueHippo is offering to sell to consumers.

14       60.    BlueHippo began debiting each Class member's bank account within a few days of their

15  telephone order, and before providing the documents described above to the Class members. BlueHippo

16  did not disclose the terms contained in its "Shipping Verification Form" or "Terms and Conditions"

17  document in BlueHippo's advertising, or make those terms available to the public in any other form.

18  BlueHippo imposes identical terms and conditions on each member of the class, except for differences in

19  due dates and amounts depending on the products ordered.

20       61.    BlueHippo has collected money from each member of the Class.

21       62.    Upon information and belief, the members of the Class number at least in the thousands,

22  and are thus so numerous that joinder of all members of the Class is impracticable. The precise number

23  of Class members is ascertainable from the business records of BlueHippo.

24       63.    Plaintiffs' claims are typical of the claims of the Class for the following reasons:

25           a.    BlueHippo directed the same or virtually identical false, misleading, and

26  deceptive advertisements and representations to Ms. Ray, Ms Cannon, and to each member of the Class,

27  with the purpose of inducing them into ordering merchandise.

28           b.    The Company imposed the same or virtually identical unfair and unconscionable

14

COMPLAINT FOR MONETARY DECLARATORY AND INJUNCTIVE RELIEF

1  price, prepayment, electronic debit, financing, and forfeiture terms on Ms. Ray, Ms. Cannon, and on

2  each member of the Class.

3          c.      BlueHippo extracted money through the same or virtually identical scheme from

4  Ms. Ray, Ms. Cannon and each member of the Class, and asserts the same no refund policy as the

5  ground for its retention of the money paid by Ms. Ray, Ms. Cannon and by each member of the Class

6  while providing them nothing in return.

7      64.     Ms. Ray and Ms. Cannon are adequate representatives of the Class.  Their interests do not

8  conflict with the interests of the Class that they represent respectively.  Plaintiffs are represented by

9  counsel who are competent and experienced in class actions, consumer protection, and complex

10  litigation.

11      65.     Common questions of law and fact exist, and predominate over questions that affect only

12  individual members of the Class.  These questions of law and fact include, but are not limited to, the

13  following:

14          a.      Whether the claims, assertions, representations, and promises that BlueHippo

15  makes in its advertisements are unfair, unlawful, fraudulent, untrue or misleading, and whether

16  BlueHippo knows or has reasonable grounds to believe that its claims, assertions and promises are

17  unfair, deceptive, untrue or misleading;

18          b.      Whether BlueHippo's representations that its computers are "brand name,"

19  "top-of-the-line," and "lightning fast"; that it has "relationships that let us offer the finest computers on

20  the market, made by the most recognizable names in the industry"; that it will arrange for immediate

21  shipment of the computer once consumers have completed only 3 months of payments constitute

22  representations that the computers have characteristics or benefits that they do not possess in violation of

23  the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code section 1770(a)(5), and/or

24  constitute representations that the computers are of a particular standard, quality, grade, style, or model,

25  in violation of section 1770(a)(7) of the Act, and/or constitute the advertisement of goods with the intent

26  not to sell them as advertised in violation of section 1770(a)(9);

27          c.      Whether BlueHippo's representations that it provides financing; it is "approving"

28  the consumer's worthiness for an extension of credit that potentially places BlueHippo at risk;

---

15

COMPLAINT FOR MONETARY DECLARATORY AND INJUNCTIVE RELIEF

1  consumers can "build a short credit history" through its payment plan constitute representations that its

2  services have characteristics, uses, benefits, or qualities which they do not have in violation of section

3  1770(a)(5) of the Act;

4           d.      Whether BlueHippo's representations to Ms. Ray, Ms. Cannon, and to each

5  member of the Class, regarding its no refund policy, which BlueHippo applies in a way that denies

6  refunds to consumers who received nothing of value from BlueHippo cancel their orders and/or

7  withdraw authorization for preauthorized electronic payments, constitute representations "that a

8  transaction confers or involves rights, remedies, or obligations which it does not have or involve, or

9  which are prohibited by law"; in violation of CLRA section 1770(a)(14), and/or whether the inclusion of

10  such a provision in consumer agreements constitutes unconscionable term in violation of section

11  1770(a)(19).

12           e.      Whether the prices that BlueHippo charges plaintiffs and each member of the

13  Class, whereby consumers must pay several times the fair retail price for such products, are

14  unconscionable and therefore violate the CLRA section 1770(a)(19);

15           f.      Whether the purported agreements between BlueHippo and certain members of

16  the class, memorialized in the "Shipping Verification Form" and/or "Terms and Conditions," lack

17  consideration in that BlueHippo reserves to itself the absolute right to terminate the agreement at any

18  time, and whether those purported agreements are therefore not legally binding;

19           g.      Whether BlueHippo's marketing, sales and financing transactions with plaintiffs

20  and members of the Class are unconscionable in light of the following factors:

21               i.      BlueHippo markets to low-income consumers such as plaintiffs;

22               ii.      BlueHippo targets consumers who lack access to traditional and legitimate

23  sources of credit and promises such consumers guaranteed credit approval;

24               iii.      BlueHippo targets consumers who lack sophistication in financial affairs;

25               iv.      BlueHippo targets consumers who lack knowledge about the products that

26  the Company markets;

27               v.      BlueHippo insists on contracts of adhesion, imposing uniform and onerous

28  contractual terms it drafts and presents on a take-it-or-leave-it basis to consumers who lack any

COMPLAINT FOR MONETARY DECLARATORY AND INJUNCTIVE RELIEF

1    meaningful bargaining power and who are not permitted to negotiate any terms;

2              vi.    BlueHippo conceals the brand name, model or manufacturer of the

3    products it markets in its advertising, and conceals the particular model of computer from consumers

4    even after the consumer has placed his or her order; and

5              vii.    BlueHippo begins withdrawing money from consumers' accounts prior to

6    providing them with any written record of the sales and/or financing transaction, without informing them

7    of the right to cancel authorization for electronic funds transfers at any time, without informing them of

8    their right to pay in a form other than electronic transfers, and is therefore able to impose terms on

9    consumers under the threat of forfeiture.

10             viii.    Whether the purported agreements between BlueHippo and members of

11   the Class, whether memorialized in a "Shipping Verification Form" and/or "Terms and Conditions" or

12   not, are unenforceable because they are unconscionable;

13             ix.    Whether BlueHippo has violated the Unruh Act, Cal. Civ. Code section

14   1801 *et seq.*, by failing to disclose to plaintiffs and other members of the Class the terms required by

15   those laws, including but not limited to: the credit nature of the transaction; the brand, model and

16   manufacturer of the goods; the fact that the transaction is a retail installment sale; the amount of finance

17   charges imposed for the extension of credit; the annual percentage rate of the financing; the purchase

18   price of the products separate from finance charges; and the right of consumers to pay the outstanding

19   balance of the purchase price and avoid further interest charges;

20             x.    Whether BlueHippo has been unjustly enriched at the expense of plaintiffs

21   and members of the Class, and is therefore liable to provide restitution to them;

22             xi.    Whether BlueHippo and/or Joseph K. Rensin engaged in the unlawful

23   conduct alleged here willfully, maliciously, and in wanton disregard of plaintiffs' rights, entitling

24   plaintiffs and members of the Class to punitive damages;

25             xii.    Whether Joseph K. Rensin has knowingly appropriated the fraudulently

26   obtained funds of plaintiffs and members of the Class, justifying a declaration that he holds such funds

27   in a constructive trust for the benefit of plaintiffs and members of the Class; and

28             xiii.    Whether Joseph K. Rensin has intermingled personal and corporate funds,

17

COMPLAINT FOR MONETARY DECLARATORY AND INJUNCTIVE RELIEF

1    and/or failed to observe corporate formalities, and/or used the corporate form of BlueHippo to perpetuate

2    a fraud on plaintiffs and members of the Class, and accordingly whether that the corporate form should

3    be ignored and he should be held personally liable for injuries caused by BlueHippo's business practices.

4         66.    With respect to all claims except those based on provisions of the CLRA, the class action

5    is superior to other available methods for fair and efficient adjudication of this controversy. Many

6    members of the Class may be unaware that they have claims against defendants. In addition, the small

7    amount of each individual claim relative to the costs and burdens of bringing a lawsuit makes it

8    impracticable for members of the Class to pursue their claims individually. The class action procedure is

9    necessary in order that the Defendants not be immunized as a practical matter from liability for the harm

10   they have imposed on plaintiffs, and on each member of the Class.

11        67.    Plaintiffs are aware of no factors that will make it difficult to manage this litigation as a

12   class action. Defendants record the names, addresses, borrowing and repayment histories of members of

13   the Class, so that any necessary communications with the Class, and any relief granted, can be

14   accomplished without undue difficulty.

15        68.    Defendants have acted or refused to act on grounds that are generally applicable to the

16   Class, so that declaratory relief and final injunctive and other equitable relief as to the Class is

17   appropriate and necessary. Defendants represent to members of the Class that they may reactivate their

18   accounts with BlueHippo at any time and they will be credited with payments made to date, indicating

19   that these payments are credited specifically to accounts for each individual Class member, and do not

20   dissipate into the general funds of the Company.

21        **FIRST CAUSE OF ACTION FOR DAMAGES AND PUNITIVE DAMAGES**
     **(Violation of California Civil Code §§ 1709, 1710 (Fraud, Deceit, Concealment)**
22   **Asserted on Behalf of Plaintiffs and the Plaintiff Class)**

23        69.    Plaintiffs reallege and incorporate herein by reference the allegations set forth in each of

24   the foregoing paragraphs.

25        70.    At all times relevant to this action, BlueHippo failed to disclose to Plaintiffs, class

26   members or the public: (a) the total dollar amount of pre-payments that BlueHippo would require before

27   shipping a computer to any consumer; (b) BlueHippo's intention of retaining a security interest in the

28   computer after shipment; (c) the number of total payments consumers are required to make before

COMPLAINT FOR MONETARY DECLARATORY AND INJUNCTIVE RELIEF

1   owning the computer free from BlueHippo's security interest; (d) the specific brand, manufacturer, and

2   model of the computer that BlueHippo is offering to sell; (e) the purchase price of the computer; (f) the

3   finance charge that consumers would pay if they purchased a computer; and (g) the annual percentage

4   rate for financing or even the fact that financing was involved.

5        71.    BlueHippo also represented to customers and to the public that it had the right to retain

6   their money, even though consumers received nothing in return.  In fact, it concealed from class

7   members the fact that it is legally prohibited from retaining consumers' money under these

8   circumstances.  BlueHippo had a duty to disclose such fact to class members but intentionally failed to

9   do so.

10       72.    BlueHippo made the representations and omissions herein alleged with the intention of

11  inducing the public, including but not limited to plaintiffs and members of the class, to enter an

12  automatic payment plan.

13       73.    Plaintiffs were aware of BlueHippo's representations herein alleged and relied on them

14  and the alleged omissions in opening up an automatic payment plan with BlueHippo.

15       74.    At the time BlueHippo made the representations herein alleged, it knew that the

16  representations were false.

17       75.    BlueHippo made the representations herein alleged with the intention of depriving

18  plaintiffs and members of the class of property or legal rights, to wit: some or all of the money in their

19  bank accounts, causing injury.  This conduct of BlueHippo was fraudulent.

20       76.    As a proximate result of BlueHippo's intentional misrepresentations, Plaintiffs and

21  members of the Plaintiff class were damaged by suffering the loss of money in an amount to be proven at

22  trial.

23       77.    The wrongful conduct of BlueHippo, as herein alleged, was intentional and was done

24  with malicious, oppressive or fraudulent intent.  Plaintiffs are therefore entitled to recover punitive

25  damages.

26            **SECOND CAUSE OF ACTION FOR DAMAGES**
             **(Negligent Misrepresentation, on Behalf of Plaintiffs and the Plaintiff Class)**
27

28       78.    Plaintiffs reallege and incorporate herein by reference the allegations set forth in each of

19

COMPLAINT FOR MONETARY DECLARATORY AND INJUNCTIVE RELIEF

1    the foregoing paragraphs.

2         79.     At the time that BlueHippo made the misrepresentations herein alleged, BlueHippo had

3    no reasonable grounds for believing the representations to be true.

4         80.     As a proximate result of BlueHippo's negligent misrepresentations, Plaintiffs and the

5    Plaintiff Class were damaged by suffering the loss of money in an amount to be proven at trial.

6        **THIRD CAUSE OF ACTION FOR RESTITUTION AND INJUNCTIVE RELIEF**
       **(Violation of the Consumer Legal Remedies Act, California Civil Code § 1750 *et seq.*,**

7                      **on Behalf of Plaintiffs and the Plaintiff Class)**

8         81.     Plaintiffs reallege and incorporate herein by reference the allegations set forth in each of

9    the foregoing paragraphs as if fully alleged herein.

10        82.     The Consumer Legal Remedies Act, California Civil Code section 1750 *et seq.*

11    (hereinafter "CLRA") was designed to protect consumers from unfair and deceptive business practices.

12    To this end, the CLRA sets forth a list of unfair and deceptive acts and practices that are specifically

13    prohibited in any transaction intended to result, or which result, in the sale or lease of goods or services

14    to any consumer. The provisions of the CLRA may not be waived by any consumer. Cal. Civ. Code §

15    1751. BlueHippo's acts and practices, as described herein, violate the following provisions of the

16    CLRA, without limitation:

17          a) Section 1770(a)(5) in that BlueHippo represented that the goods (computers for sale)

18    have characteristics, uses, benefits or qualities which they do not have, to wit: computers are "brand

19    name," "top-of-the-line," the "finest computers on the market," "lightning fast"; BlueHippo has

20    "relationships that let us offer the finest computers on the market, made by the most recognizable names

21    in the industry"; Blue Hippo will arrange for immediate shipment of the computer once consumers have

22    completed only 3 months of payments.

23          b) Section 1770(a)(5) in that BlueHippo represented that the services (automatic payment

24    plan) have characteristics, uses, benefits or qualities which they do not have, to wit: the company

25    "provides financing"; the company is "approving" the consumer's worthiness for an extension of credit

26    that potentially places it at risk as a creditor; consumers can "build a short credit history" through its

27    automatic payment plan.

28          c) Section 1770(a)(7) in that BlueHippo represented that the goods (computers) are of a

COMPLAINT FOR MONETARY DECLARATORY AND INJUNCTIVE RELIEF

particular standard, quality, or grade, or that goods are of a particular style or model, when they are of another, to wit: computers are "brand name," "top-of-the-line," the "finest computers on the market," and "lightning fast."

d) Section 1770(a)(7) in that BlueHippo represented that the services (automatic payment plan) are of a particular standard, quality, or grade, to wit:  the company "provides financing," the company is "approving" the consumer's worthiness for an extension of credit that potentially places it at risk as a creditor, and that consumers can "build a short credit history" through its automatic payment plan.

e) Section 1770(a)(9) in that BlueHippo has advertised goods (computers) with the intent not to sell them as advertised, to wit: "brand name," "top-of-the-line," and "lightning fast."

f) Section 1770(a)(13) in that BlueHippo made false or misleading statements of fact concerning reasons for, existence of, or amounts of the prices for its computers, to wit:  BlueHippo has "relationships that let us offer the finest computers on the market, made by the most recognizable names in the industry."

g) Section 1770(a)(14) in that BlueHippo represented that the transactions arising out of its automatic payment plan conferred rights and remedies, including its forfeiture or no refund policy, which they did not have or which are prohibited by law, namely the law governing unconscionability.

h) Section 1770(a)(19) in that BlueHippo attempted to insert and inserted unconscionable provisions in the contract for the sale of computers concerning its automatic payment plan, termination of payments, forfeiture policy, and no refund policy.

83.    As a result of the unfair and deceptive acts of BlueHippo described herein, Plaintiffs and members of the Plaintiff Class have suffered substantial economic losses in an amount to be proven at trial.

84.    Pursuant to California Civil Code sections 1780 and 1781, Plaintiffs and the Plaintiff Class hereby request certification of the Plaintiff Class, injunctive relief, restitution, and attorneys' fees, costs and expenses pursuant to California Civil Code section 1780(d).

COMPLAINT FOR MONETARY DECLARATORY AND INJUNCTIVE RELIEF

**FOURTH CAUSE OF ACTION FOR RESTITUTION AND INJUNCTIVE RELIEF**
(Violation of California Business and Professions Code § 17200 *et seq.*,
Asserted on Behalf of Plaintiffs and the Plaintiff Class)

85.     Plaintiffs reallege and incorporate herein by reference the allegations set forth in each of the foregoing paragraphs as if fully alleged herein.

86.     California Business and Professions Code section 17200, the Unfair Competition Law ("UCL"), defines unfair competition to include any unlawful, unfair or fraudulent business act or practice.  The UCL provides that a Court may order injunctive relief and restitution to class members as remedies for any violation of the Act.

87.     The business acts and practices of BlueHippo, as herein and hereinafter described, constitute an unlawful business practice in violation of the UCL for the reasons set forth below, without limitation:

      a)     The acts and practices violate California Civil Code sections 1709 and 1710 for the reasons set forth in the First and Second Causes of Action, and are, therefore, unlawful;

      b)     The acts and practices violate California Civil Code section 1750 *et seq.*, for the reasons set forth in the Third Cause of action and are, therefore, unlawful.

      c)     The acts and practices violate California Business and Professions Code section 17500 for the reasons set forth in the Fifth Cause of Action and are, therefore, unlawful.

88.     The business acts and practices of BlueHippo as described herein also constitute unfair business practices in violation of the UCL in that such acts and practices offend an established public policy relating to representations and disclosures, are unscrupulous, and are substantially injurious to consumers.

89.     In addition, the business acts and practices of BlueHippo as described herein constitute fraudulent business practices in violation of the UCL in that such acts and practices are likely to deceive California consumers as to their legal rights and obligations with respect to the goods and services that it is providing.

90.     Plaintiff and members of the Plaintiff class have suffered economic injury as a result of Defendants' conduct alleged herein, including but not limited to the loss of funds under BlueHippo's automatic payment plan.

22

COMPLAINT FOR MONETARY DECLARATORY AND INJUNCTIVE RELIEF

91.     Pursuant to California Business and Professions Code section 17203, Plaintiffs seek to enjoin these acts and practices and to obtain restitution of all monies taken from Plaintiffs and the Plaintiff Class by reason of and through the use of such unlawful, unfair, and fraudulent acts and practices.  Pursuant to California Business and Professions Code section 17203, Plaintiffs, individually and on behalf of the Plaintiff Class, hereby request preliminary and permanent injunctive relief prohibiting such practices in the future, and such other orders as may be necessary to restore to members of the class any money or property, real or personal, which may have been seized from them by means of such unlawful, unfair and fraudulent business practices.  In addition, pursuant to California Code of Civil Procedure section 1021.5, Plaintiffs are entitled to recover their reasonable attorneys' fees, costs, and expenses incurred in bringing this action.

### FIFTH CAUSE OF ACTION FOR RESTITUTION AND INJUNCTIVE RELIEF
#### (Violation of California Business and Professions Code § 17500 *et seq.*,
#### Asserted on Behalf of Plaintiffs and the Plaintiff Class)

92.     Plaintiffs reallege and incorporate herein by reference the allegations set forth in each of the foregoing paragraphs as if fully alleged herein.

93.     Plaintiffs bring this Cause of Action on behalf of themselves and the Plaintiff Class. California Business and Professions Code section 17500, the False Advertising Act ("FAA") prohibits untrue or misleading advertising.  A court may order injunctive relief and restitution as remedies for any violations of California Business and Professions Code section 17500 as part of the FAA.

94.     At all times material herein, BlueHippo has engaged in advertising to the public, including Plaintiffs and members of the Plaintiff Class, regarding the sale of computers.  The advertisements include, without limitation, representations to the effect that computers are "brand name," "top-of-the-line," "lightning fast," among the "finest computers on the market," and that they are "affordable" because customers can pay in weekly or bi-weekly payments.  The advertisements were disseminated to and received by the public, including members of the Plaintiff Class, in California.

95.     BlueHippo engaged in the advertising herein alleged with the intent to induce the public and class members to enter into its Automatic Payment Plan.

96.     BlueHippo's advertising was untrue or misleading and likely to deceive the public in that while BlueHippo stated and implied that the computers are "brand name," "top-of-the-line," "lightning

1   fast," among the "finest computers on the market," they are in fact below the industry standard.  In

2   addition, BlueHippo stated and implied that the computers are affordable when, in fact, it was charging a

3   price that is several times the price a consumer would have to pay elsewhere.

4        97.    BlueHippo also implies that it is a "consumer finance compan[y]" that provides

5   financing.  In fact, it does not provide "financing" in the commonly understood meaning of the word.

6   Instead, it collects more money that the consumer would need to pay for the product elsewhere.

7        98.    BlueHippo also implies that it will ship the computer "once you have submitted your first

8   3 months of payments."  In fact, it routinely waits an additional six to eight weeks before shipping the

9   computer so that the customer ends up making at least 21 or more weekly payments, and waiting some

10  five or more months, before receiving any merchandise.

11       99.    In making and disseminating the statements herein alleged, BlueHippo knew, or by the

12  exercise of reasonable care, should have known that the statements were and are untrue or misleading

13  and so acted in violation of California Business and Professions Code section 17500.

14       100.    Plaintiff and members of the Plaintiff class have suffered economic injury as a result of

15  Defendants' conduct alleged herein, including but not limited to the loss of funds under BlueHippo's

16  automatic payment plan.

17       101.    Pursuant to California Business and Professions Code section 17535, Plaintiffs seek to

18  enjoin these acts and practices and to obtain restitution of all funds seized from Plaintiff and the Plaintiff

19  Class by reason and through the use of such false or misleading advertising.  Pursuant to California

20  Business and Professions Code section 17535, Plaintiffs, individually and on behalf of all members of

21  the general public who are, have been or may be, subjected to these unlawful, unfair and fraudulent

22  business acts and practices of Defendants, hereby request preliminary and permanent injunctive relief

23  prohibiting such practices in the future, and such other orders as may be necessary to restore to each

24  class member any money or property, real or personal, which may have been seized from them by means

25  of such false advertising.  In addition, pursuant to California Code of Civil Procedure section 1021.5,

26  Plaintiff is entitled to recover her reasonable attorneys' fees, costs, and expenses incurred in bringing

27  this action.

28

COMPLAINT FOR MONETARY DECLARATORY AND INJUNCTIVE RELIEF

## SIXTH CAUSE OF ACTION FOR DAMAGES AND INJUNCTIVE RELIEF
### (Violations of the Unruh Act, California Civil Code § 1801 *et seq.*)

102.    Plaintiffs reallege and incorporate herein by reference the allegations set forth in each of the foregoing paragraphs as if fully alleged herein.

103.    The transactions between BlueHippo, and Ms. Ray, Ms. Cannon and each member of the Class, constitute retail installment sales within the meaning of the Unruh Act, California Civil Code section 1802.5, in that they are transactions between a retail seller and retail buyers for a deferred payment price payable in installments.  Agreements between BlueHippo, and Ms. Ray, Ms. Cannon and each member of the Class, for the purchase of BlueHippo products constitute retail installment sales contracts within the meaning of section 1802.6 of the Act in that they provide for payments in at least four installments.

104.    BlueHippo marketed and offered its products for sale in California to California residents, and Ms. Ray, Ms. Cannon and each member of the Class agreed to purchase products from BlueHippo in California.

105.    In each of its transactions with Ms. Ray, Ms. Cannon and each member of the Class, BlueHippo violated section 1803.2 of the Act by failing to include the provisions of the retail installment sales contract in a single document, by failing to include in that document the entire agreement of the parties with respect to the cost and terms of payment for the goods, by failing to include at the top of the contract the words "Security Agreement" in at least 12-point bold type, and by failing to include a notice that the consumer can prepay the full amount due under this agreement at any time and obtain a partial refund of the finance charge under section 1806.3.

106.    In each of its transactions with Ms. Ray, Ms. Cannon and each member of the Class, BlueHippo violated section 1803.3 of the Act by failing to disclose, in a section of a written contract labeled "itemization of the amount financed," the cash price of the product, the total price after all payments, the finance charge, the total number of payments, the right of the consumer to prepay the purchase price and avoid finance charges, the method of computing the finance charge, and the security interests BlueHippo retained.

107.    BlueHippo imposes terms and provisions that are prohibited by the Act, including but not

1  limited to:

2             a.     The requirement that consumers agree to forfeiture of their payments if they

3  decide to rescind or void the contract, in violation of section 1804.1(h), which prohibits such a forfeiture

4  or penalty;

5             b.     The reservation to the Company of the right to accelerate payments due simply

6  based on BlueHippo "deem[ing] ourselves in any way insecure," in the absence of a default of the

7  performance of any duty owed by the consumer, in violation of section 1804.1(b) of the Act;

8             c.     The imposition of a class action waiver and mandatory arbitration provision in

9  violation of section 1804.1(g) of the Act, which prohibits waivers by purchasers of any legal remedies

10  that the purchaser may have; and

11            d.     The imposition of a venue provision specifying that all disputes or proceedings

12  related to the transactions Baltimore, Maryland, in violation of section 1804.1(I) of the Act, which

13  requires that disputes be heard where the consumer resides, signed documents, or where the consumer

14  entered into the transaction.

15            e.     In each of the transactions between BlueHippo and Ms. Ray, Ms. Cannon and

16  each member of the Class, BlueHippo denies consumers the right to prepay the amounts owed and avoid

17  the imposition of finance charges, in violation of section 1806.3 of the Act.

18            f.     In each of the transactions between BlueHippo and Ms. Ray, Ms. Cannon and

19  each member of the Class, BlueHippo fails to mail regular statements of the consumer's account as

20  required by section 1806.2 of the Act.

21            g.     Ms. Ray, Ms. Cannon, and each member of the Class has been injured by these

22  violations of the Act.

23        108.    Pursuant to Civil Code section 1812.9, Plaintiffs seek to obtain damages for Defendants'

24  violations of the Unruh Act, and for any other Order deemed appropriate by this Court.

25                              **DEMAND FOR JURY TRIAL**

26        Plaintiffs hereby demand a jury trial as provided by Rule 38(a) of the Federal Rules of Civil

27  Procedure.

28

COMPLAINT FOR MONETARY DECLARATORY AND INJUNCTIVE RELIEF

1

**PRAYER FOR RELIEF**

2      WHEREFORE, Plaintiffs respectfully pray as follows:

3      1.      That this Court certify this case as a class action;

4      2.      That this Court find and declare Defendants' acts and practices as described herein to be

5 unlawful, unfair and fraudulent;

6      3.      That this Court declare the purported agreements between BlueHippo, and Ms. Ray, Ms.

7 Cannon and each member of the Class, are null and void, and create no legally enforceable obligations;

8      4      That Plaintiffs and members of the Plaintiff Class be awarded the special damages set

9 forth in California Civil Code section 1780 as appropriate;

10      5.      That Plaintiffs and members of the Plaintiff Class be awarded punitive damages

11 according to proof at trial;

12      6.      That Plaintiffs and members of the Plaintiff Class be awarded monetary damages

13 according to proof at trial;

14      7.      That Plaintiffs and members of the Plaintiff Class be awarded the damages set forth in

15 California Civil Code section 1812.9.

16      8.      That Defendants be preliminarily and permanently enjoined from engaging in unlawful,

17 unfair, and fraudulent acts and practices alleged herein;

18      9.      That Defendants be ordered to make restitution to Plaintiffs and all members of the

19 Plaintiff Class;

20      10.      That the Court make such orders as may be necessary to restore to any person in interest,

21 any money or property, real or personal, which may have been seized from Plaintiff by means of such

22 unlawful, unfair, and fraudulent business practices;

23      11.      That Plaintiffs and members of the Plaintiff Class be awarded attorneys' fees and

24 expenses pursuant to California Civil Code section 1780 and California Code of Civil Procedure section

25 1021.5;

26      12.      That Plaintiff and the Plaintiff Class be awarded pre-judgment interest on all sums

27 collected;

28      13.      For costs of suit herein incurred; and

COMPLAINT FOR MONETARY DECLARATORY AND INJUNCTIVE RELIEF

14. For such other and further relief as the Court may deem proper.

DATED:       March 8, 2006                    THE STURDEVANT LAW FIRM
                                              A Professional Corporation


                                              James C. Sturdevant
                                              Sylvia M. Sokol
                                              THE STURDEVANT LAW FIRM
                                              A Professional Corporation
                                              475 Sansome Street, Suite 1750
                                              San Francisco, CA 94111
                                              (415) 477-2410

                                              David J. Marshall
                                              Debra S. Katz
                                              KATZ, MARSHALL, BANKS, LLP
                                              1718 Connecticut Ave., N.W.
                                              Sixth Floor
                                              Washington, DC 20009
                                              (202) 299-1140


                                              Gary Peller (*Pro Hac Vice* Application filed herewith)
                                              (gpeller@law.georgetown.edu)
                                              Professor of Law
                                              GEORGETOWN UNIVERSITY LAW CENTER
                                              600 New Jersey Avenue, N.W.
                                              Washington, D.C. 20001
                                              Telephone:  (202) 662-9122
                                              Facsimile: (202) 662-9608


                                              Attorneys for Plaintiffs
                                              Roylene Ray and Kelly Cannon

28

COMPLAINT FOR MONETARY DECLARATORY AND INJUNCTIVE RELIEF