<div style="float:left">**United States District Court**
For the Northern District of California</div>

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROYLENE RAY, KELLY CANNON, KARLA HODGES, and LAKETA HOWLER, on behalf of themselves and all others similarly situated,<br><br>   Plaintiffs,<br><br> v.<br><br>BLUEHIPPO FUNDING, LLC, et al.,<br><br>   Defendants.<br>_____/ | No. C 06-01807 JSW<br><br>**ORDER GRANTING IN PART AND DENYING IN PART GATEWAY'S MOTION TO DISMISS SECOND AMENDED COMPLAINT AND GRANTING PLAINTIFFS' MOTION TO AMEND** |

  Now before the Court is the motion filed by Defendant Gateway Inc. ("Gateway") to dismiss the Second Amended Complaint and the motion filed by plaintiffs Roylene Ray, Kelly Cannon, Karla Hodges and Laketa Coulter, on behalf of themselves and all others similarly situated (collectively "Plaintiffs") to amend their second amended complaint. The Court finds that these matters are appropriate for disposition without oral argument and the matters are deemed submitted. *See* N.D. Civ. L.R. 7-1(b). Accordingly, the hearing and case management conference set for May 9, 2008 are HEREBY VACATED. Having considered the parties' pleadings, relevant legal authority and the record in this case, and for reasons set forth in the remainder of this Order, the Court hereby GRANTS IN PART AND DENIES IN PART Gateway's motion to dismiss and GRANTS Plaintiffs' motion to amend the complaint.

**BACKGROUND**

Plaintiff originally filed their complaint in this case on March 8, 2006. Plaintiffs thereafter amended the complaint twice. The instant motion to dismiss challenges Plaintiffs' Second Amended Complaint ("SAC"). Plaintiffs allege that Gateway aided and abetted BlueHippo Funding ("BlueHippo") in its unlawful scheme to defraud Plaintiffs. The SAC alleges that:

> Gateway appointed BlueHippo as a Gateway Reseller and/or Partner in December 2003. From that time through some time in early 2007, Gateway was BlueHippo's main or sole supplier of computers. During this time, Gateway provided substantial assistance to BlueHippo by providing the Company with the afore-described services that it provided to Resellers and Partners. In addition, Gateway specifically licensed BlueHippo to use Gateway's trademarks in the marketing and sale of computers. During the time that BlueHippo served as a Gateway Reseller, BlueHippo's sales scripts directed salespersons to repeat the Gateway name several times during each call, and to inform them that "BlueHippo is the largest Gateway reseller in the country ..." BlueHippo's advertisements echoed this representation, and Gateway reciprocated by holding BlueHippo out to consumers as a "Gateway Business Partner" and a "Gateway Authorized Reseller."

(SAC, ¶ 49.)

Gateway and BlueHippo entered an Gateway Authorized Reseller Agreement in December 2003 ("Reseller Agreement"). (*Id.*; *see also* Declaration of Stan Karas, Ex. A.) Under the Reseller Agreement, BlueHippo became a licensed reseller of Gateway computers. Plaintiffs allege that by virtue of the Reseller Agreement, Gateway had actual knowledge of BlueHippo's unfair and deceptive practices. (SAC, ¶ 50.) The Reseller Agreement referred to BlueHippo as the Licensee and specifically represented that "Gateway is familiar with and approves the nature and quality of Licensee's services," and required that BlueHippo agree to "maintain that standard of quality comparable with the current quality of Licensee services throughout the term" of the Reseller Agreement. (*Id.*) This knowledge, according to Plaintiff, was reinforced by large numbers of telephone calls to Gateway's customer service department from complaining BlueHippo customers. (*Id.*, ¶ 51.) In addition, Plaintiffs claim that BlueHippo received significant media coverage during the period it contracted with Gateway as a reseller and that editors of a computer magazine wrote e-mails to Gateway criticizing its relationship with BlueHippo and requesting an explanation from Gateway. (*Id.*, ¶ 52.) Plaintiffs claim that a

2

Gateway representative, David Hallisey, stated that "[w]e've clearly been aware of their business model from the get-go," when asked about his knowledge of BlueHippo's sales practices. (*Id.*) Plaintiffs also allege that investigations of BlueHippo's sales practices by the Federal Trade Commission and various other state-level regulators as well as the suit filed by the State of Illinois against BlueHippo and its owner for consumer fraud became public during the time BlueHippo marketed Gateway's computers as a Gateway authorized reseller. (*Id.*, ¶ 53.) In addition, the Reseller Agreement specifically stated that Gateway was fully aware of and approved BlueHippo's nature and quality of service and required BlueHippo to agree to maintain standards of quality comparable with the current quality of services. (*Id.,* ¶ 50.)

Plaintiffs further claim that Gateway's assistance significantly enhanced BlueHippo's ability to take money from Plaintiffs without providing anything in return. (*Id.* ¶ 54.) According to Plaintiffs, BlueHippo benefitted because Gateway's contributions to their business lent legitimacy to BlueHippo's practices. (*Id.*) In addition, Gateway benefitted from the agreement with BlueHippo because it was able to unload low-end computers on BlueHippo customers which it otherwise would have difficulty selling through legitimate retail channels or did not want to advertise so as not to degrade the Gateway brand name in the marketplace. (*Id.*, ¶ 55.) Plaintiffs allege that Gateway's agreement with BlueHippo allowed it to charge premium prices for computers that BlueHippo delivered to its customers as well as charge "bad customer" fees for customers for whom BlueHippo did not purchase computers. (*Id.*)

In addition, Plaintiffs claim that Gateway was negligent in its supervision of its resellers and is thus liable to Plaintiffs for injuries they sustained under a negligence theory. (*Id.,* ¶ 56.) Finally, Plaintiffs claim that Gateway received and now has money that it knows was obtained through BlueHippo's fraudulent scheme. (*Id.*)

**ANALYSIS**

**A.    Gateway's Motion to Dismiss.**

    **1.    Legal Standard on a Motion to Dismiss.**

A motion to dismiss is proper under Rule 12(b)(6) where the pleadings fail to state a

3

claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In ruling on a Rule 12(b)(6) motion, the complaint is construed in the light most favorable to the non-moving party and all material allegations in the complaint are taken to be true. *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986). The court, however, is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

### 2. Plaintiffs Sufficiently Allege that Gateway Aided and Abetted BlueHippo in its Tortious Activities.

Gateway moves to dismiss Plaintiffs' SAC on the theory that Plaintiffs have not pled sufficient facts to meet the standard necessary to demonstrate that Gateway aided and abetted BlueHippo in its tortious activities. California has adopted a common law rule imposing liability for aiding and abetting on one who gives substantial assistance to a wrongdoer with actual knowledge that the other's conduct constitutes a breach of duty. *See In re First Alliance Mortg. Co.,* 471 F.3d 977, 993 (9th Cir. 2006) (citing *Casey v. U.S. Bank National Assn.*, 127 Cal. App. 4th 1138, 1144 (2005)); *see also* Rest. 2d Torts, § 876 (b). According to the common law definition of aiding and abetting, a person may be guilty of aiding and abetting in the commission of an intentional tort, "if the person ... knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act ... ." *Schulz v. Neovi Data Corp.*, 152 Cal. App. 4th 86, 93 (2007) (citing *Fiol v. Doellstedt*, 50 Cal. App. 4th 1318, 1325 (1996)) (internal quotations omitted).

Restatement Second of Torts also recognizes a cause of action for aiding and abetting in a civil action: "[f]or harm resulting to a third person from the tortious conduct of another, one is subject to liability if he knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself ... ." *Id.* (citing Rest. 2d Torts, §876(b).) "Advice or encouragement to act operates as a moral support to a tortfeasor and if the act encouraged is known to be tortious it has the same effect upon the liability of the adviser as participation or physical assistance. ... It likewise applies to a person who knowingly

4

gives substantial aid to another who, as he knows, intends to do a tortious act." *Id.* (citing Rest. 2d Torts, § 876, com. d, p. 317.)

In *Schulz*, the plaintiff sued four credit card processing and billing services for aiding and abetting the defendant in an illegal lottery under the Business and Professions Code. *Schulz*, 152 Cal. App. 4th at 89. Schulz alleged that the companies, which included Ginix and PaySystems, had actual knowledge of the scam that the defendant, EZ Expo ("EZ"), perpetrated, but continued to provide substantial assistance to EZ. *Id.* at 94-96. The billing companies would process payments submitted by the plaintiff, and after taking out their share of the costs, would forward those payments to EZ. *Id.* at 90. All of the defendants argued that the complaint failed to state sufficient facts to support a cause of action for aiding and abetting unfair competition. *Id.* at 91. The trial court sustained the demurrers without leave to amend. *Id.*

The California Court of Appeal sustained the demurrer as to two of the defendants, but reversed with regard to Ginix and PaySystems. *Id.* at 93. The court found that Schulz had stated sufficient facts to support a cause of action for aiding and abetting unfair competition against defendants Ginix and PaySystems and remanded to allow him to amend his complaint in order to add other members of the class to properly state a claim against PaySystems as Plaintiff admitted that he never used their services. *Id.* The court held that the complaint stated sufficient facts to support the allegation that both Ginix and PaySystems had actual knowledge of the illegal activity because it stated that they reviewed EZ's website and recognized that it was an illegal lottery. *Id.* at 94. The complaint also stated that the defendants realized that the site was a good source of revenue and was very profitable for them. *Id.* Plaintiff also alleged that Ginix and PaySystems knew they were facilitating orders for an unlawful scheme and that the EZ "website made false, misleading and deceptive claims and engaged in unfair business practices" and "knew the money being paid by the consumer was for purposes of participating in the lottery." *Id.*

The appellate court further found that the complaint satisfied the element of substantial assistance because both defendants allowed EZ to configure its website so as to display their logos allowing the consumers to link directly to their websites to process payments. *Id.* The complaint also stated that by providing these services, the defendants believed that more people

5

would join EZ and participate in the lottery generating more revenue for Ginix and PaySystems. *Id.* In addition, the complaint stated that "PaySystems and Ginix also realized that ... providing their services to EZ ... [,] would lend an aura of respectability and further encourage participation." *Id.* Schulz finally claimed that Ginix and PaySystems had a direct stake in EZ's success and "contracted for use of their services to encourage participation and make more money." *Id.*

### a. Complaint Makes Sufficient Allegations that Gateway Had Actual Knowledge of BlueHippo's Practices.

If taken in the light most favorable to the Plaintiff and all allegations are construed to be true, the complaint in this case states sufficient facts to withstand a motion to dismiss. *See Sanders v. Kennedy*, 794 F.2d at 481. Just as in *Schulz*, Plaintiffs here allege that Gateway had actual knowledge of BlueHippo's practices because the Reseller Agreement specifically required Gateway to review and approve the services BlueHippo provided to its customers. Even if, as Gateway maintains, the Reseller Agreement is a standard agreement that it signs with all of its authorized resellers and it had no knowledge that BlueHippo's practices were unlawful at the time they entered into this contract, according to the allegations in the complaint, Gateway was put on notice by the media publicity, the letter from the newspaper magazine, as well as numerous calls by BlueHippo customers who complained that they never received their computers. Furthermore, Gateway does not refute that Gateway's representative stated that Gateway was aware of BlueHippo's business model from the beginning of the business relationship. Gateway only disputes the meaning of the statement. Such factual disputes are not the stuff of a motion to dismiss.

### b. Complaint Adequately Alleges that Gateway Provided BlueHippo With Substantial Assistance.

Gateway accurately states that a third party does not have a duty to report another's tortious activity. But neither does a third party have a right to aid and abet another in a tortious activity and profit from it by providing substantial assistance. The complaint alleges that Gateway provided BlueHippo with substantial assistance because it allowed BlueHippo to use its brand name, directed people to the BlueHippo website from its own site, and continued to engage

6

1 in business with BlueHippo representing it as the largest reseller of Gateway computers.
2 Gateway's website contained a direct link to BlueHippo's website with the assurance that it was
3 an authorized reseller, which provided it, like the defendants in *Schulz*, with "an aura of
4 respectability and further encouraged participation." *See Schulz*, 152 Cal. App. 4th at 94.
5 According to Plaintiffs, Gateway was able to sell off computers which it did not wish to sell or
6 advertise through to its mainstream customers to BlueHippo customers and charged premium
7 prices for the outdated machines. (SAC, ¶ 55.) Just as Ginix and PaySystems in *Schulz*, Gateway
8 sought to profit from what it allegedly knew were unlawful practices by BlueHippo.

9 Plaintiffs have made sufficient allegations against Gateway which, if taken in the light
10 most favorable to Plaintiffs, demonstrate that Gateway had actual knowledge of BlueHippo's
11 tortious activities and continued to provide BlueHippo with substantial assistance hoping to profit
12 from those activities.

13 Similarly, the Court finds that Gateway is potentially liable for aiding and abetting the
14 claims under California Business and Professions Code § 17200, the Unfair Competition Law
15 ("UCL"). The Court does not find the statement in *Emery v. Visa International Service
16 Association*, 95 Cal. App. 4th 952, 960 (2002), that there is "no vicarious liability" under the UCL
17 without "personal participation" and "unbridled control" to be controlling law here. First, the
18 case is distinguishable based on the fact that Plaintiffs allege Gateway is liable for aiding and
19 abetting, not on a theory of vicarious liability. Second, federal courts interpreting claims for
20 aiding and abetting liability under California's UCL have determined that such liability may be
21 found. *See In re First Alliance*, 471 F.3d at 995-96 (finding that UCL is broader than district
22 court's narrow interpretation limiting the scope of permissible claims predicated on aiding and
23 abetting liability to those in which in a defendant had "personal participation" in and "unbridled
24 participation" over the practices found to violate the code); *see also McKay v. Hageseth*, 2007
25 WL 1056784, *3 (N.D. Cal. April 6, 2007) (holding that § 17200 liability may be based on aiding
26 and abetting unlawful business practices).

### 3. Negligence Claim Dismissed as Gateway Did Not Owe a Duty of Care to Plaintiffs.

Plaintiffs allege that Gateway's negligent actions proximately caused Plaintiffs to suffer economic loss. (*Id.*, ¶¶ 148-155.) Gateway moves to dismiss the cause of action for negligence because it argues that it did not owe a duty of care to Plaintiffs. As with any negligence claim, Plaintiffs "must show that the defendant had a duty to use due care, that he breached that duty, and that the breach was a proximate or legal cause of the resulting injury." *Rice v. CenterPoint, Inc.*, 154 Cal. App. 4th 949, 955 (2007) (citation omitted). The existence of a duty is a question of law to be decided by the court. *Hansara v. Superior Court*, 7 Cal. App. 4th 630, 639 (1992).

Both parties agree that *J'Aire Corp. v. Gregory*, 24 Cal. 3d 799 (1979), is applicable to the standard of duty of care in this case. In *J'Aire,* the appellant operated a restaurant on premises leased from Sonoma County. *Id.* at 802. Under contract, the County was to provide the premises with heat and air conditioning. The County entered into a contract with a third party, respondent in this case, to make improvements to the premises, but did not specify the time in which the improvements were to be completed. The third party contractor did not complete the improvements within a reasonable time and, as a result, the appellant was not able to operate the restaurant and suffered economic losses. *Id.* The trial court sustained the respondent's demurrer and dismissed the appellant's complaint without leave to amend. *Id.* at 803. In reversing the demurrer, the California Supreme Court held that the contractor owed a duty of care to the tenant of the building undergoing construction. *Id.* at 808.

In reaching its decision regarding whether a duty existed, the court applied the following factors:

> (1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to the plaintiff, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct and (6) the policy of preventing future harm.

*Id.* at 804. Applying these factors, the court found that there was no doubt that the contractor owed a duty of care to the appellant. *Id.* First, because the construction was to take place on the premises where the appellant operated its business, the court found that the transaction was obviously intended to affect the appellant. Second, the court reasoned that it was foreseeable

8

that any significant delay would affect the appellant's operations. Third, the complaint left no doubt that appellant suffered harm because it was not able to operate its business. *Id.* at 805. Fourth, appellant alleged that respondent's actions directly caused the injury suffered. *Id.* Fifth, the court found that respondent's conduct was directly blameworthy because respondent continued to delay the construction even after the fact of the injury was brought directly to him. Finally, the court found that public policy supported a finding of duty of care under the circumstances. *Id.*

Unlike the facts in *J'Aire*, however, the facts in the present case do not lend support to the claim that Gateway owed a duty of care to Plaintiffs. Gateway was under contract to provide computers to BlueHippo, not to Plaintiffs. Gateway never entered into direct transactions with Plaintiffs. Accordingly, so long as Gateway provided its computers to BlueHippo, it could not have foreseen what harm might arise from those transactions. Plaintiffs' injuries were caused by BlueHippo, perhaps with assistance from Gateway, but not directly by Gateway's conduct. Consequently, the Court does not find that Gateway's actions directly caused Plaintiffs' injuries. Although Gateway's conduct in continuing to supply BlueHippo with computers after it should have been put on notice regarding BlueHippo's unlawful practices may be blameworthy, there is no particular public policy interest to impose a duty in this case.

In addition, as noted in *Platte Anchor Bolt, Inc. V. IHI, Inc.*, 352 F. Supp. 2d 1048, 1051 (N.D. Cal. 2004):

> In the California cases applying the *J'Aire* factors, the courts have emphasized "the close connection between [the defendant] and [the plaintiff] and the high degree of foreseeability of economic harm * * *."Thus, a critical foundational requirement for finding a special relationship is whether the third-party transaction was intended to affect the plaintiff in a particular way. In this regard, California courts have been able to prevent the expansion of manufacturer liability for economic injuries suffered by a retail buyer at large, while at the same time allowing a particular party of whom the manufacturer had *specific knowledge* to go forward with a negligence action.

*Id.* (emphasis in original; internal citations omitted). There is no allegation that when Gateway provided its computers to BlueHippo, it had specific knowledge that BlueHippo would cause injury to any particular party. Therefore, the foundational requirement for finding a special

9

relationship existed, that is, a close connection between Plaintiffs and Gateway and a high degree of foreseeability is not presented by Plaintiffs' allegations.

This Court finds that Gateway aided and abetted BlueHippo in its tortious activities. However, no sufficient claims were made by defendants to hold Gateway directly liable under a negligence theory because Gateway did not owe a duty of care to Plaintiffs in this case. Accordingly, the motion to dismiss the eighth cause of action for negligence as to Gateway is GRANTED.

**4.    Cause of Action for Money Had and Received is Dismissed Against Gateway.**

Plaintiffs allege that Gateway is liable for money had and received because Gateway received and has retained money from BlueHippo that Gateway knows was obtained through BlueHippo's fraudulent, deceptive and unfair marketing, sales and financing practices. (SAC, ¶ 55.) The only essential allegations of a common count are "(1) the statement of indebtedness in a certain sum, (2) the consideration, i.e., goods sold, work done, etc., and (3) nonpayment." *Farmers Ins. Exchange v. Zerin*, 53 Cal. App. 4th 445, 460 (1997) (citing 4 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 508, p. 543). To state a claim for money had and received, a plaintiff must allege that the defendant "is indebted to the plaintiff in a certain sum 'for money had and received by the defendant for the use of the plaintiff." *Schultz v. Harney*, 27 Cal. App. 4th 1611, 1623 (1994) (citing *Pike v. Zadig* 171 Cal. 273, 275-76 (1915)).

Plaintiffs fail to allege a sum certain and there is no allegation that Gateway ever received any money directly from Plaintiffs for the use of the Plaintiffs. Accordingly, the motion to dismiss as to Gateway for the sixth cause of action is GRANTED.[1]

---

[1] In addition, because Plaintiffs' motion to amend is before the Court and adds a new cause of action against Gateway, the Court will address the twelfth cause of action for unjust enrichment. Unjust enrichment is a theory of recovery, not an independent legal claim. *IB Melchoir v. New Line Productions, Inc.*, 106 Cal. App. 4th 779, 793 (2003) ("[T]here is no cause of action in California for unjust enrichment."). Therefore, although Plaintiffs may be entitled to recovery for unjust enrichment under their other theories of liability, the claim for unjust enrichment does not constitute a stand-alone cause of action. Accordingly, the Court dismisses the twelfth cause of action for unjust enrichment, although it makes no finding as to whether Plaintiffs may be entitled to such damages as a matter of law.

10

### B.  Plaintiffs' Motion to Amend the Second Amended Complaint.

Plaintiffs seek to remove a recently dismissed party; to add as a defendant BlueHippo Capital, LLC, ("BlueHippo Capital"); to add claims against BlueHippo; to correct incorrect numbering of paragraphs in the SAC; and to make various editing corrections.

#### 1.  Legal Standard on Motion to Amend.

Federal Rule of Civil Procedure 15(a) permits a party to amend its pleading once as a matter of right at any time before a responsive pleading is served.  Once a responsive pleading has been served, however, amendment requires written consent of the adverse party or leave of the court.  In accordance with the Rule 15(a)'s liberal pleading standard, leave of the court "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a).  Though the decision to grant or deny a motion for leave to amend is governed by the district court's discretion, the general rule is that amendment of the pleadings is to be permitted unless the opposing party makes a showing of bad faith, undue delay, prejudice to the opposing side, and futility of amendment.  *See Forman v. Davis*, 371 U. S. 178, 230 (1962); *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 986 (9th Cir. 1999).

#### 2.  Defendant Failed to Show Why Leave to Amend Should Not Be Granted.

Defendant BlueHippo Funding, LLC alleges that Plaintiffs are trying to amend their complaint in bad faith, that they are engaging in dilatory tactics and that the amendment will prejudice them.

First, Plaintiffs maintain that it was BlueHippo's refusal to respond to discovery requests that prevented Plaintiffs from learning which corporate entity employed and was responsible for the sales people with whom Plaintiffs had contact and who were responsible for withdrawing money from Plaintiffs' bank accounts.  As such, the Court does not find Plaintiffs' motion to add BlueHippo Capital is an improper dilatory tactic.

Second, because this Court's denial of BlueHippo's motion to transfer was based on factors other than just the inclusion of Defendants whom Plaintiffs now wish to dismiss, there is no indication that Plaintiffs are attempting to amend in bad faith.  (*See* Order Granting Motion

11

for Leave to Amend First Amended Complaint and Denying Motion to Transfer, Docket No. 99, at 3-4.)

Third, there is no evidence that the BlueHippo will be prejudiced in any way. BlueHippo argues that it will be prejudiced because Plaintiffs wish to add BlueHippo Capital as a defendant as well as add claims under federal statues which will cause BlueHippo to file another motion to transfer. BlueHippo has been aware of the possibility of the addition of BlueHippo Capital as a possible defendant from the beginning of this action. BlueHippo was also aware of the possible federal claims under the Truth in Lending Act as well as the Electronic Funds Transfer Act because they were initially alleged in Plaintiffs' first complaint. In addition, BlueHippo has not yet answered the complaint. Furthermore, the motion to transfer was denied on bases independent of the new allegations incorporated in the proposed amendment. As such, it is not clear why BlueHippo must file another motion to transfer or whether BlueHippo's possible new motion to transfer would prevail.

Finally, this Court agrees with Plaintiffs that cases cited by BlueHippo to support the proposition that amendment should not be granted because Plaintiffs have already had ample opportunity to amend are inapposite.

Defendants having failed to demonstrate bad faith, undue delay, prejudice or futility of amendment, the Court exercises its discretion to permit the amendment of the complaint to remove a recently dismissed party; to add as a defendant BlueHippo Capital; to add claims against BlueHippo; to correct incorrect numbering of paragraphs in the Second Amended Complaint; to make various editing corrections; and to omit the dismissed causes of action against Gateway.

**CONCLUSION**

For the foregoing reasons, Gateway's motion to dismiss Plaintiff's Second Amended Complaint is hereby GRANTED IN PART AND DENIED IN PART. Plaintiffs' Sixth and Eighth causes of action are hereby DISMISSED as against Defendant Gateway.

It is further ordered that Plaintiffs' motion to amend is GRANTED. Plaintiffs shall file and serve the third amended complaint within 10 days of this order. All parties shall answer or otherwise respond within 20 days of service of the amended complaint.

**IT IS SO ORDERED.**

Dated: May 6, 2008

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE