ROBERT M. BRAMSON (CBN 102006)
(rbramson@bramsonplutzik.com)
BRAMSON, PLUTZIK,
MAHLER & BIRKHAEUSER, LLP
2125 Oak Grove Road, Suite 120
Walnut Creek, CA 94598
Telephone: (925) 945-0200
Facsimile: (925) 945-8792

DAVID J. MARSHALL
(marshall@kmblegal.com)
DEBRA S. KATZ
(katz@kmblegal.com)
KATZ, MARSHALL, BANKS, LLP
1718 Connecticut Ave., N.W.
Sixth Floor
Washington, D.C. 20009
Telephone: (202) 299-1140
Facsimile: (202) 299-1148

Attorneys for Plaintiffs
ROYLENE RAY, KELLY CANNON,
KARLA HODGES and LAKETA COULTER

Additional Counsel on Signature Page

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ROYLENE RAY, *et al.*<br><br>Plaintiffs,<br><br>v.<br><br>BLUEHIPPO FUNDING, LLC, *et al.*<br><br>Defendants. | Case No. C 06-1807 JSW<br><br>**PLAINTIFFS' OPPOSITION TO BLUEHIPPO'S MOTION FOR A PROTECTIVE ORDER REGARDING DEPOSITION OF JOSEPH K. RENSIN** |

Plaintiffs Roylene Ray, Kelly Cannon, Karla Hodges and Laketa Coulter respectfully submit this opposition to BlueHippo's motion for a protective order to prevent or delay the deposition of Joseph K. Rensin.

The motion should be denied, and BlueHippo should be ordered to produce Mr. Rensin for a deposition on September 12, 2008, the date that counsel for BlueHippo, Gateway, and plaintiffs agreed to in an hour-long meet and confer telephone call on August 5, 2008, involving Jeff McFarland, lead trial counsel for Gateway, Brandon Wisoff, lead trial counsel for BlueHippo, Anthony Schoenberg and Karen Kimmey, counsel for BlueHippo, Gary Peller, lead trial counsel for plaintiffs, and Maura Dundon, counsel for plaintiffs. *See* Declaration of Maura Dundon, attached hereto as Exhibit 1, ¶10; Declaration of Gary Peller in Support, filed concurrently, at ¶42.[1]

BlueHippo and Joseph Rensin contend that a protective order is necessary because plaintiffs' real motive is to collect evidence to support an *alter ego* theory of liability against Mr. Rensin, and because the "apex doctrine" shields Mr. Rensin from being deposed. They demand that Mr. Rensin not be deposed until plaintiffs "have exhausted all other discovery vehicles, including depositions of lower-level employees," Motion for Protective Order at 9, and until plaintiffs prove at a factual hearing that Mr. Rensin possesses unique knowledge about issues related solely to class certification. *Id.* at 10.

[1] This agreement as to date was apparently then vetoed by Mr. Rensin. *See* Declaration of Maura Dundon at ¶¶17-19. This pattern of Mr. Rensin vetoing the result of hours and hours of meet and confer time regarding the scheduling of his deposition began in June 2008. *See* Declaration of Gary Peller ¶¶14-20.

Of course, the law does not require all this before taking a deposition of a witness with direct knowledge of the factual issues in contention. The motion is baseless, and a waste of the Court's and counsels' time.

**BlueHippo and Mr. Rensin nowhere deny that Mr. Rensin has extensive, first-hand, and likely unique knowledge of every aspect of BlueHippo's business practices from BlueHippo's inception to the present, including when and why such practices may have been revised or abandoned.**[2] Indeed, BlueHippo itself included Mr. Rensin as one of only four witnesses it disclosed in its initial disclosures. Initial Disclosure of BlueHippo Funding, LLC, attached hereto as Exhibit 3, at 2. Mr. Rensin's first hand knowledge is also reflected in the fact that he was the employee from whom BlueHippo submitted a declaration regarding the location of all of BlueHippo's records and other information that would be relevant in this action. *See* Declaration of Joseph K. Rensin in Support of BlueHippo Funding, LLC's Motion to Transfer Venue (Doc. No. 16-3) (stating "**I have personal knowledge of the matters stated in this declaration** . . . ." and proceeding to describe the formation of BlueHippo, the location of its headquarters, its management board, its management team, the manageability or difficulties in managing BlueHippo's records, the kinds of records that BlueHippo maintains, the creation of BlueHippo's marketing and advertising materials, and the

---

[2] BlueHippo's motion should be rejected on the sole basis that it presents no evidence from Mr. Rensin that he lacks information about the factual issues related to class certification. Contrary to BlueHippo's assertions, the applicant for a protective order, not the party seeking the deposition, bears the burden of proving that he has no personal knowledge of the factual issues, or that discovery would be an undue burden. *See Mansourian v. Bd. of Regents, Univ. of Cal. at Davis*, 2007 U.S. Dist. LEXIS 95428, at *8-9 (holding that party seeking protection of 'apex doctrine' bears burden of proving that the doctrine applies); *Johnson v. Jung*, 242 F.R.D. 481, 2007 U.S. Dist. LEXIS 34500, at *5 (N.D.Ill. 2007) (same).

public dissemination of BlueHippo's advertising).[3] Plaintiffs' desire to depose Mr. Rensin to collect evidence related to class certification can hardly be chalked up to the bad faith defendants charge.[4]

Joseph Rensin is the founder and sole member of BlueHippo. By all accounts, he is the one who created and manages the allegedly fraudulent enterprise(s). All information that Plaintiffs possess indicate that he conceived the forfeiture business model at issue in this case, that he was solely or substantially responsible for the drafting, creation and implementation of BlueHippo's sales script and training materials (and changes to them), that he personally negotiated and executed agreements with advertising agencies (*see*, *e.g.*, Media Placement Service Agreement with Capital Media, attached hereto as Exhibit 4) and directed the production and dissemination of BlueHippo's ads, that he personally negotiated and executed contracts with suppliers (*see*, *e.g.*, Gateway Authorized Reseller Agreement, attached hereto as Exhibit 5), that he personally negotiated, executed and managed agreements with BlueHippo's payment processers (*see*, *e.g.*, Alliance General Agreement Terms, attached hereto as Exhibit 6), that he was substantially responsible for at least BlueHippo's earliest sales, shipping, and financing documents, that he personally directed BlueHippo's sales floor before it contracted out its

[3] Mr. Rensin submitted a similar declaration in *Seres v.BlueHippo Funding, LLC*, 06-cv-279 SPM/WCS (N.D. Fl. 2006).

[4] Moreover, BlueHippo's insistence that Plaintiffs exhaust all other discovery devices before deposing Mr. Rensin is rendered suspect by its refusal to identify other employees with knowledge of relevant factual issues, *see*, *e.g.*, BlueHippo Funding, LLC's Responses to Plaintiffs' First Set of Interrogatories, attached hereto as Exhibit 4, at 22-23 (refusing to identify accountants, bookkeepers, or employees responsible for drafting BlueHippo's sales scripts). And despite its insistence that lower lever employees be deposed first, it has, without any explanation whatsoever, refused to make available Jared Kelly, whom it listed as its marketing director in its initial disclosures. Declaration of Gary Peller, ¶38.

call center operations, that he personally negotiated and managed relations with outside call centers, that he personally developed and managed the electronic funds transfer policies and practices about which plaintiffs complain, and that he personally planned and negotiated BlueHippo's collections efforts, including negotiation with third party collectors. Declaration of Gary Peller, *supra* at ¶45.

The Attorneys General of Florida, Maryland, Illinois, West Virginia and Wisconsin have each named him individually as a defendant in their actions against the same business practices about which plaintiffs here complain. They have each alleged that he formulated, conceived of, managed, and directed the practices at issue, and/or that he has knowingly used the corporate form to perpetuate a fraud and knowingly retained fraudulently obtained money from customers.[5]

In addition to rendering implausible BlueHippo's charges of some ulterior motive in deposing Mr. Rensin, the fact that BlueHippo does not deny that Mr. Rensin has a wealth of first-hand, and likely unique, information also makes clear that the so-called "apex doctrine" does not apply here. Every authority agrees that Plaintiffs are entitled to depose a witness with substantial, extensive, and likely unique knowledge of the facts. In fact, "where a corporate officer may have *any* first hand knowledge of relevant facts, the deposition should be allowed." *Grateful Dead Productions v. Sagan*, 2007 WL 2155693, at *1 (N.D. Cal. 2007) (emphasis in original), *citing Blankenship v. Hearst Corp.*, 519

[5] *Florida v. BlueHippo Funding, LLC et al.* (Second Judicial Circuit, Leon County, Florida, April 3, 2008); *In re BlueHippo Funding* (Consumer Protection Division Office of the Attorney General of the State of Maryland, May 10, 2007); *Illinois v. Joseph Rensin et al.* (Case No. 2005CH 642, Seventh Judicial Circuit, Sangamon County, Illinois, November 15, 2005); *West Virginia v. BlueHippo Funding, LLC et al.* (Case No. 07-C-438, Circuit Court of Kanawha County, West Virginia, March 12, 2007); *Wisconsin v. BlueHippo Funding, LLC et al.* (Case No. 07-CX-68, Circuit Court, Dane County, Wisconsin, October 22, 2007). In the interests of economy, plaintiffs have not attached the voluminous complaints in these enforcement actions. They would be glad to produce them at the Court's request.

F.2d 418, 429 (9th Cir. 1975); *Anderson v. Air West, Inc.*, 542 F.2d 1090, 1092-93 (9th Cir. 1976) (approving denial of Howard Hughes' motion for protective order because he "probably had some knowledge" regarding substance of the plaintiffs' claims). *Accord*, *First National Mortgage Co. v. Federal Realty Investment Trust*, 2007 U.S. Dist. LEXIS 88625, at *5-6 (N.D. Ca. 2007) (Seeborg, J.); *see also*, *Johnson v. Jung*, *supra*, at 6 (denying deposition even where putative deponent denied personal knowledge on ground that party had right to test denial). Moreover, since BlueHippo has made no showing of any burden that would flow from Mr. Rensin being deposed for a day, "there is no legal authority for requiring defendants to use purportedly less burdensome means of obtaining the discovery before allowing 'apex' depositions." *Grateful Dead Productions*, *supra.*

* * *

BlueHippo's papers, like its other presentations to the Court, include a series of attacks on the conduct of plaintiffs' counsel. Plantiffs do not intend to participate in such an exchange with BlueHippo. The Court should be aware, however, that BlueHippo has mischaracterized and misrepresented the history of the discovery process in this action.

If the Court is inclined to consider BlueHippo's accusations, plaintiffs have included a detailed, chronological account of the discovery process in this action, as well as virtually all significant exchanges with opposing counsel regarding the scheduling of depositions. *See* Declaration of Gary Peller, *supra*. That account reveals that BlueHippo has at virtually every turn engaged in dilatory tactics. It took BlueHippo some four months to submit *any* written response to document requests, and BlueHippo continues to resist complying with its disclosure obligations. When new counsel entered the case, they insisted that all proceedings be immediately halted for a month or more while they

came "up to speed." When plaintiffs resisted, counsel became combative and accusatory. *Id.* at ¶2.

With respect to the scheduling of depositions, defendants' claim that plaintiffs "unilaterally" noticed depositions without conferring with BlueHippo is demonstrably false. Plaintiffs first began discussing scheduling of depositions in April 2008. There is an email trail through months of May and June 2008 that reflect plaintiffs' futile attempts to get BlueHippo's counsel to indicate availability or to suggest dates. *Id*. at ¶¶4-44.

Plaintiffs informed BlueHippo's new counsel the very day of his entry in the case of the three-week time period that the parties had settled on for BlueHippo depositions. *Id.* at ¶9. After intense negotiations about revising the discovery schedule, counsel for plaintiffs and BlueHippo agreed on June 11, in a nearly two-hour telephone conference, to schedule depositions for the last two weeks in August. *Id*. at ¶17. However, the time that counsel invested was wasted. It turned out that its counsel lacked authority in the meet and confer process. *BlueHippo—presumably Mr. Rensin—refused to agree to the dates that its own counsel had agreed to after hours of negotiation. Id*. at ¶¶18-20. BlueHippo's counsel informed Plaintiffs that "our client" would not agree to the negotiated dates, *see id.* at ¶19. After BlueHippo refused to suggest alternate dates, Plaintiffs followed the procedure mandated by the Court's Standing Order No. 17 in circumstances in which the parties cannot agree on deposition dates.[6] Plaintiffs chose

[6] The Court's Standing Order No 17 provides:

> Absent extraordinary circumstances, counsel shall consult in advance with opposing counsel and unrepresented proposed deponents to schedule depositions at mutually convenient times and places. Where an agreement cannot be reached as to any party deponent or party deponent or a deponent represented by counsel of record, the following procedure may be invoked by the party seeking any such deposition. The party seeking such a deposition may notice it at least twenty (20) days in

dates that fell within the three-week period that Plaintiffs had proposed as early as April 29, 2008, and for which BlueHippo had never indicated availability difficulties.

The same process futile process was repeated in August. Once again, there were strenuous negotiations about rescheduling the noticed depositions, which culminated in an hour-long telephone conference with six counsel representing all parties and including all trial counsel. After extended discussion, counsel agreed to dates for Mr. Rensin's deposition in the event the Court rejects the motion for a protective order. And yet again, it turned out that counsel had no authority and Mr. Rensin's veto rendered useless hours of attorney time. Declaration of Gary Peller, ¶¶28-43; Declaration of Maura Dundon, Exhibit 1, *passim*.

BlueHippo has never indicated actual availability problems for Mr. Rensin to attend a deposition on September 12, 2008, separate from his desire not to be available.[7]

BlueHippo's motion for a protective order should be denied and BlueHippo ordered to produce Joseph Rensin for a deposition on September 12, 2008.

Respectfully submitted,

DATED: August 14, 2008 ________/s/____________

advance. If the noticed date and place is unacceptable to the deponent or the deponent's counsel, then within ten (10) days or receipt of the notice, the deponent or counsel for the deponent must reply and counter-propose in writing an alternative date and place falling within twenty (20) days of the date noticed by the party seeking the deposition.

[7] BlueHippo's accusations that plaintiffs' plan to amend their complaint in bad faith is more properly directed to Judge White. In any event, the accusation is belied by the fact that plaintiffs long ago explicitly indicated their intent "to add BlueHippo owner Joseph K. Rensin as a defendant in the event discovery confirms that BlueHippo is his alter ego with regard to Plaintiffs' claims." Joint Case Management Conference Statement (Doc. No. 117) at 6 (March 7, 2008).

Gary Peller
(peller@law.georgetown.edu)
Professor of Law
GEORGETOWN UNIVERSITY LAW CENTER
600 New Jersey Avenue, N.W.
Washington, D.C. 20001
Telephone: (202) 662-9122
Facsimile: (202) 662-9608

David J. Marshall
Debra S. Katz
Maura Dundon
KATZ, MARSHALL & BANKS, LLP
1718 Connecticut Ave., N.W.
Sixth Floor
Washington, DC 20009
(202) 299-1140

Robert M. Bramson
(rbramson@bramsonplutzik.com)
BRAMSON, PLUTZIK,
MAHLER & BIRKHAEUSER, LLP
2125 Oak Grove Road, Suite 120
Walnut Creek, CA 94598
Telephone: (925) 945-0200
Facsimile: (925) 945-8792