ROBERT M. BRAMSON (CB102006)
(rbramson@bramsonplutzik.com)
BRAMSON, PLUTZIK,
  MAHLER & BIRKHAEUSER, LLP
2125 Oak Grove Road, Suite 120
Walnut Creek, CA 94598
Telephone (925) 945-0200
Facsimile (925) 945-8792

Attorneys for Plaintiffs
ROYLENE RAY, KELLY CANNON
KARLA HODGES, LAKETA COULTER,
ESPERANZA OCHOA, MAYRA AYAR,
LINDA PULLUM AND JANIS SHOEMAKER

Additional Counsel on Signature Page

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| ROYLENE RAY *et al.* <br>               Plaintiffs, <br><br>       v. <br><br> BLUEHIPPO FUNDING, LLC, *et al.* <br><br>               Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

Case No.: C-06-1807 JSW

**PLAINTIFFS' STATUS UPDATE**

**Trial Date:  February 1, 2010**
**Time:          9:00 a.m.**
**Location:    C'troom 11, Hon. Jeffrey S. White**

          Plaintiffs respectfully submit this status update pursuant to the Court's Order of

September 23, 2009, directing that the parties notify the Court of the ruling of the United States

District Court for the Northern District of Oklahoma regarding the enforceability of a purported

settlement agreement in *Robbins v. BlueHippo Funding LLC*, 2007cv0145 TCK-TLW, in a

putative nationwide class action, and address the effect of that decision on these proceedings.

*See* Order, September 23, 2009 (Doc. No. 308).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Pending before the Court are:  1) Plaintiffs' Motion for Preliminary Approval of the Proposed Settlement, Conditional Certification of the Class, and related relief (ECF Doc No. 260);  2) Julio Estrada's Motion to Intervene for a Stay and to Object to Preliminary Approval (ECF Doc. No. 273); and 3) a motion to withdraw from representation by BlueHippo's counsel (ECF Doc. No.  294).[1]

In the *Robbins*  case, Magistrate Judge T. Lane Wilson found that the parties had agreed to a nationwide settlement, and recommended that the Court grant Ms. Robbins's motion to enforce the settlement agreement.  *See* Report and Recommendation Regarding Plaintiff's Motion to Enforce the Settlement Agreement, attached hereto as Exhibit 1.  The Magistrate's findings[2] should have no effect on the proceedings here for at least three reasons.

First, the parties in *Robbins* were forming their agreement at the same time that the parties in *Ray* case reached agreement on a California-only settlement, and the parties in *Robbins* specifically excluded from their settlement relief anyone "eligible to participate in the settlement of any other class action pending against BlueHippo."  *See* Stipulation of Settlement, Plaintiff's Motion to Enforce Settlement Agreement, attached hereto as Exhibit 3 (*Robbins* Doc. No.  58-3). This exclusion in the *Robbins* proposed settlement leaves no doubt that this Court can and should proceed to consider the proposed settlement here, regardless of any future proceedings in *Robbins.*

---

[1]     BlueHippo's counsel in *Robbins* has also moved to withdraw.  On August 7, 2009, Judge Kern granted the motion to withdraw but made it effective upon entry of new counsel, and ordered BlueHippo to retain new counsel or to file a statement that it intended to proceed *pro se*. No explanation was suggested as to how corporate entities could act *pro se*.  Order, August 7, 2009, attached hereto as Exhibit 2.  The *Robbins* docket does not indicate that BlueHippo has complied with that Order.
[2]     We assume for purposes of this filing that Judge Kern will adopt Magistrate Judge Wilson's recommendation, though that has not yet occurred.

PLAINTIFFS' STATUS UPDATE REGARDING SETTLEMENT AGREEMENT IN *ROBBINS*

1    Second, even if the parties in *Robbins* agreed between themselves to propose a

2    nationwide settlement that would sweep in the California consumers that make up the putative

3    class in *Ray,* it is highly unlikely that the Oklahoma District Court will ever actually *certify* a

4    nationwide settlement class or ultimately *approve* that proposed settlement.  The United States

5    District Court for the Eastern District of Arkansas has twice refused to certify a virtually

6    identical nationwide settlement class in a similar case against BlueHippo on the grounds that

7    variations in state law prevent common issues from predominating as required under Fed. R. Civ.

8    P. 23(b)(2).  The same result is highly likely in *Robbins*, given that the proposed settlement is

9    virtually word-for-word identical to the already twice rejected settlement in the Arkansas case.

10    Third, the are many thousands of class members encompassed by the case pending here

11    who will *not* be impacted by the proceedings in *Robbins* no matter how Judge Kern rules on a

12    subsequent motion for approval of a national settlement.  The proposed *Robbins* settlement, by

13    its own terms, has a class cutoff date of July 31, 2007.  Exhibit 3 at p. 6.  In contrast, the

14    proposed settlement here covers injured California residents over an additional 13 month period

15    through August 2008.  Moreover, the proposed settlement here includes claims brought against

16    defendant Gateway, who is not a defendant in the *Robbins* litigation.

17    In these circumstances, any further delay of these proceedings would be unjust.  The

18    Court should act on plaintiffs' motion for preliminary approval and provisional class

19    certification, which has now been pending for six months.  The proposed settlement is fair and

20    reasonable and provides substantial value to the class, as described in detail in plaintiffs' motion

21    papers.  The Court should deny Mr. Estrada's motion to intervene because, as argued in

22    plaintiffs' opposition to intervention, he lacks standing or a cognizable interest in that he is

neither a putative class member of the proposed class in *Ray*[3] nor the one in *Robbins*.  In any

event, Mr. Estrada's request for a stay until resolution of the motion to enforce the settlement

agreement in *Robbins* is now moot, and his proposal that the notice here be modified to inform

class members that they might have the opportunity to choose between the two settlements is

unwarranted, because the *Robbins* settlement language explicitly denies monetary relief to

members of the settlement class that is before this Court for certification.

I.       BACKGROUND.

This case was filed on March 8, 2006, on behalf of a putative class of California

consumers who ordered computers from and paid money to BlueHippo but received neither a

computer nor any refund from the company.  The action has been vigorously litigated for over

three years, and the parties have engaged in extensive discovery.

During a settlement conference presided over by Magistrate Judge Joseph C. Spero on

January 22, 2009, the parties reached agreement on the principal terms of a settlement on behalf

of California customers of BlueHippo[4] They finalized their agreement on April 6, 2009, with

each of the proposed class representatives and each of the three defendants signing the

Stipulation of Settlement, and them Plaintiffs submitted their Motion for Provisional

Certification of a Settlement Class and Preliminary Approval of the Proposed Settlement (Doc.

No 260).  Plaintiffs' motion includes a full description of the plaintiffs' claims, the history of the

litigation, and the terms of the settlement.  Its original hearing date was May 22, 2009.

---

[3]      Ms. Robbins, the sole plaintiff in *Robbins*, denies ever ordering a computer from
BlueHippo, and thus cannot adequately represent the interests of the *Ray* plaintiffs and other
California customers who ordered and made payments for computers they never received.

[4]      During the six hours of settlement discussions before Magistrate Judge Spero, there was
no mention whatsoever of any existing or envisioned settlement in another court.  We encourage
the Court to verify this fact with Magistrate Judge Spero if the Court finds that point relevant.

In their pending motion, plaintiffs seek provisional certification of a settlement class consisting of:

California residents who, on or before August 15, 2008, made one or more payments to BlueHippo but as of the Effective Date have not received any merchandise they ordered from BlueHippo.  Provided, however, that California residents who were current on their scheduled payments on December 31, 2008 are not Class Members.

The key monetary term of the proposed settlement requires defendants to pay a total of $1.8 million (plus attorneys fees and expenses and one-half the costs of notice and settlement administration) into a settlement fund, from which individual class members would be compensated according to the proportion of their loss relative to the total class loss.  As a result, class members will recover approximately 40-45% of the payments they made.  There is no reversion to defendants.  Class payments will be mailed directly to each class member; there is no requirement that class members submit a claim or take any other affirmative action.  Any funds not deliverable to or not cashed by class members are marked for *cy pres* distribution.  *See* Settlement Agreement ¶¶ 2, 5, 6, 8-9.

The *Robbins* litigation, which proposed intervenor Estrada's argues should hold up this settlement, was originally filed in state court in Ottawa County, Oklahoma, on January 23, 2007.  Shawna Robbins, the sole plaintiff, alleged that that she had *never* ordered a computer from BlueHippo and that the company nevertheless took money from her account without any authorization.  She sought to represent a nationwide class of consumers that she alleged to number fewer than 500 people. *Robbins* Complaint ¶¶ 7, 10, 22 (*Robbins* Doc. No. 2-2).

Another relevant proceeding was filed in Arkansas state court on behalf of a putative Arkansas class in July 2007 and removed to the Northern District of Arkansas in August 2007. *Williams v. BlueHippo Funding, LLC*, 4:07-cv-00662-SWW.  In that proceeding, Judge Susan Webber Wright twice emphatically rejected joint motions on the part of BlueHippo and the

plaintiffs to certify a nationwide settlement class of BlueHippo consumers complaining of the company's forfeiture policies.  *See* Orders in *Williams* dated July 15, 2008 (Doc. No. 45) and September 24, 2008 (Doc. No. 69).

II.     THE ROBBINS REPORT AND RECOMMENDATION.

In his Report and Recommendation, Magistrate Judge Wilson recommends that the *Robbins* Court grant Ms. Robbins's motion to enforce BlueHippo's agreement to proceed with a proposed settlement.  Based on his review of the parties' discussions (which both preceded and followed BlueHippo's undisputed agreement to settle California claims in this litigation), Magistrate Judge Wilson concludes that those discussions were sufficiently concrete and detailed to create an enforceable agreement between BlueHippo and Ms. Robbins, including agreement for Ms. Robbins' counsel to present new proposed class representatives to BlueHippo, and to amend the complaint to add claims on behalf of those who had ordered computers before July 31, 2007.

III.     THERE IS NO CONFLICT BETWEEN THE *ROBBINS* AND *RAY* PROPOSED
         SETTLEMENTS BECAUSE THE *ROBBINS* SETTLEMENT – EVEN IF
         APPROVED – ENVISIONS APPROVAL AND IMPLEMENTATION OF THE
         *RAY* SETTLEMENT BY EXCLUDING *RAY* CLASS MEMBERS FROM
         RECEIVING ANY RELIEF IN *ROBBINS*.

Magistrate Judge Wilson found that the parties in *Robbins* modified their agreement on January 20, 2009, to account for the possible settlement of the *Ray* case.  His report quotes email communications from January 2009 regarding a "revised stipulation incorporating language on page 15 regarding settlement of the other pending class action."  Report and Recommendation at 5.  That language states, "No Class Member shall be entitled to receive a Refund or Store Credit pursuant to this Settlement Agreement if said Class Member is eligible to participate in the settlement of any other class action pending against BlueHippo."  *See* Stipulation of Settlement,

Plaintiff's Motion to Enforce Settlement Agreement, Exhibit 3, ¶ V. D at 15.  This lawsuit was and remains the only other pending class action against the company.

In a separate provision, the *Robbins* settlement agreement defines the "settlement class" in a way that would still include some members of the class that plaintiffs have asked this Court to certify provisionally in *Ray*.  See Stipulation of Settlement, Ex. 3, ¶ I. T. at 6.  However, the parties to the *Robbins* agreement clearly intended to allow the *Ray* settlement to proceed alongside their settlement, as the language in ¶ V. D excludes all members of the *Ray* class from monetary relief under the *Robbins* settlement.  The class members in *Ray* are the only BlueHippo customers nationwide to whom the parties in *Robbins* denied relief under their settlement, and the counsel's communications make it clear that the exclusion was added in order to account for the "settlement of the other pending class action."

Given the clear intent and effect of the *Robbins* settlement  to deny monetary relief to California consumers who make up the putative class in *Ray,* and to do so in light of the settlement agreement that the parties in *Ray* were negotiating at the time (and which BlueHippo ultimately executed), there is no reason that the settlement in *Robbins* should have any effect on this Court's consideration of plaintiffs' motion for preliminary approval of the *Ray* settlement and provision certification of the class.  The settlement here should be approved and implemented without regard to the Oklahoma's court's consideration of the *Robbins* proposal.

IV.    THE *ROBBINS* PROPOSED SETTLEMENT SHOULD NOT DELAY THESE PROCEEDINGS BECAUSE THE *ROBBINS* SETTLEMENT IS QUITE UNLIKELY ULTIMATELY TO BE APPROVED BY THE COURT IN OKLAHOMA.

Even if the settlement agreement in *Robbins* conflicted with the settlement agreement in this case, there would still be insufficient reason for further delay in these proceedings.  The parties in *Robbins* have not yet even moved for preliminary approval of the settlement, and

preliminary or final certification of a nationwide class is highly unlikely given that Judge Wright

of the Eastern District of Arkansas has already *twice* rejected virtually the same settlement and

ruled that a nationwide class cannot be certified in these circumstances.  Indeed, there is doubt

whether BlueHippo is even entitled to present a previously-rejected class certification and

proposed settlement to a different court with the hope of a different outcome.  *See In re*

*Bridgestone/Firestone, Inc., Tires Products Liability*, 333 F.3d 763 (7th Cir.  2003).

Moreover, even if the Court in Oklahoma considered anew whether to certify a

nationwide class of BlueHippo customers, such certification would be unlikely for the same

reasons that Judge Wright cited.  Variations in state consumer-protection laws mean that

consumers in different states are situated differently with respect to BlueHippo's practices.  In

particular, Californians benefit from unusually strong consumer protection laws.  There is no

legal basis for the attempt in *Robbins* to restrict a nationwide class of consumers to the

unfavorable consumer laws of *defendants'* home states of Maryland and Nevada.  California law

entitles Californians to the greater protections of California law in these circumstances.

*Klussman v. Cross Country Bank*, 134 Cal.App.4th 1283, 1300 (2005); *Am. Online v. Superior*

*Court* 90 Cal.App.4th 1, 11 (2001).[5]

The only harm that Mr. Estrada asserts to justify a stay of this action is the possibility that

California consumers who participate in the settlement here may miss an opportunity to take part

in a purportedly better settlement that might potentially might be approved on a nationwide basis

---

[5]      As set forth in greater detail in plaintiffs' opposition to intervention, certification is also
unlikely because Ms. Robbins, who alleges that she never ordered a computer, cannot adequately
represent the interests of plaintiffs and putative class members who concede that they ordered
computers from BlueHippo.  The new class representatives proposed by plaintiffs there cannot
possibly have adequately represented the interests of putative class members since they were not
(and still are not) parties when the purported agreement was reached between Robbins's *counsel*
and BlueHippo.

in the *Robbins* action. However, even ignoring the exclusion from relief provision discussed above, the proposed settlement that Ms. Robbins seeks to pursue is not in fact superior to the one negotiated by the plaintiffs in *Ray*.

The proposed settlement in *Robbins* differs significantly from the one plaintiffs have negotiated here. The *Robbins* settlement would pay *nothing* to the greatest number of wronged California consumers, i.e., those who paid BlueHippo less than $125.00 before halting payments; the *Ray* settlement would return to each of these people approximately 40% of their losses. The *Robbins* settlement would pay only $25 to any person whose claims arose prior to March 1, 2006, while the *Ray* settlement offers such persons their full 40% return on payments. The *Robbins* settlement would limit relief to those who made payments prior to July 31, 2007, over a year earlier than the August 31, 2008 cutoff in the *Ray* settlement.

Perhaps most significantly, the *Robbins* settlement would restrict relief to class members who affirmatively submit a claims form. Thus, only those class members who actually receive, read, understand and properly complete and return the required claim form will receive *anything*. All other class members get nothing at all. Given the universally low rate for return of claim forms, this ensures that most members of a potential class in *Robbins* will receive nothing at all. The *Ray* settlement ensures that benefit to the class will be paid because it contains a mandatory payout and distribution, with any amounts not collected by class members directly be expended for their indirect benefit through *cy pres* awards. While no two settlement structures will offer compensation identically, there is little question but that the structure and guaranteed amounts in the *Ray* settlement would provide greater compensation to the vast majority of California victims than would the *Robbins* proposal.

V.      CONCLUSION.

Plaintiffs' motion for preliminary approval of the proposed settlement, provisional certification of a California class, and related relief, has been pending for six months.  The Court should proceed to rule on that motion and should grant it.  Mr. Estrada's motion to intervene for a stay should be denied as moot, in that the Oklahoma Court has now ruled on the plaintiff's motion to enforce the settlement agreement there.  In any event, Mr. Estrada has no standing to complain about Californians being denied an opportunity to participate in the *Robbins* settlement since he *himself* falls outside of the proposed class there.  Estrada acknowledges that he made his first payment to BlueHippo in March 2008.  He also falls outside of the *Ray* proposed class, which excludes those who were current on their scheduled payments on December 31, 2008.  He concedes that he continued paying through early 2009.  (Second Declaration of Julio Estrada, filed 9/1/09, Doc No. 305).

The class covered by the proposed settlement in this case is comprised primarily of low income individuals who paid money to BlueHippo between one and five years ago and are still waiting for recompense.  Absent compelling justification, the substantial reimbursement rate represented by the proposed settlement in this case should not be delayed further.  We respectfully request that the Court proceed to address the merits of the proposed settlement as quickly as the Court's calendar will allow.

DATED: October 8, 2009                    Respectfully submitted,


                                         _____/s/_____
                                         ROBERT M. BRAMSON

David J. Marshall
Debra S. Katz
KATZ, MARSHALL & BANKS, LLP
1718 Connecticut Ave., N.W.
Sixth Floor
Washington, DC 20009
Telephone (202) 299-1140
Facsimile: (202) 299-1148

Gary Peller
(peller@law.georgetown.edu)
Professor of Law
GEORGETOWN UNIVERSITY LAW
CENTER
600 New Jersey Avenue, N.W.
Washington, D.C. 20001
Telephone:  (202) 662-9122
Facsimile:  (202) 662-9680

OF COUNSEL

Stuart T. Rossman
Charles M. Delbaum
THE NATIONAL CONSUMER LAW CENTER
77 Summer Street, 10th Floor
Boston, MA 02110
Telephone (617) 542-8010
Facsimile (617) 542-8028

# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| SHAWNA ROBBINS, an individual, on behalf of herself and all others similarly situated, | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 07-cv-145-TCK-TLW |
| | ) | |
| BLUEHIPPO FUNDING, LLC, a Maryland corporation, and BLUEHIPPO CAPITAL, LLC, a Nevada corporation, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMNEDATION ON PLAINTIFF'S MOTION TO ENFORCE**
**SETTLEMENT AGREEMENT**

This matter has been referred to the undersigned United States Magistrate Judge for a Report and Recommendation as to plaintiff's Motion to Enforce Settlement Agreement. [Dkt. # # 58, 60]. On August 14, 2009, the undersigned conducted an evidentiary hearing. Based on the evidence and argument presented at the hearing and the parties' submissions, the undersigned RECOMMENDS that the Motion to Enforce be GRANTED as set forth herein.

**FACTUAL BACKGROUND**

Plaintiff Shawna Robbins filed the present class action lawsuit against defendants, BlueHippo Funding, LLC and BlueHippo Capital, LLC, on January 23, 2007. [Dkt. # 58]. An initial settlement conference was held on February 15, 2008, after which negotiations continued for almost ten months, culminating in a second settlement conference on December 15, 2008. A few days prior to the second settlement conference, on December 12, 2008, counsel for defendants forwarded to counsel for plaintiff a draft Stipulation of Settlement, a Final Judgment and Order of Dismissal, and a Preliminary Approval of Settlement, Notice and Hearing Order. Hearing Ex 7. These documents originated with Andrew Campbell, general counsel for Blue

Hippo Funding, LLC, see Hearing Exs. 4 and 7, are forty-four pages in length, are comprehensive, and contain only a few blank spaces for various dates and the amount of any attorney fees to be awarded plaintiff's counsel. Hearing Ex. 7. Twelve minutes after forwarding these documents to plaintiff's counsel, defendants' counsel forwarded the same documents to Adjunct Settlement Judge Oliver Howard (ASJ Howard), stating ". . . here is the form of settlement documents we have been working on." Hearing Ex. 8. Some of the essential terms set forth in the Stipulation of Settlement are as follows:

1. "[I]t is hereby stipulated and agreed by the Representative Plaintiff, on her behalf and on behalf of the Settlement Class, and the Defendants, through their duly authorized counsel, that the Action and the Released Claims (as defined below) be settled, compromised, and dismissed on the merits and with prejudice as to the Defendants and without costs as to the Representative Plaintiff, the Settlement Class or the Defendants, subject to the approval of the Court, on the following terms and conditions . . ." Hearing Ex. 7 at 3.

2. The parties "stipulate to the certification of the Settlement Class, defined in Section I(U) below. . .." Id. at 3.

3. The key terms are defined in Section I. of the agreement. Id. at 3-7.

4. The parties are, after execution, to submit the agreement to the court and apply for preliminary approval of the agreement, among other things. Id. at 7-8.

5. After preliminary approval, defendants are to distribute the Class Notice and publish the Publication Notice. Id. at 8-9.

6. The stipulation provides for the submission of objections from the Class Members and allows Class Members to opt out of the class. Id. at 9-10.

7. The stipulation provides for the entry of a Final Judgment and details what is to be included in the Final Judgment. Id. at 12.

8. The stipulation provides that it is to become final upon approval by the Court, entry of the Final Judgment, and expiration of the appeal time. Id. at 13.

9. Class Members receive consideration as a part of the stipulation and defendants obtain a dismissal of all claims. Id. at 14, 17-18.

10. Defendants may terminate the agreement if the Court "rejects, materially modifies, or denies approval of any material provision" of the stipulation. Id. at 19.

After the December 15th settlement conference, with the consent of the parties, ASJ Howard advised Magistrate Judge Cleary that a settlement had been reached. [Dkt. # # 93 at 2, 94 at 2]. Magistrate Judge Cleary filed a Settlement Conference Report, which ordered the parties to file their request for approval of the settlement within thirty (30) days from December 18, 2008. [Dkt. # 54]. Neither party filed any pleading to correct or object to the Settlement Conference Report. [Dkt. # 58 at 5]. Regarding the settlement conference, ASJ Howard testified as follows:[1]

1. that it was his "recollection that a settlement was reached on all issues on December 15;"[2]

2. that "based on what the parties said at the time, the parties reach[ed] an agreement on all the terms and conditions"; and

3. that a written document was contemplated that would incorporate the terms of the agreement.

[Dkt. # 93 at 3, # 94 at 2, 3].

On December 16 and 17, 2008, the two days immediately following the settlement conference, counsel for the parties exchanged emails regarding a list of potential plaintiffs to serve as class representatives. Hearing Ex. 1. There is no indication in the emails, or otherwise, that the settlement agreement was contingent upon defendants' agreeing to plaintiff's proposed class representatives. There is also no indication in the emails, or otherwise, that negotiation of the terms of the settlement agreement was continuing or that the parties were doing anything other than proceeding under the assumption that a settlement had been reached. Id.

---

[1] Plaintiff requested, pursuant to LCvR 16.2(c), that the court call ASJ Howard as a witness at the evidentiary hearing. The undersigned granted the request; however, ASJ Howard was not available on the hearing date. Rather than postpone the hearing, the parties agreed to submit written questions to be answered by ASJ Howard in writing and under oath. [Dkt. # # 91, 92, 93, 94].

[2] ASJ Howard also included, as an exhibit to one of his affidavits, a "written statement or notes" memorializing the agreement reached at the settlement conference. [Dkt. # 93 at 4, Ex. A]. The exhibit includes references to the filing of an amended complaint, the amount of attorneys' fees and expenses, and the contemplated interest to be charged defendants if the settlement were appealed. Id.

On December 23, 2008, counsel for plaintiff forwarded to counsel for defendant a "schedule of events" that contained "proposed deadlines of the things which need to happen prior to a hearing on the final settlement approval." Hearing Ex. 9. On December 30, 2008, counsel for plaintiff emailed counsel for defendant asking: "Will we be filing the Stipulation before year end (tomorrow)?" Hearing Ex. 24. There is no indication that defendants' counsel, during this period, ever took the position that the parties had not consummated a settlement agreement.

On January 6, 2009, defendants' counsel emailed plaintiff's counsel "a draft stipulation, redlined with the changes we talked about." Hearing Ex. 25. The changes were as follows:

1. Paragraph R on page 5, which defined the term "Purchase Documents" was deleted;
2. A blank in numbered paragraph 2 on page 6 was filled in; and
3. The maximum amount of attorney fees to be paid by defendants was added to paragraph A on page 18 along with some other language related to the attorney fees amount.

<u>Id.</u> On January 8, 2009, plaintiff's counsel responded, with only two changes, one to correct a typographical error and a second to reflect the fact that the case had been reassigned to the undersigned magistrate judge. Hearing Ex. 2. On January 9, 2009, counsel for plaintiff emailed ASJ Howard's assistant (Heather Aldridge) and defendants' counsel indicating that plaintiff's counsel had delivered to defendants the day before "what we consider to be a final draft of a Stipulation." Hearing Ex. # 10. Defendants' counsel made no effort to correct the statements made by plaintiff's counsel.

On January 13, 2009, plaintiff's counsel emailed defendants' counsel asking, "Has your client signed the Stipulation yet? When will they?" Hearing Ex. 27. Twelve minutes later, defendants' counsel emailed back stating, "I don't know if they signed yet or not. I talked to Campbell late Friday. I'll check again." Hearing Ex. 28. Defendants' counsel's response leaves the clear impression that the Stipulation was final and had been agreed to by all of the parties and

merely needed to be signed.  On January 20, 2009, defendants' counsel forwarded to plaintiff's counsel, by email, a "revised stipulation incorporating language on page 15 regarding settlement of the other pending class action."  Hearing Ex. 11.  Defendant's counsel also stated that "we need to figure out how the amended complaint and adding additional class reps will work and draft language regarding that process into the stipulation."  Id.  Plaintiff's counsel responded on January 22, 2009, stating, "We are okay with that insert."  Id.  Plaintiff's counsel also provided some suggestions regarding the filing of an amended complaint and the class representatives.  Id.

On January 26, 2009, counsel for the parties exchanged additional emails and a revised Stipulation.  Hearing Ex. 13.  All of the revisions related to:  (1) the proposed amended complaint, (2) the naming of class representatives, or (3) the inability of a class member to receive the benefits of both the settlement in this case and the settlement of other class actions against defendants.  Id. These communications indicate that the parties were merely working through the manner in which the existing settlement agreement was to be carried out, not that the parties were attempting to negotiate the essential terms of the settlement agreement itself.

On January 29 and 30, 2009, plaintiff's counsel inquired as to when an executed settlement agreement should be expected from defendants' counsel.  Hearing Exs. 29, 30.  On January 30, 2009, defendants' counsel responded in two separate emails, stating:

> I'm in depositions today.  I will try to get answers by end of day.  Monday latest.
> . . . .
> Are you planning on circulating the amended complaint that will be exhibit to the stip?  Also there is a blank in jen's last draft of the stip re identifying the class reps.  Are you going to fill in that blank?

Hearing Ex. 31.  Plaintiff's counsel responded within thirty minutes answering: "yes and yes."

Id.  On February 4, 2009, plaintiff's counsel, as requested by defendant's counsel, forwarded the Stipulation to defendants' counsel with the accompanying exhibits, including an amended

complaint, and with the names of the class representatives inserted.  Hearing Ex. 14.  On February 6, 2009, Plaintiff's counsel inquired as follows of Defendants' counsel: "I understand Jennifer sent the proposed Amended Complaint to you earlier this week.  What else do you need so we can finally close this matter?"  Hearing Ex. 32.  There was no response.

On February 16, 2009, counsel for plaintiff again inquired as to the status of the Stipulation and the Amended Complaint.  Hearing Ex. 15.  By the following day, plaintiff's counsel was losing patience and sent the following email:

> What is the status of your client returning an EXECUTED settlement agreement this week.  Please advise us and let us know if it will be necessary for us to file a Motion to Enforce.  Please also advise us if you are waiting on any action by us. It is my understanding the ball has been in your and your client's court for some time now.

Hearing Ex. 33.  On February 19, 2009, after receiving no response, plaintiff's counsel informed defendants' counsel that plaintiff did intend to file a Motion to Enforce (a draft of the motion was provided to defendants' counsel).  Hearing Ex. 16.  The same afternoon, defendants' counsel responded as follows:  "we have a call in to BlueHippo and hope to be able to resolve this without the necessity of your filing a motion to enforce.  I'll get back to you as soon as I hear from our client."  Hearing Ex. 17.  After being informed that plaintiff's counsel was only willing to wait until the following morning, defendants' counsel emailed: "Jennifer, I am trading calls with Andrew and will get back to you as soon as I can.  I guess you need to do what you think you need to do, but it seems this is close to resolution."  Hearing Ex. 19.  As with the prior correspondence between the parties' counsel, nothing in defendants' counsel's emails indicated that the parties had not reached a settlement.  To the contrary, defendants' counsel appeared to be seeking more time in order to obtain defendants' signature on the final documents.  A few hours later, apparently after speaking with defendants, defendants' counsel emailed again, stating, "your plaintiffs are still problematic.  I will send you a chart showing the problems tomorrow

morning." Hearing Ex. 20. Defendants' counsel did not identify any other issues. Plaintiff's

response was immediate, "I chose those representatives based on an email from Tamara on

January 26, 2009 that she "[thought] BlueHippo would agree—for settlement purposes only—

that the following could made adequate class reps." Hearing Ex. 21. The following morning,

plaintiff's counsel again reached out to defendant's counsel:

> I just left you a voice message. Prior to filing the Motion, I wanted to discuss the
> reasons why the proposed class representatives are still problematic, even though
> I chose them in reliance on Tamara's e-mails that those individuals would be
> okay. If I haven't heard from you before 10:30, I am going to go ahead and file
> the Motion."

Hearing Ex. 22.

On February 24, 2009, Magistrate Judge Cleary held a conference call with the parties to

determine why approval papers had not been filed. [Dkt. #57]. Defendants raised concerns over

the proposed subclass representatives, but nothing else, and there is no indication that additional

negotiations regarding the terms of the settlement agreement were contemplated. [Dkt. #57].

Judge Cleary ordered defendants to provide Plaintiff with a list of all Class Members, which

defendants provided to plaintiff on March 6, 2009. Hearing Ex. 23. Four days earlier, on March

2, 2009, plaintiff had already provided defendants with a list of representatives for the subclass.

Hearing Ex. 3. As a result, on March 6, 2009, plaintiff's counsel emailed defendants' counsel

asking if defendants had considered the list of class representatives that had been emailed earlier

in the week. Hearing Ex. 35. Defendants' counsel responded around 3:30 p.m. that "[w]e

forwarded Corey's email to our client and haven't heard back yet." Id. Defendants' counsel

provided no indication that defendants' believed the parties were continuing to negotiate the

settlement agreement, as opposed to working together to determine how to carry out the

agreement by selecting appropriate class representatives. Nonetheless, at 5:04 p.m. of the same

day, defendants' counsel forwarded, without comment, a letter from Andrew Campbell (General

Counsel of BlueHippo) to plaintiff's counsel.  Hearing Ex. 4.  In his letter, Mr. Campbell took

the position that no settlement agreement had been reached.  Id.  On March 9, 2009, plaintiff

filed her Motion to Enforce.  [Dkt. #58].

During the evidentiary hearing, plaintiff called two witnesses, Jennifer Sherrill and

William B. Federman, both attorneys who have entered appearances on behalf of plaintiff in this

case.  Ms. Sherrill testified as follows:

1. She has been involved in this case from the outset and assisted in drafting the Complaint.

2. She was communicating with defendants' counsel in January, 2009, when Exhibit 2 was exchanged between counsel, and defendants' counsel never advised here that the parties did not have a settlement agreement or that there were any material terms remaining to be negotiated.

3. She attended the December 15, 2008 settlement conference by telephone and participated in the negotiations.  The only issues that were addressed during the settlement conference were a "minor" issue regarding the named plaintiff and her adequacy as a class representative and the issue of attorney fees.

4. Some modifications were made to the Stipulation prior to the December 15, 2008 settlement conference in order to address concerns that the settlement might not be approved by the Court.

5. During the time period that Hearing Exhibit 11 was exchanged between counsel, defendants' counsel never advised that there was not a settlement agreement between the parties.

6. She discussed the filing of the Amended Complaint with counsel for defendants and both parties agreed that the Amended Complaint would be filed "for settlement purposes only" and that the Amended Complaint would not become an operative pleading if the settlement was not approved by the Court.  Exhibit 13 was a result of that agreement.

7. Defendants counsel, including defendants' in-house counsel (Mr. Campbell), never informed her, prior to receipt of Mr. Campbell's letter, that there was no settlement agreement or that defendants' had reserved pre-approval rights regarding the naming of class representatives.

Mr. Federman testified as follows:

1. He has been involved in this case from the outset, including the initial factual investigation.

2. At the December 15 settlement conference, there were only two issues on which the parties had not yet agreed, one of which was the issue of attorney fees.

3. The fact that a settlement agreement had been reached was personally confirmed to him by defendants' counsel at the settlement conference.

4. Prior to receipt of Mr. Campbell's letter and after the settlement conference, Mr. Federman had at least two conversations with defendants' counsel in which defendants' counsel confirmed that the parties had a settlement agreement. The first was on January 30, 2009, when Mr. Federman asked defendants' counsel if defendants were attempting to get out of the settlement. Defendants' counsel informed Mr. Federman at least twice during that discussion that "we have an agreement."

Defendants did not call any witnesses.

## **DEFENDANTS' POSITION**

At the evidentiary hearing, defendants' counsel articulated the following bases for resisting plaintiff's Motion to Enforce:

1. The parties agreed that there would be no enforceable settlement until a written agreement was executed by all parties;

2. The parties never actually reached an agreement, as is reflected in Hearing Exhibits 2, 11, and 12;

3. The parties did not agree on the class representatives or the timing of filing an amended complaint; and

4. The Court will not approve the class representatives, even if an agreement otherwise exists.

## **ANALYSIS**

"A [federal] trial court has the power to summarily enforce a settlement agreement entered into by the litigants while the litigation is pending before it." U.S v. Hardage, 982 F.2d 1491, 1496 (10th Cir. 1993). However, "where material facts concerning the existence or terms of an agreement to settle are in dispute, the parties must be allowed an evidentiary hearing." Id. In determining whether a settlement agreement was consummated, a federal court is to apply state contract law. U.S. v. McCall, 235 F.3d 1211, 1215 (10th Cir. 2000) (citing Carr v. Runyan, 89 F.3d 327, 331 (7th Cir. 1996)).

Under Oklahoma law, a settlement agreement is a contract, which may be oral or written. Russell v. Bd. of County Comm'rs of Carter County, 1 P.3d 442, 443 (Okla. Ct. App. 2000). Moreover, settlement agreements have long been favored and "will be enforced absent fraud, duress, undue influence or mistake." Id. See also Tulsa City Lines v. Mains, 107 F.2d 377, 380 (10th Cir. 1939) ("The inveterate policy of the law is to encourage, promote, and sustain the compromise and settlement of disputed claims."). Since defendants do not argue fraud, duress, or undue influence, the only issues are whether there was "an offer, acceptance and a meeting of the minds on terms," Coulter v. Carewell Corp. of Okla., 21 P.3d 1079, 1083 (Okla. Ct. App. 2001), and, if so, whether the agreement is sufficiently definite and certain such that it identifies the essential commitments of the parties. Vice v. Conoco, Inc., 150 F.3d 1286, 1291 (10th Cir. 1998) (under Oklahoma law "an agreement which is not sufficiently definite to enable a court to ascertain the parties' intentions with reasonable certainty does not constitute an enforceable contract.") (quoting Dunn v. Dunn, 391 P.2d 885, 887 (Okla.1964)); Nash v. Buchanan, 716 F.2d 766, 768 (10th Cir. 1983); Heldenbrand v. Stevenson, 249 F.2d 424, 427 (10th Cir. 1957).

Here, the evidence overwhelmingly establishes that the parties reached a settlement agreement. Thus, the undersigned will first address how and when that agreement was consummated, while at the same time addressing defendants' argument that a signed writing was a condition precedent (that was not met) to the formation of a binding settlement agreement. Thereafter, the undersigned will specifically address each of defendants' remaining arguments and identify the terms of the parties' final agreement.

"The fact that the parties may have contemplated the subsequent execution of a formal instrument as evidence of their agreement does not necessarily imply that they had not already bound themselves to a definite and enforceable contract whose terms could be changed only by

mutual consent." <u>Pierce v. Petroleum Corp. v. Hales</u>, 294 P. 160, 163 (Okla. 1930) (quoting <u>Post v. Davis</u>, 52 P. 903 (Kan. Ct. App. 1898)).   <u>See</u> <u>also</u> <u>East Central Oklahoma Elec. Co-op, Inc. v. Oklahoma Gas & Elec. Co.</u>, 505 P.2d 1324, 1328 (Okla. 1973).   The facts in <u>Pierce</u> closely parallel the situation here:

> The evidence is sufficient to show that the terms of the contract were agreed to on March 6, 1925, by Mr. Fell and Mr. Hales, representing themselves and the other parties with like interests, and Mr. Kistler, who purported to act for the defendant. The understanding was reached by using as a basis therefor a division agreement which Mr. Fell had, and making such changes therein as met the minds of the parties negotiating. It was not convenient to prepare the written agreements on that day, but in accordance with the understanding they were prepared within a day or two, signed by each of the plaintiffs and mailed to Kistler at Tulsa, Okl., and were by him, according to the understanding of March 6, forwarded to the New York office of the defendant to be formally executed by the signature of the president of the defendant company. Kistler did not sign the agreements, but it is to be borne in mind that we are not discussing an instrument which is required under any statute to be executed by any certain officer of a corporation in order to be effective.

<u>Id.</u> at 162.   After reciting these facts, the court, in <u>Pierce</u>, found that the parties had entered into an enforceable agreement, even though a formal settlement document had not been executed.   <u>Id.</u> at 163.   In reaching its decision, the court looked to the parties' intention in an effort to determine whether a written agreement was merely "contemplated," in which case an agreement had been consummated, or whether a written agreement was a condition precedent to the settlement agreement, in which it had not.   <u>Id.</u> at 163.

ASJ Howard testified that the parties reached a complete agreement at the December 15, 2008 settlement conference and that "it was contemplated that a written document would be prepared incorporating the terms of the settlement."   [Dkt. # 94 at 2].   ASJ Howard did not testify, nor did anyone else, that such an agreement was a condition of the settlement.   In addition, after the settlement conference, Magistrate Judge Cleary entered an order stating that the parties had reached an agreement and had thirty (30) days to file a motion seeking approval.

Magistrate Judge Cleary did not note the existence of any conditions that needed to be met in order for the agreement to become effective, and defendants did not object to Magistrate Judge Cleary's order.   In addition, the only witnesses to appear at the August 14, 2009 hearing (William Federman and Jennifer Sherrill) unequivocally testified that a complete agreement between the parties was reached at the December 15 settlement conference.   Specifically, Mr. Federman testified that prior to the settlement conference, only two issues remained, one of which was the amount of attorney fees.   This testimony is consistent with the draft Stipulation forwarded by defendants to plaintiff a few days prior to the settlement conference.   See Hearing Ex. 7.   In fact, the draft Stipulation, in the context of the evidence presented, is strong evidence of the terms of the parties' agreement, and those terms are sufficiently definite and certain so as to identify the essential commitments of the parties.   See supra at 2-3. Mr. Federman further testified that on at least two occasions after the settlement conference, defendants' counsel confirmed to him that the parties had a settlement agreement.    No credible evidence contradicting Mr. Federman's, Ms. Sherrill's or ASJ Howard's testimony was presented.   Thus, substantial and convincing evidence exists that the parties reached an oral settlement agreement on December 15, 2008, that the terms of the settlement agreement are reflected in Hearing Ex. 7, and that although the parties contemplated a written settlement agreement, the execution of such an agreement was not a condition precedent to the consummation of the settlement.[3]

In support of their argument that the parties never reached an agreement, defendants cite Hearing Exs. 2, 11, and 12.   These exhibits also address the third argument raised by defendants, that because there was no agreement on class representatives or on the timing of the filing of an amended complaint, there was no settlement agreement.

---

[3] The evidence establishes that the parties later modified their agreement.   These modifications are addressed in conjunction with the undersigned's consideration of defendants' remaining arguments below.

Hearing Ex. 2 is a January 8, 2009 email from plaintiff's counsel accepting defendants' suggested changes to the original draft Stipulation, (see Hearing Ex. 25), correcting one typographical error, and changing the case caption to reflect the re-assignment of this case to the undersigned.   Hearing Ex. 2 does not assist defendants.   At most, it evidences a written modification, agreed to by both parties, to the terms of the original draft Stipulation.[4]

Hearing Exs. 11 and 12 can be addressed together.   Hearing Ex. 11 is a January 22, 2009 email from defendants' counsel to plaintiff's counsel attaching another version of the draft Stipulation and raising questions about the filing of the Amended Complaint and the class representatives.   Even when viewed in the light most favorable to defendants (which is not required), this email can only be characterized as a request by defendants to alter the existing settlement agreement (as reflected in Hearing Ex. 2).   In response, plaintiff's counsel agreed to defendant's request and agreed to the only change made to the Stipulation by defendants.   Thus, Hearing Ex. 11 reflects a written modification to the terms of the settlement agreement, and as of January 22, 2009, represented the agreement of the parties.

In Hearing Ex. 11, Plaintiff's counsel also made suggestions regarding the amended complaint and the class representatives.   Hearing Exhibit 12 is a response to plaintiff's counsel's suggestions.   In Hearing Ex. 12, defendants' counsel confirms what defendants "agreed" to at the settlement conference regarding the Amended Complaint (i.e., that the Amended Complaint would be filed if the settlement were approved) and provides some proposed class representatives to be added to the Stipulation.   There is no evidence that an agreement as to either issue was a condition of the settlement.   Rather, the communications between counsel

---

[4] Even assuming Hearing Ex. 2 is evidence that the parties had not, as of January 8, reached an agreement, the sending of this email by plaintiff's counsel was an acceptance of the terms proposed by defendants and consummated the parties' settlement agreement.

evidence a belief by the parties that the issues related to the amended complaint and the class representatives were related to the implementation of the settlement agreement, not its formation.

Nine days after receiving Hearing Ex. 12, plaintiff 's counsel forwarded to defendant's counsel Hearing Ex. 14, which includes a redlined Stipulation, with all the necessary exhibits attached, and addresses all outstanding issues between the parties.    All parties' counsel confirmed at the hearing that Hearing Ex. 14 was the latest written document exchanged between the parties, and counsel for defendants' acknowledged that absent defendants' arguments, this document reflected the understanding of the parties.    Irrespective of defendants' counsel's acknowledgment, the undersigned finds that based on the facts set forth above and the foregoing analysis, Hearing Ex. 14 represents the final agreement of the parties.

Finally, defendants argue that there was no settlement agreement, because the Court will not approve the class representatives.  This argument should be rejected.  The parties' agreement specifically provides that it is subject to court approval.   If the Court rejects the class representatives proposed by plaintiff or any other material terms of the Stipulation, then, by its own terms, the parties' agreement will terminate and not bind either party.

Accordingly,  defendant's  position  has  little,  if  any,  merit,[5]  and  the  undersigned **RECOMMENDS** that Plaintiff's Motion to Enforce Settlement be granted and that an order be entered finding that Hearing Exhibit 14, as redlined, reflects the final settlement agreement of the parties in this matter.

**OBJECTIONS**

In accordance with 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b), a party may file specific written objections to this Report and Recommendation.  Objections must be filed with the Clerk

---

[5] The issue of which exhibit reflects the parties' final agreement could, conceivably, have been the subject of a good faith dispute, but that was not the issue raised by defendants.

of the District Court for the Northern District of Oklahoma within ten (10) days of being served

with a copy of this Report and Recommendation.  See Fed. R. Civ. P. 6 (as to computation of

time periods).  If specific written objections are timely filed, the district judge assigned to this

case will:

> make a *de novo* determination upon the record, or after additional
> evidence, of any portion of the magistrate judge's disposition to
> which specific written objection has been made in accordance with
> this rule.  The district judge may accept, reject, or modify the
> recommended decision, receive further evidence, or recommit the
> matter to the magistrate judge with instructions.

Fed. R. Civ. P. 72(b); see 28 U.S.C. § 636(b)(1).

The Court of Appeals for the Tenth Circuit has adopted a "firm waiver rule" in

connection with appeals from orders adopting a Magistrate Judge's report and recommendation.

"[T].he failure to make timely objections to the magistrate's findings or recommendations

waives appellate review of factual and legal questions."  United States v. One Parcel of Real

Property, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting Moore v. United States, 950 F.2d 656,

659 (10th Cir. 1991)).  **Thus, a timely, specific and written objection is necessary to preserve**

**an issue for *de novo* review by the assigned district judge and for appellate review by the**

**court of appeals.**  See Thomas v. Arn, 474 U.S. 140 (1985); Haney v. Addison, 175 F.3d 1217

(10th Cir. 1999); and Talley v.Hesse, 91 F.3d 1411 (10th Cir. 1996).

Dated this 25th day of September, 2009.


_____
T. Lane Wilson
United States Magistrate Judge

# EXHIBIT 2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **SHAWNA ROBBINS, an individual, on behalf of herself and all other similarly situated,** ) ) ) ) | |
| **Plaintiff,** ) | |
| **v.** ) ) | **Case No. 07-CV-145-TCK-TLW** |
| **BLUEHIPPO FUNDING, LLC, a Maryland corporation, and BLUEHIPPO CAPITAL, LLC, a Nevada corporation,** ) ) ) ) ) | |
| **Defendants.** ) | |

## ORDER

Before the Court is a Motion to Withdraw as Counsel for Defendants BlueHippo Funding, LLC and BlueHippo Capital, LLC ("Defendants") (Doc. 89), filed by John N. Hermes and Tamara Schiffner Pullin ("Attorneys"). Because Attorneys have demonstrated good cause with regard to their request to withdraw as counsel, said application is hereby granted in part, subject to the conditions set forth below.

IT IS ORDERED that Attorneys are hereby granted leave to withdraw as counsel for Defendants, effective upon the entry of appearance of substitute counsel. Defendants are hereby directed to cause new counsel to enter an appearance in this matter within twenty (20) days of this date or file a statement that they intend to proceed pro se. Attorneys shall be required actively to serve as counsel by attending all scheduled hearings, preparing necessary orders, and adhering to dates previously set by this Court until such time as the conditions set forth in the Order have met with full compliance. Attorneys are ORDERED to inform Defendants of this Order in writing.

The Motion to Withdraw (Doc. 89) is GRANTED in part and DENIED in part as set

forth in this Order.

**SO ORDERED this 7th day of August, 2009.**

_____
**TERENCE KERN**
**UNITED STATES DISTRICT JUDGE**

# EXHIBIT 3

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

SHAWNA ROBBINS, an individual, on
behalf of herself and all others similarly
situated,

        Plaintiff,

vs.

BLUEHIPPO FUNDING, LLC, a Maryland
limited liability company, and BLUEHIPPO
CAPITAL, LLC, a Nevada limited liability
company,

        Defendants.

Case No. 07-CV-145-TCK-TLW

### STIPULATION OF SETTLEMENT

Subject to the approval of the Court and pursuant to Rule 23 of the Federal Rules of Civil

Procedure, this Stipulation of Settlement (the "Stipulation" or "Settlement Agreement") is

entered into among Shawna Robbins, James Ray and Deborah McLaughlin (the "Representative

Plaintiffs"), on behalf of themselves and the Settlement Class defined below, and Defendants

BlueHippo Funding, LLC and BlueHippo Capital, LLC (the "Defendants"), by and through their

respective, duly authorized counsel. This Stipulation is intended by the Representative Plaintiffs

and the Defendants to fully and finally compromise, resolve, discharge and settle the Released

Claims, as defined herein, and to dismiss this Action with prejudice, subject to the terms and

conditions set forth below and without any admission or concession as to the merits of any claim

or defense by the Representative Plaintiffs or any Defendant.

WHEREAS, the Representative Plaintiffs, on behalf of themselves and a nationwide class of

persons and entities that have alleged, among other things, that they made payments to the

**EXHIBIT**

*B*

tabbies

Defendants, on or before July 31, 2007, for the purchase of computers and neither received computers from the Defendants nor a full refund of the payments made to the Defendants; and

WHEREAS, the Defendants deny, at a minimum, each and every one of the Representative Plaintiffs' allegations of unlawful conduct or wrongdoing, and disclaim any wrongdoing or liability whatsoever; and

WHEREAS, the parties have been engaged in extensive settlement discussions directly and through the supervision of the Hon. Oliver Howard, Settlement Judge; and

WHEREAS, the Representative Plaintiffs and Class Counsel believe that the claims asserted in the Action possess merit and have examined and considered the benefits to be obtained under the proposed settlement set forth in this Settlement Agreement, the risks associated with the continued prosecution of this complex and potentially time-consuming litigation, and the likelihood of success on the merits of the Action. Class Counsel have fully investigated the facts and law relevant to the merits of the claims, have conducted extensive formal and informal discovery, and have concluded that the settlement set forth herein is fair, reasonable, adequate and in the best interests of the Representative Plaintiffs and the Settlement Class; and

WHEREAS, the Defendants have concluded, despite their belief that they are not liable for the claims asserted in this Action and have good defenses thereto, that they will enter into this Settlement Agreement to avoid the further expense, inconvenience and burden of protracted litigation, and the distraction and diversion of their personnel and resources, and to put to rest this controversy, and to avoid the risks inherent in uncertain complex litigation, and to avoid the expense and risks inherent in any possible litigation raising similar claims; and

WHEREAS, arms-length settlement negotiations have taken place between the Representative Plaintiffs and Class Counsel, on the one hand, and the Defendants and

2

Defendants' counsel, on the other hand, and these settlement negotiations have resulted in this Settlement Agreement, which remains subject to final approval of the Court; and

WHEREAS, solely for purposes of this Settlement Agreement, the parties hereto stipulate to the certification of the Settlement Class, defined in Section I(T) below, pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

NOW, THEREFORE, it is hereby stipulated and agreed by the Representative Plaintiffs, on their behalf and on behalf of the Settlement Class, and the Defendants, through their duly authorized counsel, that the Action and the Released Claims (as defined below) be settled, compromised, and dismissed on the merits and with prejudice as to the Defendants and without costs as to the Representative Plaintiffs, the Settlement Class or the Defendants, subject to the approval of the Court, on the following terms and conditions:

I.   As used in this Stipulation and in the exhibits thereto, the following terms have the following meanings for purposes of this Settlement Agreement:

   A. "Action" means the above-entitled lawsuit.

   B. "Approved Claim" means a claim for a Refund or a Store Credit (as defined below) made by a Class Member (as defined below) to the extent such claim is timely, truthful, complete, and complies in all other respects with this Settlement Agreement.

   C. "Attorneys' Fees" means the attorneys' fees, costs, disbursements and expert fees (if any) of Class Counsel (as defined below) that may be requested by Class Counsel and awarded by the Court pursuant to Section VIII below.

D. "BlueHippo" or "Defendants" means BlueHippo Funding, LLC and all of its parents, affiliates, subsidiaries, successors, and assigns, and BlueHippo Capital, LLC and all of its parents, affiliates, subsidiaries, successors, and assigns.

E. "Class Counsel" means all counsel representing Plaintiff in the Action, including but not limited to William B. Federman and his firm, Federman & Sherwood (the "Lead Class Counsel"), and Cornelius P. Dukelow and his firm, Abington Intellectual Property Law Group, PC.

F. "Class Member" means a person or entity belonging to the Settlement Class (as defined below).

G. "Class Notices" means the Mail Notice and the Publication Notice (as defined below).

H. "Complaint" means the complaint and any amended complaint in this Action.

I. "Court" means the court in which this Action is pending.

J. "Defendants' Counsel" means Andrew Campbell, Defendants' General Counsel, and John N. Hermes and Tamara Pullin, and their firm, McAfee & Taft.

K. "Fairness Hearing" means the hearing at which the Court will receive arguments and evidence regarding whether the settlement contemplated by this Settlement Agreement is fair, reasonable and adequate, and should be approved pursuant to Rule 23 of the Federal Rules of Civil Procedure, and whether the Final Judgment (as defined below) should be entered.

L. "Fairness Hearing Date" means the date set by the Court for the Fairness Hearing.

M. "Final Judgment" means the Final Judgment and Order of Dismissal with Prejudice to be entered by the Court approving this Settlement Agreement, which shall be substantially in the form of Exhibit A to this Settlement Agreement.

N. "Incentive Award" means such incentive compensation to the Representative Plaintiffs that may reasonably be requested by Class Counsel and awarded by the Court pursuant to Section VIII below.

O. "Mail Notice" means a notice sent via U.S. mail disclosing the settlement of this Action, providing Class Members with notice of their rights to opt out or object to such settlement, and otherwise containing text substantially in the form of Exhibit C to this Settlement Agreement.

P. "Preliminary Approval Order" means an order by the Court that accomplishes the purposes set forth in Section II below, and otherwise containing text substantially in the form of Exhibit B to this Settlement Agreement.

Q. "Publication Notice" means a notice of settlement to be published by the Defendants in *USA Today* and containing text substantially in the form of Exhibit D to this Settlement Agreement.

R. "Refund" means an amount, calculated in accordance with Section V(A) or (B) below, payable to an eligible Class Member who ordered a computer from BlueHippo and submitted an Approved Claim pursuant to this Settlement Agreement.

S. "Settlement Agreement" means this Settlement Agreement and any authorized amendments to it.

T.  "Settlement Class" means, for purposes of this Settlement Agreement only, all persons or entities throughout the United States who made payments to BlueHippo on or before July 31, 2007 for the purchase of a computer and neither received a computer nor a refund of such payments pursuant to the terms of the refund policy governing their purchase, or otherwise reached a settlement with BlueHippo relating to his or her account, for any reason whatsoever, including default or cancellation.  The Settlement Class does not include the Defendants, Class Counsel, Defendants' Counsel, or the officers, shareholders, or employees of any of them, or any state, federal, foreign, or local government.  The Settlement Class also does not include any person or entity whose BlueHippo account was terminated or suspended due to suspected illegal activity, or any person or entity that refused or failed to accept delivery of a computer, where BlueHippo did not receive credit from the computer manufacturer for such returned computer. Within this Settlement Class, there will be two subgroups as follows:

1.      Each Class Member who ordered a computer from BlueHippo on or before February 28, 2006, and did not receive a computer.

2.      Each Class Member who ordered a computer between March 1, 2006 and July 31, 2007, and did not receive a computer.

U.  "Special Master" means former Nevada Attorney General Frankie Sue Del Papa, or someone of equivalent expertise who is independent of the parties and satisfactory to Class Counsel and counsel for the Defendants, if Ms. Del Papa is unable to serve as the Special Master.

V. "Store" means the website www.PCsettlementsite.com maintained by BlueHippo containing items available for purchase by Class Members pursuant to this Settlement Agreement.

W. "Store Credit" means a credit, calculated in accordance with Section V(B) or (C) below, available for the purchase of merchandise, but exclusive of shipping charges and applicable taxes, by an eligible Class Member who ordered a computer from BlueHippo after March 1, 2006 and submitted an Approved Claim pursuant to this Settlement Agreement, which may be used by that Class Member to make a purchase from the Store.

II.   Promptly after execution of this Settlement Agreement, Class Counsel and Defendants' Counsel shall submit this Settlement Agreement to the Court and shall apply for preliminary approval of this Settlement Agreement and for a Preliminary Approval Order by the Court:

1.   Certifying the Settlement Class for settlement purposes only;

2.   Entering an Order approving the filing of a Second Amended Complaint for settlement purposes only,[1] which Second Amended Complaint is attached hereto as Exhibit E;

3.   Appointing the Representative Plaintiffs as adequate representatives of the Settlement Class for such purposes;

4.   Appointing Class Counsel to represent the Settlement Class;

5.   Preliminarily approving the settlement contemplated by this Settlement Agreement;

7

6. Determining that the Class Notices and the manner of their distribution described in Section III of this Settlement Agreement are the most practicable method of providing notice to Class Members, comply with the requirements of Rule 23 of the Federal Rules of Civil Procedure, and are reasonably calculated under the circumstances to apprise Class Members of the pendency of the Action, of their right to object to or opt out of the settlement contemplated by this Settlement Agreement, or otherwise to avail themselves of the rights created by this Settlement Agreement;

7. Setting the Fairness Hearing Date; and

8. Enjoining the institution, commencement or continued prosecution by any Class Member, directly, representatively, or in any other capacity, of any claim covered or to be covered by this Settlement Agreement or the settlement it contemplates in any court or tribunal, pending this Court's final determination of whether this Settlement Agreement should be approved and a Final Judgment should be entered.

III. Following the Court's entry of its Preliminary Approval Order, BlueHippo will distribute the Class Notices to members of the Settlement Class by the following means:

A. Within 30 days of the Court's Preliminary Approval Order, BlueHippo will cause the Publication Notice to be published in *USA Today*.

B. Within 30 days of the Court's Preliminary Approval Order, BlueHippo will create a settlement website to provide information about the settlement embodied by this

---

[1] Defendants agree to the entry of an Amended Complaint conditioned only upon the Court's approving this Settlement Agreement. Should the Court not approve the Settlement Agreement, Defendants do not consent to an

Settlement Agreement. On that settlement website, BlueHippo will post this Settlement Agreement and its exhibits, the Class Notices, a claim form that Class Members may use to indicate their desire to participate in this settlement pursuant to Section V below, and a web-based method for Class Members who have submitted their Approved Claims to select their Refund or items for their Store Credit.

C. Within 30 days of the Publication Notice, BlueHippo will send Mail Notice to all addresses BlueHippo has for members of the Settlement Class. BlueHippo will provide a sworn affidavit describing the scope of such distribution to Defendants' Counsel, who will provide said affidavit to the Court prior to the Court's entry of its Final Judgment in this Action.

D. BlueHippo will be responsible for all costs and expenses associated with the distribution of the Class Notices to members of the settlement class outlined in Sections III(A)-(C) above.

IV. Following the Court's Preliminary Approval Order, Class Members may object to, or opt out of, the Settlement Class and this settlement, in the following manner:

A. Any Class Member who wishes to object to this Settlement Agreement or the settlement it contemplates must do so by filing with the Court and serving on Lead Class Counsel and Defendants' Counsel  a written notice of objection, together with proof of membership in the Settlement Class, and  any memorandum of law or any evidence upon which the Class Member intends to rely. The objections and supporting materials must be filed with the Court no later than 25 days before the Fairness Hearing Date and served, by certified mail

---

Amended Complaint.

or overnight delivery service for receipt by Lead Class Counsel and Defendants' Counsel not later than 25 days before the Fairness Hearing Date. A Class Member may appear through an attorney for purposes of making its objection. Objections that are filed or served late shall not be considered. Any Class Member who does not object in the manner provided above shall be deemed to have waived all objections and shall forever be foreclosed from making any objection to the fairness, reasonableness, or adequacy of, or otherwise opposing in any way, this Settlement Agreement or the settlement it contemplates.

B. Any Class Member who wishes to appear and object in person or through counsel at the Fairness Hearing must serve and file a proper objection as provided in Section IV(A) above and must simultaneously serve and file a notice of intent to appear at the Fairness Hearing, identifying the Class Member or attorney who will present the Class Member's objection to the Court.

C. Plaintiff and Defendants shall have the right to respond, not later than seven days prior to the Fairness Hearing Date, to any and all timely objections by Class Members.

D. Any Class Member who wants to remove himself, herself, or itself from the Settlement Class (and thus opt out of this settlement) must do so in writing by delivering his, her or its full name and address and a statement that he, she or it wants to opt out of the settlement in *Robbins v. BlueHippo Funding, LLC, et al., No. 07-CV-145,* by overnight delivery service to Lead Class Counsel and Defendants' Counsel so that they receive that written request not later than 20 days before the Fairness Hearing Date. Any Class Member who does not provide

10

written notice of his, her or its request to opt out of the Settlement Class shall be bound by any judgment entered in the Action, whether favorable or unfavorable to such Class Member or the Settlement Class.

E. Any Class Member who opts out of the Settlement Class in a timely and proper manner will be entitled to participate in a binding arbitration with the Defendants before the independent Special Master designated in Section I(U) above, who will determine the merits of that Class Member's claim and the relief to which he, she or it is entitled.  All administrative expenses associated with this arbitration process and any fees charged by the Special Master for participation in the arbitration process will be paid by BlueHippo. Within thirty (30) days of the Court's entry of its Final Judgment approving this Settlement Agreement, any Class Member who opted out of the Settlement Class in a timely and proper manner may submit a written arbitration claim, via certified mail, to BlueHippo at 7000 Security Boulevard, 2d Floor, Baltimore, Maryland 21244 and to the Special Master at 1441 Alta Street, Reno, Nevada 89503.  BlueHippo shall have ninety (90) days after receipt of each written claim to respond to that claim by submitting its response, via certified mail, to the Class Member who submitted that claim (the "Claimant") and to the Special Master. The Claimant shall then have twenty (20) days in which to contact BlueHippo directly regarding his, her or its claim. There will thereafter be a period of sixty (60) days during which negotiations between the Claimant and BlueHippo may occur.  BlueHippo or the Claimant may notify the Special Master if these negotiations are unsuccessful. The Special Master then will schedule an arbitration hearing, which will take place

telephonically, during which the Claimant and BlueHippo may present their factual, legal and other arguments regarding the Claimant's claim. The Special Master will thereafter issue a binding determination that will resolve the Claimant's claim.

F. At the Fairness Hearing, the Court will consider any objections to the Settlement Agreement or the settlement it contemplates. Thereafter the Court will make its final determination, pursuant to Rule 23 of the Federal Rules of Civil Procedure, regarding whether the settlement contemplated by the Settlement Agreement is fair, reasonable and adequate, and whether the Final Judgment defined in Section I(M) should be entered.

G. If the Court approves the settlement of this Action and the other terms of this Settlement Agreement, it shall enter a Final Judgment substantially in the form of Exhibit A to this Settlement Agreement, which shall:

   1. Dismiss this Action with prejudice;

   2. Grant final approval to this Settlement Agreement;

   3. Incorporate and effect the release set forth in Section VII below;

   4. Order BlueHippo to continue to maintain a variety of items of value in its Store so that Class Members receiving Store Credits may meaningfully use said Store Credits;

   5. Authorize the arbitration procedure set forth in Section IV(E) above; and

   6. Order BlueHippo to dismiss any pending lawsuit, arbitration proceeding or collection action against Class Members who do not

timely opt out of the Settlement Class for failure to make payments to BlueHippo.

H. Unless terminated earlier as provided in this Settlement Agreement, this Settlement Agreement shall become final and effective upon the occurrence of all of the following three events:

1.    Final approval of the Settlement Agreement in all respects by the Court, as required by Rule 23(e) of the Federal Rules of Civil Procedure;

2.    Entry by the Court of the Final Judgment (substantially in the form of Exhibit A hereto); and

3.    Expiration of the time for appeal or the time to seek permission to appeal from the Court's approval of this Settlement Agreement and entry of its Final Judgment, or, if any such appeal is made, affirmance in its entirety of the Court's Final Judgment by the court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review, or such appeal has been withdrawn or dismissed with prejudice.

I. Within 5 business days of the Court's entry of its Final Judgment, BlueHippo will add to the settlement website described in Section III(B) of this Settlement Agreement links to the following documents: (1) the Complaint filed in this Action; (2) this Settlement Agreement; (3) the Court's Final Judgment and any related documents; and (4) a claim form by which eligible Class Members may seek Refunds or Store Credits pursuant to the terms of this Settlement Agreement.

V.    Each Class Member who submits an Approved Claim not later than 120 days after the Court enters its Preliminary Approval Order certifying the Settlement Class and preliminarily approving this Settlement Agreement (in accordance with Section II above), shall be entitled to receive the following Refund or Store Credit from the Defendants:

A.  Each Class Member who ordered a computer from BlueHippo on or before February 28, 2006, and did not receive a computer, will receive a Refund of all payments made by that Class Member to BlueHippo, plus $25, minus any amount paid to that Class Member in accordance with Section V(C) below.

B.  Each Class Member who ordered a computer after March 1, 2006 and did not receive a computer, may choose to receive either:

1.  A Store Credit equal to 125% of the total amount paid by that Class Member to BlueHippo, minus any amount paid to that Class Member in accordance with Section V(C) below; or

2.  A Refund of all payments made by that Class Member to BlueHippo minus a $125 termination fee and minus any amount paid to that Class Member in accordance with Section V(C) below.

C.  BlueHippo is entitled to an offset for payments made to Class Members under any state or federal restitution program. Each Class Member who is eligible, may be eligible or becomes eligible to participate in a restitution program offered by any federal or state regulatory agency regarding payments made to BlueHippo ("Regulatory Restitution Programs")shall be required to first participate in such Regulatory Restitution Programs. No Class Member shall be entitled to receive a

14

Refund or Store Credit pursuant to this Settlement Agreement unless and until that Class Member has filed any and all claims for restitution to which that Class Member is entitled pursuant to such Regulatory Restitution Programs and has received the payment(s) to which that Class Member is entitled pursuant to such Regulatory Restitution Programs. The amount of any Refund or Store Credit to which a Class Member may be entitled under this Settlement Agreement shall be reduced by the amount(s) that Class Member has received from such Regulatory Restitution Programs. Any Class Member who receives full restitution under one or more Regulatory Restitution Programs of all payments made by that Class Member to BlueHippo shall not be entitled to receive a Refund or Store Credit pursuant to this Settlement Agreement.

D. No Class Member shall be entitled to receive a Refund or Store Credit pursuant to this Settlement Agreement if said Class Member is eligible to participate in the settlement of any other class action currently pending against BlueHippo.

E. Any disputes relating to whether a Class Member's claim qualifies as an Approved Claim or relating to a Class Member's Store Credit or the use of that Store Credit at the Store shall be resolved by the Special Master via the same arbitration process described in Section IV(E).

F. Within 180 days after this Settlement Agreement becomes final and effective, in accordance with Section IV(H) above, BlueHippo will begin distributing Refunds or Store Credits to all eligible Class Members who: (i) submit Approved Claims not later than 120 days after the Court enters its Preliminary Approval Order (the "Approved Claim Date") and (ii) satisfy the requirements of Section V(C) above

by the date upon which this Settlement Agreement becomes final and effective. With respect to Class Members eligible to receive Store Credit, such Class Members shall be required to choose their Store Credit items by the Approved Claim Date, or their rights hereunder shall expire. If an eligible Class Member submits an Approved Claim not later than 120 days after the Court enters its Preliminary Approval Order but does not satisfy the requirements of Section V(C) above by the date upon which this Settlement Agreement becomes final and effective, BlueHippo will distribute any Refund or Store Credit to which that Class Member is entitled within 90 days after that Class Member satisfies the requirements of Section V(C).

G. The parties agree that the claims of Class Members shall not be assignable.

H. BlueHippo will be responsible for the costs and expenses associated with the administration of the Class Members claims.

VI.     Defendants may take whatever steps they deem necessary in their sole discretion, including legal action or resort to law enforcement authorities, to prevent fraudulent claims under this Settlement Agreement, the counterfeiting of Refunds, the fraudulent use of Store Credits, or the use of Store Credits in a manner not reasonably contemplated by this Settlement Agreement.

VII.    Except to the extent expressly reserved elsewhere in this Settlement Agreement, all Class Members shall be deemed upon entry of the Court's Final Judgment to have released and discharged Defendants, their parents, subsidiaries, affiliates, predecessors, successors, and assigns, and each of their past, present and future officers, directors, employees, agents, members, shareholders, representatives,

attorneys, heirs, administrators, executors, predecessors, vendors, suppliers, successors and assigns (collectively, the "Releasees") from any and all causes of action, claims, equitable, legal, and administrative relief, debts, suits, demands, liabilities, or rights, however denominated and of every nature and description whatsoever without limitation (including, without limitation, any claims for damages, interest, attorneys' fees, expert or consulting fees, and any other costs, expenses or liability whatsoever), whether presently known or unknown, whether based on facts in addition to or different from those which they now know or believe to be true, or whether based on federal, state, or local statute or ordinance, regulation, contract, common law, or any other source, whether fixed or contingent, accrued or unaccrued, liquidated or unliquidated, at law or in equity, matured or unmatured, whether class, derivative or individual in nature: (i) that have been, could have been, may be, or could be alleged or asserted by any Class Member, either directly or indirectly, on his, her or its own behalf, on behalf of the Settlement Class, or on behalf of any other person, against any of the Releasees relating to, on the basis of, in connection with, or arising out of, in whole or in part, the subject matter of any of the claims alleged in the Complaint, including, without limitation, any claim arising out of or relating to any of the acts, omissions, misrepresentations, facts, events, matters, transactions or occurrences referred to in the Action or otherwise alleged, asserted or contended in the Action; or (ii) that arise out of, are based upon, or relate in any way to BlueHippo's sales practices or to any interactions with BlueHippo of any kind or nature whatsoever. All Class Members expressly waive any and all rights or benefits they may now have, or in the future may have, under any law relating to the releases

of unknown claims, including, without limitation, California Civil Code Section 1542, which otherwise provides that "a general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor," or under any other law or principle of common law of any State or territory of the United States, or of any foreign country, that is comparable or equivalent in substance or intent to California Civil Code Section 1542. This release is not intended to extend to claims that arise only after the Court's entry of its Final Judgment, which are unrelated to the Settlement Agreement or its subject matter, and which are based wholly on facts not in existence at the time the Settlement was executed.

VIII.   The Court may choose to award Attorneys' Fees to Class Counsel. The Court may also choose to make an Incentive Award to the Representative Plaintiffs. These amounts shall be determined and awarded by the Court and paid by the Defendants as follows:

A. Subject to final Court approval, defendant agrees to pay Class Counsel the amount of $615,000.00 for attorneys' fees and all expenses except costs of administration of the class settlement and costs of notice upon the entry of a final judgment approving the settlement. If there is an appeal, the judgment will not be final unless affirmed. In such an event, defendant agrees to pay interest on the attorneys' fees at the rate of 3.7% per annum from the date of filing of the notice of appeal until paid. At or before the Fairness Hearing, Class Counsel shall submit a sworn declaration to the Court applying for Attorneys' Fees. Defendants

reserve the right to terminate this Settlement Agreement and their obligations hereunder if they are ordered to pay more than $615,000.00 in Attorneys' Fees and expenses.

B.   At or before the Fairness Hearing, Class Counsel shall submit a sworn declaration to the Court applying for an Incentive Award payment to Representative Plaintiff Shawna Robbins.   Defendants agree to pay no more than $2,000.00 of any Incentive Award granted by the Court to the Representative Plaintiff and reserve the right to terminate this Settlement Agreement and their obligations hereunder if they are ordered to pay an Incentive Award of more than $2,000.00.

C.   Defendants will not object to any applications for Attorneys' Fees in the amount of $615,000.00 to Class Counsel, or for an Incentive Award in an amount up to $2,000.   Payment of attorneys fees shall be made to Federman & Sherwood for distribution to Plaintiff's Counsel in its sole discretion.

D.   The Representative Plaintiffs and the Defendants and their undersigned counsel each acknowledge and confirm that the Attorneys' Fees and Incentive Award provisions of this Settlement Agreement were negotiated after all material terms of the relief to be provided to the Settlement Class under this Settlement Agreement were negotiated and that no portion of the Attorneys' Fees or of any Incentive Award that may be awarded by the Court will diminish any of the relief to be provided to the Settlement Class under this Settlement Agreement. The terms of this Settlement are not conditioned upon an award by the Court of Attorneys' Fees to Class Counsel or an Incentive Award to the Representative Plaintiffs in any amount or in any particular amount.   The Court's consideration of the Settlement

shall be independent of its consideration of any Attorneys' Fees or Incentive Award and the Settlement shall remain binding and effective notwithstanding that the Court may decline to award Attorneys' Fees or Incentive Awards as requested or in the amounts requested.

IX.    Defendants may terminate this Settlement Agreement in its entirety at any time and without further obligation if:

    A. This Court or any court rejects, materially modifies, or denies approval of any material provision of this Settlement Agreement; or

    B. This Court or any court makes any order purporting to alter or amend materially any material provision of the Settlement Agreement, or purporting to preclude the Representative Plaintiffs or Defendants, or any of them, from proceeding in whole or in part with the proposed settlement or this Settlement Agreement.

X.    In the event of termination of this Settlement Agreement:

    A. This Settlement Agreement shall be considered null and void and have no force or effect, and no person or entity shall be bound by any of its terms; and

    B. The rights of all persons or entities with respect to the claims and defenses asserted in this Action shall be restored to the positions existing immediately prior to execution of this Settlement Agreement.

XI.    This Settlement Agreement has been negotiated at arm's-length between parties of equal bargaining power, and was drafted jointly by Class Counsel and Defendants' Counsel. The terms of the settlement and of this Settlement Agreement reflect a good faith settlement of the Class Members' claims, reached voluntarily after consultation with legal counsel.

XII.    By entering into this Settlement Agreement, no Defendant is admitting any liability to any Class Member or any other person or entity or waiving any claim, counterclaim, defense, or affirmative defense.

XIII.   Neither this Settlement Agreement nor any drafts thereof, nor any of its provisions or exhibits, nor any brief in support of it, nor any of the negotiations or proceedings preceding its approval in a final order and judgment, shall be offered or received in evidence in any action or proceeding of any nature, or otherwise referred to or used in any manner in any court or other tribunal, except as follows:

A. to enforce or implement the terms of this Settlement Agreement;

B. to support or defend this Settlement Agreement on any appeal from a final order and judgment; or

C. to enforce or assert a claim or defense of *res judicata,* collateral estoppel, claim or issue preclusion, settlement, release, merger and bar, or any similar claim or defense against a Class Member or third party.

XIV.   This Settlement Agreement contains the entire agreement and understanding of the Representative Plaintiffs, the Settlement Class, Class Counsel, the Defendants, and Defendants' Counsel with respect to its subject matter. This Settlement Agreement supersedes all prior agreements or understandings (whether oral or written), if any, between or among them with respect to such subject matter and may not be altered, amended, or modified except by a written instrument duly executed by a Defendants' Counsel and a Class Counsel.

XV.    The Representative Plaintiffs, the Defendants, Class Counsel, and Defendant's Counsel shall:

A.  Cooperate fully with one another in seeking approval of the settlement contemplated by this Settlement Agreement; and

B.  Cooperate fully with one another in defending against any objection to approval of this Settlement Agreement, any appeal from the Court's Final Judgment approving this Settlement Agreement, or any collateral attack on such settlement or on its preclusive effect, and in prosecuting any appeal from an order or judgment denying approval or recognition of such settlement, except that Defendants shall have no obligation to take any position with respect to any Incentive Award or Attorneys' Fees granted by the Court to the Representative Plaintiffs or to Class Counsel (other than their agreement not to object as described in Section VIII (C) above).

XVI.  Subject to the terms of this Settlement Agreement and in settlement and release of all claims of the Settlement Class as set forth in this Agreement, the Defendants agree to make available for inspection by Class Counsel, during the period from the date upon which this Settlement Agreement is executed until the date upon which the Court grants Preliminary Approval of this Settlement Agreement:

1.  Certain information on the changes made in the BlueHippo business model after February 28, 2006;

2.  Certain information on the FTC investigation and the Attorney General investigations in Maryland, West Virginia, Illinois, Wisconsin, and any other subsequent regulatory investigation;

3.  A proposed form of agreement and an informal interview with the Special Master to perform the services specified in Sections IV(E) and V(D) above;

    4.   An informal interview with a Company Representative and/or other employees as may be necessary; and

The Defendants will not have any obligation to undertake, prepare or provide any analysis, compilation or review of any records described above or to reveal any privileged information, including, without limitation, any attorney-client communication or attorney work product. To the extent the Defendants provide documents or other information pursuant to this Section, such documents or information will be deemed to be communicated as part of confidential settlement negotiations, will be subject to the protections of Rule 408 of the Federal Rules of Evidence, will be protected from disclosure to third parties as confidential business information of BlueHippo and nonpublic consumer financial information, and will be inadmissible against the Defendants or anyone else in any proceeding whatsoever. Any such documents or information shall be subject to a protective order and/or confidentiality agreement satisfactory to the Defendants.

XVII.  The Court shall retain jurisdiction to implement and enforce the terms of this Settlement Agreement, including jurisdiction to alter, without further notice to the Class, any dates or deadlines set by this Settlement Agreement or the Court.

XVIII. Each of the undersigned represents and warrants that he or she has authority to execute this Settlement Agreement on behalf of the persons he or she purports to represent. This Settlement Agreement may be executed in counterparts and all the executed counterparts shall together be treated as a whole. Facsimile signatures shall be deemed equivalent to original signatures for purposes of execution.

XIX. This Settlement Agreement and the rights and obligations it contains shall be binding upon, and inure to the benefit of, the successors and assigns of the parties to it.

XX. The waiver by any person or entity of any breach of this Settlement Agreement by any other person or entity shall not be deemed a waiver of any other prior or subsequent breach and shall not constitute a continuing waiver.

XXI. This Settlement Agreement shall be governed by the laws of the State of Oklahoma without regard to its conflict of laws provisions.

Dated: January ___, 2009


William B. Federman, OBA No. 2853
Jennifer F. Sherrill, OBA No. 19703
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania
Oklahoma City, OK  73120
405-235-1560
405-239-2112 (Facsimile)
wbf@federmanlaw.com
jfs@federmanlaw.com

Andrew Campbell
70000 Security Blvd.
Baltimore, MD  21244
800-385-7000

General Counsel


Cornelius P. Dukelow, OBA No. 19086
**ABINGTON INTELLECTUAL**
    **PROPERTY LAW GROUP, PC**
10026-A S. Mingo Road, No. 240
Tulsa, Oklahoma 74133-5700
918.588.3400 (*telephone*)
cdukelow@abingtonlaw.com

John N. Hermes
McAfee & Taft, A Professional Corporation
10th Floor, Two Leadership Square
211 North Robinson
Oklahoma City, OK  73102

*Counsel for the Defendants*


*Counsel for the Representative Plaintiffs and the Settlement Class*

EXHIBIT A

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

SHAWNA ROBBINS, an individual, on
behalf of herself and all others similarly
situated,

        Plaintiff,

vs.

        Case No. 07-CV-145-TCK-SAJ

BLUEHIPPO FUNDING, LLC, a Maryland
corporation, and BLUEHIPPO CAPITAL,
LLC, a Nevada corporation,

        Defendants.

## FINAL JUDGMENT AND ORDER OF DISMISSAL

      This matter having come before the Court on a joint motion for approval of a Stipulation

of Settlement dated _____ (the "Settlement Agreement") between and among Shawna

Robbins, James Ray and Deborah McLaughlin (the "Representative Plaintiffs"), on behalf of

themselves and the Settlement Class (defined below in paragraph 3), and Defendants BlueHippo

Funding, LLC and BlueHippo Capital, LLC (the "Defendants" or "Blue Hippo"), by and through

their respective, duly authorized counsel.

      WHEREAS, the Court having entered a Preliminary Approval Order on _____

that preliminarily approved the Settlement Agreement and certified a Settlement Class for that

purpose; appointed the Representative Plaintiffs as adequate representatives of the Settlement

Class; appointed Class Counsel to represent the Settlement Class; directed that Class Notices be

given to potential Class Members; scheduled a Fairness Hearing to determine whether the

settlement contemplated by the Settlement Agreement is fair, reasonable and adequate; and provided Class Members with an opportunity to object to the Settlement Agreement and to be heard at the Fairness Hearing; and.

WHEREAS, Class Notices of the Fairness Hearing having duly been given in accordance with this Court's Preliminary Approval Order; and

WHEREAS, the Court, having considered all papers filed and proceedings held in connection with the parties' joint motion for approval of the Settlement Agreement, and having held a Fairness Hearing on _____; and

WHEREAS, the Court finding no just reason for delay in entry of this Final Judgment and good cause appearing therefor, it is this ___ day of _____, 200_,

ORDERED, ADJUDGED AND DECREED THAT:

1.      This Court finds that it has jurisdiction over the subject matter of this Action, including the terms and conditions of the Settlement Agreement and all exhibits thereto, and over all parties to the Action and all Class Members.

2.      All terms used but not otherwise defined herein shall have the meanings ascribed to them in the Settlement Agreement.

3.      By its Preliminary Approval Order, the Court certified this action as a class action under Federal Rule of Civil Procedure 23(b)(3) and approved a Settlement Class that is defined as follows:

> All persons or entities throughout the United States who made payments to BlueHippo on or before July 31, 2007 for the purchase of a computer and neither received a computer nor a refund of such payments pursuant to the terms of the refund policy governing their purchase, or otherwise reached a settlement with BlueHippo relating to his or her account, for any reason whatsoever, including default or cancellation.  The Settlement Class does not include the Defendants, Class Counsel, Defendants' Counsel, or the officers, shareholders, or employees of any of them, or any state, federal, foreign, or local government.  The Settlement Class also

does not include any person or entity whose BlueHippo account was terminated or suspended due to suspected illegal activity, or any person or entity that refused or failed to accept delivery of a computer, where BlueHippo did not receive credit from the computer manufacturer for such returned computer. Within this Settlement Class, there will be two subgroups as follows:

1.    Each Class Member who ordered a computer from BlueHippo on or before February 28, 2006, and did not receive a computer.

2.    Each Class Member who ordered a computer between March 1, 2006 and July 31, 2007, and did not receive a computer.

4.    The Court hereby determines and reaffirms that this Action has been appropriately certified as a class action for settlement purposes, pursuant to Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure, because:

A.    The requirements of Rule 23(a) of the Federal Rules of Civil Procedure have been met in that:

(i)    the Settlement Class is so numerous that joinder of all members is impracticable;

(ii)    the claims of the Representative Plaintiffs present questions of law or fact common to the Settlement Class;

(iii)    The Representative Plaintiffs' claims are typical of the claims of, or defenses to, the Settlement Class;

(iv)    Class Counsel have fairly represented the interests of the Settlement Class; and

(v)    the Representative Plaintiffs have fairly and adequately represented the interests of the Settlement Class.

B.    The requirements of Rule 23(b)(3) of the Federal Rules of Civil Procedure have been met in that:

      (i)      questions of law or fact relating to the Defendants' sale practices predominate over any questions affecting only individual members; and

      ii)      this class action is superior to other available methods for fairly and efficiently adjudicating the controversies at issue.

C.      Certification of class actions, such as this one, for the purposes of settlement is desirable to facilitate resolution of complex, nationwide litigations such as this one.

5.      This Court hereby finds and concludes that the Class Notices given to the Settlement Class, including, but not limited to, the form of said notice and the methods of identifying and giving notice to the Settlement Class, complies with this Court's Preliminary Approval Order and was the best notice practicable under the circumstances and fully satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure and the requirements of the United States Constitution (including the Due Process Clause).

6.      The Court finds that the terms and provisions of the Settlement Agreement were entered into by the parties in good faith. The Court hereby fully and finally approves the Settlement Agreement and its terms and provisions as fair, reasonable and adequate as to, and in the bests interests of, the Settlement Class, and in accordance with all applicable requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the rules of this Court, and any other applicable law. The parties and their counsel are hereby directed to implement and consummate the Settlement Agreement in accordance with its terms and provisions.

7.      The Court finds that the Representative Plaintiffs and all other Class Members who did not timely and properly request exclusion from the Settlement Class are bound by the Settlement Agreement and by this Final Judgment and Order of Dismissal.  A list of those Class Members who have filed timely and proper requests for exclusion from the Settlement Class is annexed hereto as Appendix A and made a part hereof.  Those persons and entities that appear on the list annexed hereto as Appendix A shall not receive any of the benefits provided under the Settlement Agreement, but may, if they assert timely and proper claims within thirty (30) days of the Court's entry of this Final Judgment, participate in the binding dispute resolution process described in Section IV(E) of said Settlement Agreement.  Any member of the Settlement Class whose name does not appear on the list annexed hereto as Appendix A failed to file a timely request for exclusion from the Settlement Class and is hereby barred from asserting otherwise.

8.      This Court hereby dismisses, on the merits and with prejudice and without costs to any party, this Action and all claims made against the Settling Defendant by all Class Members who did not timely and properly request exclusion from the Settlement Class.

9.      All Class Members who did not timely and properly request exclusion from the Settlement Class shall be deemed to have, and by operation of this Final Judgment shall have, fully, finally and forever released and discharged Defendants, their parents, subsidiaries, affiliates, predecessors, successors, and assigns, and each of their past, present and future officers, directors, employees, agents, members, shareholders, representatives, attorneys, heirs, administrators, executors, predecessors, successors and assigns (collectively, the "Releasees") from any and all causes of action, claims, equitable, legal, and administrative relief, debts, suits, demands, liabilities, or rights, however denominated and of every nature and description whatsoever without limitation (including, without limitation, any claims for damages, interest,

attorneys' fees, expert or consulting fees, and any other costs, expenses or liability whatsoever),

whether presently known or unknown, whether based on facts in addition to or different from

those which they now know or believe to be true, or whether based on federal, state, or local

statute or ordinance, regulation, contract, common law, or any other source, whether fixed or

contingent, accrued or unaccrued, liquidated or unliquidated, at law or in equity, matured or

unmatured, whether class, derivative or individual in nature: (i) that have been, could have been,

may be, or could be alleged or asserted by any Class Member, either directly or indirectly, on

his, her or its own behalf, on behalf of the Settlement Class, or on behalf of any other person,

against any of the Releasees relating to, on the basis of, in connection with, or arising out of, in

whole or in part, the subject matter of any of the claims alleged in the Complaint, including,

without limitation, any claim arising out of or relating to any of the acts, omissions,

misrepresentations, facts, events, matters, transactions or occurrences referred to in the Action or

otherwise alleged, asserted or contended in the Action; or (ii) that arise out of, are based upon, or

relate in any way to BlueHippo's sales practices or to any interactions with BlueHippo of any

kind or nature whatsoever. The foregoing release is not intended to extend to claims which arise

after the entry of this Final Judgment, which are unrelated to the Settlement Agreement or its

subject matter, and which are based wholly on facts not in existence at the time the Settlement

Agreement was executed.

      10.    All Class Members who did not timely and properly request exclusion from the

Settlement Class expressly waive any and all rights or benefits they may now have, or in the

future may have, under any law relating to the releases of unknown claims, including, without

limitation, California Civil Code Section 1542, which provides that "a general release does not

extend to claims which the creditor does not know or suspect to exist in his or her favor at the

time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor," or under any other law or principle of common law of any State or territory of the United States, or of any foreign country, that is comparable or equivalent in substance or intent to California Civil Code Section 1542.

11.     The Court finds that the Representative Plaintiffs and Class Counsel adequately represented the Settlement Class under Rules 23(a)(4) and (g) of the Federal Rules of Civil Procedure for purposes of negotiating, entering into, and implementing the Settlement Agreement.

12.     BlueHippo shall maintain a reasonable variety of items of value in its Store so that Class Members receiving Store Credits under the Settlement Agreement may meaningfully use said Store Credits.

13.     BlueHippo shall cooperate with the Special Master designated under the Settlement Agreement in conducting the binding dispute resolution process described in Section IV(E) of the Settlement Agreement, which shall be available to persons or entities that have timely and properly requested exclusion from the Settlement Class and are listed on Appendix A to this Final Judgment.  BlueHippo shall also pay all administrative expenses associated with said arbitration process and any fees charged by the Special Master relating thereto.

14.     BlueHippo shall dismiss any pending lawsuit or arbitration proceeding for failure to make payments to BlueHippo against any Class Member who did not timely and properly request exclusion from the Settlement Class.

15.     Neither this Final Judgment, the Settlement Agreement (whether or not it is terminated), nor any of their provisions, nor any negotiations, proceedings or agreements relating to the Settlement Agreement and the settlement it describes, nor any matter arising in connection

with such negotiations, proceedings or agreements, nor any act performed or document executed

pursuant to or in furtherance of the Settlement Agreement: (i) is or may in any event be deemed

or construed to be or may be offered or received in evidence or used as or deemed to be an

admission or evidence of a presumption, concession or admission by any Defendant of the truth

of any fact alleged in the Complaint or the validity of any claim or of any wrongdoing, liability,

negligence or fault by any Defendant, or a presumption, concession or admission by the

Representative Plaintiffs as to the infirmity of any fact alleged in the Complaint, the viability of

any claim, or a lack of wrongdoing, liability, negligence or fault by any Defendant; or (ii) is or

may be deemed to be or may be referred to or used as an admission or evidence of a

presumption, concession or admission with respect to any fault or omission, or lack thereof, of

the Defendants, or for any other reason, in any civil, criminal, arbitration or administrative action

or proceeding in any court, arbitration, administrative agency or other tribunal, other than in such

proceedings as may be necessary to consummate, effectuate or enforce any of the provisions of

the Settlement Agreement or this Final Judgment. Defendants may file the Settlement Agreement

and/or this Final Judgment in any action that may be brought against them in order to support a

defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good-

faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion

or similar defense or counterclaim.  Any party may file the Settlement Agreement and/or this

Final Judgment in any action that may be brought to enforce the terms of the Settlement

Agreement and/or this Final Judgment.

      16.    The terms and provisions of the Settlement Agreement and of this Final Judgment

are binding on the Representative Plaintiffs and all other Class Members who did not timely and

properly request exclusion from the Settlement Class, as well as their heirs, executors,

administrators, successors, and assigns, who are hereby permanently barred and enjoined from asserting, instituting, commencing, continuing, or prosecuting either directly or indirectly, representatively, derivatively or in any other capacity, any claims (including unknown claims) they have hereby released; *provided, however,* that this Final Judgment shall not bar any action or claim to enforce the terms of the Settlement Agreement as approved by the Court or this Final Judgment.

17.     All confidentiality agreements made and protective orders entered during the course of this Action relating to the confidentiality of documents, testimony or other information produced during this Action or pursuant to Section XVII of the Settlement Agreement shall survive the Settlement Agreement and this Final Judgment.

18.     The parties may, without notice to or further approval from the Court, enter into written agreements that amend, modify or expand the Settlement Agreement and its implementing documents (including the exhibits to the Settlement Agreement), provided that such amendments, modifications, or expansions of the Settlement Agreement are not materially inconsistent with this Final Judgment and do not (a) materially limit the rights of Class Members under the Settlement Agreement; or (b) materially limit the rights of the Releasees described in paragraph 9 above.

19.     Without affecting the finality of this Final Judgment, for purposes of appeal or otherwise, the Court hereby reserves and retains continuing and exclusive jurisdiction over all matters relating to the administration, consummation and enforcement of the terms of the Settlement Agreement and the settlement embodied therein, including any application for an Incentive Award to the Representative Plaintiffs or for the award of Attorneys' Fees to Class Counsel.

20.     This Court determines pursuant to Fed. R. Civ. P. 54(b) that there is no just reason

for delay and hereby directs that the Final Judgment and Order of Dismissal be entered.


IT IS SO ORDERED


Dated: _____, 200_.



_____
Honorable Terence Kern
United States District Judge

EXHIBIT B

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

SHAWNA ROBBINS, an individual, on
behalf of herself and all others similarly
situated,

        Plaintiff,

vs.

        Case No. 07-CV-145-TCK-SAJ

BLUEHIPPO FUNDING, LLC, a Maryland
corporation, and BLUEHIPPO CAPITAL,
LLC, a Nevada corporation,

        Defendants.

## PRELIMINARY APPROVAL OF SETTLEMENT,
## NOTICE AND HEARING ORDER

        Pending before the Court is the Motion for Preliminary Approval of Class Action

Settlement Agreement ("Motion").   The Motion is presented to the Court by Counsel for

Plaintiffs and Defendants.  Appearing for the Plaintiffs are William B. Federman, of Federman &

Sherwood, and Cornelius P. Dukelow, of Abington Intellectual Property Law Group, PC.

Appearing for the Defendants is John N. Hermes, of McAfee & Taft, A Professional

Corporation.

        The Court, having reviewed the pleadings in this matter, including the Stipulation of

Settlement entered into by the parties to this action and dated January __, 2009, and having heard

the arguments of Counsel for the parties with respect to the proposed settlement of the action,

does hereby order and declare as follows:

1.    All terms and conditions used herein have the same meaning as set forth in the

Stipulation of Settlement.

2.    The proposed settlement set forth in the Stipulation of Settlement is hereby

preliminarily approved as being with the range of reasonableness, such that notice thereof should

be given to the members of the Settlement Class (as defined in the following paragraph).

3.    On _____, 2009, pursuant to Rule 23 of the Federal Rules of Civil

Procedure, the court certified the following Class:

> All persons or entities throughout the United States who made payments to
> BlueHippo on or before July 31, 2007 for the purchase of a computer and neither
> received a computer nor a refund of such payments pursuant to the terms of the
> refund policy governing their program, or otherwise reached a settlement with
> BlueHippo relating to his or her account, for any reason whatsoever, including
> default or cancellation.  The Settlement Class does not include the Defendants,
> Class Counsel, Defendants' Counsel, or the officers, shareholders, or employees
> of any of them, or any state, federal, foreign, or local government.  The
> Settlement Class also does not include any person or entity whose BlueHippo
> account was terminated or suspended due to suspected illegal activity, or any
> person or entity that refused or failed to accept delivery of a computer, where
> BlueHippo did not receive credit from the computer manufacturer for such
> returned computer.  Within this Settlement Class, there will be two subgroups as
> follows:
>
> 1.    Each Class Member who ordered a computer from
> BlueHippo on or before February 28, 2006, and did not receive a computer.
>
> 2.    Each Class Member who ordered a computer between
> March 1, 2006 and July 31, 2007 and did not receive a computer.

4.    Plaintiffs and Settlement Class Counsel are hereby found to be and are therefore

appointed as adequate representatives of the Settlement Class.

5.    The proposed Final Judgment and Order of Dismissal and Class Action

Settlement Notices, which are attached to the Stipulation of Settlement as Exhibits A, C, and D,

respectively, are hereby approved as to form.

6.      The filing of a Second Amended Complaint, which is attached to the Stipulation of Settlement as Exhibit E, is approved for settlement purposes only.

7.      Defendants are hereby directed to provide notice as follows:

(a)  Defendants are directed to cause to be published the Settlement Notice substantially in the form of Exhibit D to the Stipulation of Settlement once weekly for two successive weeks in the national edition of *USA Today*, all such publications to occur on or before _____, 2009; and

(b)  Defendants shall cause the Settlement Notice in the form of Exhibit C to be mailed to Settlement Class Members by first class United States Mail on or before _____, 2009.

8.      The Court finds that the Class Action Settlement Notice to the Settlement Class regarding the pendency of the action and of this settlement and the methods of dissemination to members of the Settlement Class in accordance with the terms of this Order, constitute the best notice practicable under the circumstances and constitute valid, due, and sufficient notice to members of the Settlement Class, complying fully with the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Constitution of the United States, and any other applicable law or rule.

9.      Any member of the Settlement Class who does not, in connection with the Settlement Notice, file a valid and timely request for exclusion will be bound by the terms of the Stipulation of Settlement and the Judgment dismissing the action on the merits and with prejudice.

10.      A hearing (the "Fairness Hearing") shall be held by the Court on _____, 200_ at _____ ___.m. before the Honorable Judge Terence Kern, to consider and determine

whether the requirements for certification of the Settlement Class have been met and whether the proposed settlement of the action on the terms set forth in the Settlement Agreement should be approved as fair, reasonable, adequate and in the best interests of the Settlement Class Members; whether Settlement Class Counsel's attorneys' fees and reimbursement expenses requested by Plaintiffs' Counsel, included as a part of the settlement, should be approved; the appropriate amount of the Class Representatives' awards, if any; and whether Judgment approving the settlement and dismissing the action on the merits and with prejudice against the Plaintiffs and all Settlement Class Members ("the Judgment") should be entered.

11.     The Fairness Hearing may, from time-to-time and without further notice to the Settlement Class (except those who have filed timely and valid objections), be continued or adjourned by Order of the Court.

12.     Any member of the Settlement Class who seeks exclusion from the Settlement Class must send a written request, as set forth in the Settlement Notice, postmarked no later than _____, 2009, to Settlement Class Counsel.  Notice provided to Plaintiffs' Counsel will be given to Defendants' Counsel.

13.     Objections by any members of the Settlement Class to the certification of the Settlement Class and the proposed settlement contained in the Stipulation of Settlement and described in the Settlement Notice, the payment of attorneys' fees and reimbursement of expenses to the Settlement Class Counsel, and/or entry of the Judgment shall be heard, and any papers submitted in support of said objections shall be considered, by the Court at the Fairness Hearing only if, on or before _____, 2009[twenty-five days before the hearing], any objector files with the Court a Notice of his or her intention to appear, submits proof that he or she is a member of the Settlement Class, states the basis for such objections, and serves copies of

the foregoing and all other papers in support of such objections upon Counsel for the parties identified in the Settlement Notice.  In order to be considered at the hearing, all objections must have been served on Counsel via certified or overnight mail on or before _____, 2009[twenty-five days before hearing].

14.    Not later than _____, 2009, the Parties shall file with the Court all papers in support of the application for final approval of the settlement, and/or any papers in response to any valid and timely objections and shall serve copies of such papers upon each other and upon any objectors who shall have complied with the provisions of this Order.

15.    The institution, commencement or continued prosecution by any Class Member, directly, representatively, or in any other capacity, of any claim covered or to be covered by the Settlement Agreement or the settlement it contemplates in any court or tribunal, pending this Court's final determination of whether this Settlement Agreement should be approved and a Final Judgment should be entered, is hereby enjoined.

16.    Counsel for the parties to this action are hereby authorized to utilize all reasonable procedures in connection with the administration of this settlement which are not materially inconsistent with either this Order or the terms of the Stipulation of Settlement.

IT IS SO ORDERED

Dated: _____, 200_.

_____
Honorable Terence Kern
United States District Judge

EXHIBIT C

**You are receiving this Notice because we believe you are a customer or former customer of BlueHippo Funding, LLC or BlueHippo Capital, LLC ("BlueHippo"). If you are NOT a customer or former customer of BlueHippo, please accept our apologies and disregard this Notice.**

NOTICE OF CLASS ACTION SETTLEMENT

*Robbins v. BlueHippo Funding, LLC, et al.,* No. 07-CV-145
United States District Court for the Northern District of Oklahoma
411 Page Belcher Federal Bldg. and United States Courthouse
333 West Fourth Street, Tulsa, Oklahoma 74103-3819

IF YOU HAVE MADE A PAYMENT TO BLUEHIPPO ON OR BEFORE JULY 31, 2007 FOR THE PURCHASE OF A COMPUTER, AND HAVE NOT YET RECEIVED THE COMPUTER, OR A REFUND FROM BLUEHIPPO, OR OTHERWISE REACHED A SETTLEMENT WITH BLUEHIPPO RELATING TO YOUR ACCOUNT, PLEASE NOTE THAT A SETTLEMENT OF VARIOUS LEGAL CLAIMS RELATING TO SUCH PURCHASES HAS BEEN PROPOSED IN THIS CLASS ACTION. THE SETTLEMENT MAY AFFECT YOUR RIGHTS.

WHAT IS THIS CASE ABOUT?

Plaintiff claims that BlueHippo violated consumer protection laws by accepting payments from individuals ordering computers from them and by not delivering the computers to the consumer or refunding the money. BlueHippo denies all of Plaintiff's claims of wrongdoing.

HOW DO I KNOW IF I'M A MEMBER OF THE SETTLEMENT CLASS?

If you made a payment to BlueHippo for the purchase of a computer at any time on or before July 31, 2007 and have not yet received the computer, or a refund from BlueHippo, or otherwise reached a settlement with BlueHippo relating to your account, you may be a Class Member for purposes of this settlement.

WHAT MIGHT I GET IF I REMAIN IN THE SETTLEMENT?

Class Members who remain in the settlement and file Approved Claims may receive a Refund or Store Credit from BlueHippo: (1) Class Members who ordered a computer from BlueHippo on or before February 28, 2006 will receive a full refund of payments made to BlueHippo plus $25.00; and (2) Class Members who ordered a computer after March 1, 2006 may choose to accept either Store Credit equal to 125% of the total amount paid to BlueHippo or a refund of the amount paid to BlueHippo minus a $125 termination fee. The amounts of these Refunds or Store Credits will be reduced by any amounts that Class Members receive under federal or state Regulatory Restitution Programs applicable to computer purchases from BlueHippo. Class Members will be required to participate in such Regulatory Restitution Programs before they are entitled to receive a Refund or Store Credit. The Court will also order BlueHippo to dismiss any pending lawsuits or arbitrations against Class Members.

HOW DO I FILE A CLAIM FOR A REFUND OR A STORE CREDIT?

To file a claim for a Refund or a Store Credit, you must fill out the enclosed claim form. Claim forms are also available at [www.BlueHippo.com] or by writing to [BlueHippo at 7000 Security Boulevard, Second Floor, Baltimore, MD 21244]. Claim forms must be completed and submitted to [BlueHippo or the Claims Administrator] by [120 days after the Court's Preliminary Approval Order].

## WHAT HAPPENS NEXT AND HOW DOES IT AFFECT ME?

On [the Fairness Hearing Date], Judge Terence Kern will hold a Fairness Hearing at the U.S. Courthouse at 333 West Fourth Street, Tulsa, Oklahoma to decide whether to approve this settlement. If he approves the settlement, all Class Members will be bound by the resulting judgment and court orders, and eligible Class Members will be entitled to claim benefits under the settlement. IF YOU DO NOT OPT OUT OF THE SETTLEMENT AND IT IS APPROVED, YOU WILL FOREVER RELEASE ANY RIGHTS YOU HAVE TO SUE BLUEHIPPO OR ITS RELATED ENTITIES FOR ANYTHING RELATED OR CONNECTED TO THE FACTS OR CLAIMS COVERED IN THE SETTLEMENT.

## HOW DO I OPT OUT?

If you're a Class Member and want to opt out of this settlement, you *must* do so in writing. You must provide your full name and address and state that you want to opt out of the settlement in *Robbins v. BlueHippo Funding, LLC, et al.*, No. 07-CV-145, and deliver your written request by certified mail or overnight delivery service to the Lead Class Counsel and the Defendants' Counsel identified below so that they receive your request not later than 20 days before the Fairness Hearing Date. If you opt out of this settlement, you will be entitled to participate in a binding dispute resolution process overseen by an independent Special Master. BlueHippo will pay the administrative expenses associated with this arbitration process, which will not be available to individuals who are not Class Members, and will also pay any fees charged by the Special Master.

## HOW DO I OBJECT TO THIS SETTLEMENT?

If you want to object to this settlement, you, or an attorney appearing on your behalf, *must* do so in writing by serving copies of your objection, together with proof of your membership in the Settlement Class, and copies of any memorandum of law or any evidence supporting your objection, by certified mail or overnight delivery service for receipt by the Lead Class Counsel and Defendants' Counsel identified below not later than 25 days before the Fairness Hearing Date. You or your attorney must also, by the same date, file the originals of these papers with the Clerk of the Court identified above. If you intend to present an objection at the Fairness Hearing before Judge Kern scheduled for [the Fairness Hearing Date], you must simultaneously identify who, if anyone, will attend the Fairness Hearing to present your objection.

## WHO REPRESENTS THE CLASS?

Plaintiff Shawna Robbins represents the Class. The Lead Class Counsel is William B. Federman of Federman & Sherwood, 10205 N. Pennsylvania, Oklahoma City, Oklahoma 73120. Co-Lead Class Counsel is Cornelius P. Dukelow of Abington Intellectual Property Law Group, PC, 10026-A S. Mingo Road, No. 240, Tulsa, Oklahoma 74133-5700. You will not pay their attorneys' fees and costs. The Court may award them attorneys' fees and costs. BlueHippo has agreed to pay up to $615,000.00 in such fees and costs if awarded by the Court.

## WHO REPRESENTS THE DEFENDANTS?

Defendants are represented by John N. Hermes of McAfee & Taft, 10th Floor, Two Leadership Square, 211 North Robinson, Oklahoma City, OK 73102.

## WHAT IF I HAVE QUESTIONS?

IF YOU WANT MORE INFORMATION ABOUT THIS SETTLEMENT OR WOULD LIKE TO OBTAIN A COPY OF THE SETTLEMENT AGREEMENT EXECUTED ON BEHALF OF THE REPRESENTATIVE PLAINTIFFS, THE SETTLEMENT CLASS AND THE DEFENDANTS, PLEASE VISIT www.pcsettlementsite.com. If you have further questions, you may write to Class Counsel c/o William B. Federman, Federman & Sherwood, 10205 N. Pennsylvania, Oklahoma City, Oklahoma 73120. DO NOT CONTACT THE COURT FOR INFORMATION.

*This notice does not mean that the Court has mode any decision as to how it would rule on the claims or defenses asserted by any party. This notice is not intended to be, and should not be considered as, an expression of any opinion by the Court with respect to the truth of the allegations or the strength of the claims or defenses asserted in the case that is being settled.*

EXHIBIT D

NOTICE OF CLASS ACTION SETTLEMENT

*Robbins v. BlueHippo Funding, LLC, et al.,* No. 07-CV-145
United States District Court for the Northern District of Oklahoma
411 Page Belcher Federal Bldg. and United States Courthouse
333 West Fourth Street, Tulsa, Oklahoma  74103-3819

If you made a payment to BlueHippo Funding, LLC or BlueHippo capital, LLC ("BlueHippo") at any time on or before July 31, 2007 for the purchase of a computer and have not yet received the computer, or a refund from BlueHippo, or otherwise reached a settlement with BlueHippo relating to your account, you may be a Class Member for purposes of a proposed settlement of legal claims about that purchase. On [the Fairness Hearing Date], Judge Terence Kern will hold a Fairness Hearing at the address above to decide whether to approve this settlement. If he approves it, all Class Members will be bound by the resulting judgment and court orders, and eligible Class Members will be entitled to claim certain Refunds or Store Credit benefits. The Court will also order BlueHippo to dismiss any pending lawsuits or arbitrations against Class Members for failure to make payments to BlueHippo. IF YOU DO NOT OPT OUT OF THE SETTLEMENT AND IT IS APPROVED, YOU WILL FOREVER RELEASE ANY RIGHTS YOU HAVE TO SUE BLUEHIPPO OR ITS RELATED ENTITIES FOR ANYTHING RELATED TO THE FACTS OR CLAIMS COVERED IN THE SETTLEMENT.

Claim forms are available at [www.BlueHippo.com] or by writing to BlueHippo at 7000 Security Blvd, Second Floor, Baltimore, MD 21244 and must be completed by [120 days after the Court's Preliminary Approval Order]. If you're a Class Member and want to opt out of this settlement, however, you *must* do so in writing. You must provide your full name and address and state that you want to opt out of the settlement in *Robbins v. BlueHippo Funding, LLC, et al.,* No. 07-CV-145, and deliver your written request by certified mail or overnight delivery service to the Lead Class Counsel and the Defendants' Counsel identified below so that they receive your request not later than 20 days before [the Fairness Hearing Date.] If you opt out of this settlement, you will be entitled to participate in a binding dispute resolution process, overseen by an independent Special Master, which is not available to individuals who are not Class Members.  If you want to object to this settlement, you, or an attorney appearing on your behalf, *must* do so in writing by serving copies of your objection, together with proof of your membership in the Settlement Class, and copies of any memorandum of law or any evidence supporting your objection, by certified mail or overnight delivery service for receipt by the Lead Class Counsel and Defendants' Counsel identified below not later than 25 days before [the Fairness Hearing Date.] You or your attorney must also, at the same time, file the originals of these papers with the Clerk of Court for the United States District Court for the Northern District of Oklahoma at the address above.  If you intend to present an objection at the Fairness Hearing before Judge Kern scheduled for [the Fairness Hearing Date], you or your attorney must simultaneously identify who, if anyone, will attend the Fairness Hearing to present your objection

For further information, including details of the settlement or a copy of the Settlement Agreement executed on behalf of the Representative Plaintiffs, the Settlement Class and the

Defendants, please visit www.pcsettlement.com or write to LeadClass Counsel c/o William B. Federman at the address below. DO NOT CONTACT THE COURT FOR INFORMATION.

| | |
|---|---|
| John N. Hermes<br>McAfee & Taft, A Professional Corporation<br>10th Floor, Two Leadership Square<br>211 North Robinson<br>Oklahoma City, OK 73102<br>Defendants' Counsel | William B. Federman<br>FEDERMAN & SHERWOOD<br>10205 N. Pennsylvania<br>Oklahoma City, OK 73120<br>Class Counsel |